FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 FEB 27 P 4: 34

DISTRICT COURT
HARTFORD CT

---

ROBERT PAYNE and PAYNE INVESTMENTS LL.
    Plaintiffs,

 -against-

TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES,

    Defendants.

: No. 202CV2234 (AWT)

: FEBRUARY 26, 2004

---

## REPORT OF PARTIES PLANNING MEETING

Date Complaint Filed: December 18, 2002

Date Complaint Served: January 9, 2003

Date of Defendants' formal Appearance: October 15, 2003; date of Defendant's filing of Motion on Consent for Extension of Time to Respond to Complaint: February 6, 2003; date of Defendant's filing of Motion to Transfer Venue to the District of Columbia: February 27, 2003; date of Court's ruling on Motion to Transfer: September 23, 2003; date of Defendant's filing of Answer: November 21, 2003.

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D.Conn.L.Civ.R. 26(e), a conference was held on November 11, 2003, and on January 21, 22, 23 and February 6, 2004. The participants were:

David Crystal II, for plaintiffs Robert Payne and Payne Investments LLC

Jacob D. Zeldes (and, on February 6, 2004, Sarah W. Poston) for defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor Strategic Divestitures, and Taylor Financial Services, LLC, all defendants collectively operating under the name TAYLOR COMPANIES.

**I.   Certification.** Undersigned counsel certify that, after consultation with their clients, they have discussed and are continuing to discuss the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case, and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.   Jurisdiction.**

A.   Subject Matter Jurisdiction:

1.   The jurisdiction of this Court is based on 28 U.S.C. Section 1332 on the basis of the complete diversity of citizenship between the Plaintiffs and each of the Defendants and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

2.   Venue is proper in this district pursuant to 28 U.S.C. Section 1391(a).

B.   Personal Jurisdiction:

Personal jurisdiction was obtained by service on the Defendants, who have now appeared in this action.

2

### III.    Brief Description of Case:

A.    Claims of Plaintiff(s).

In late 1999, the Taylor Companies made a written offer to Robert Payne to work for the Taylor Companies as their Managing Director. Payne accepted the offer in Connecticut and performed his services for the Taylor Companies primarily in the State of Connecticut, visiting Washington D.C. no more than once a month, probably less often. This arrangement was agreed to by the Defendants, who have similar employees working away from Washington D.C., in some cases, in other countries.

In the offer of employment Payne was promised certain percentages of the net revenues of certain contracts that resulted from his efforts as well as a variety of other employment benefits. Payne has asserted in this complaint that he did not receive all the benefits to which he was entitled and after attempting, unsuccessfully to resolve the issue without litigation, including an offer to arbitrate in New York through the NASD, to which one of the Taylor Companies was a member, filed this action where the cause of action arose.

MiTek/Rexam Transaction

The first claims arises as a result of failing to receive appropriate commissions with respect to an acquisition Payne worked on with respect to MiTek and Rexam. At the closing of the transaction Rexam paid the Taylor Companies the fee the Taylor Companies was due under its engagement letter on closing of approximately $3,000,000.00.[1] Payne had managed the Rexam/MiTek transaction and under the employment agreement was entitled

---

[1] All numbers with respect to amounts received by the Taylor Companies are approximate but believed to be relatively accurate subject only to verification in discovery. Defendants in their answer have generally admitted the amounts received.

3

to a commission of $300,000.00 (less draw for the year of $125,000.00) or a total of $175,000.00 which was not paid nor was any accounting rendered.

Borden Chemical Transaction

The second cause of action involves BCP Management, the General Partner of a limited partnership known as Borden Chemical & Plastics Operating Limited Partnership (hereinafter "Borden Chemical"). Payne contacted Borden Chemical and negotiated a contract for the Taylor Companies to provide their services to manage the sale of Borden Chemical. The Borden Chemical business was sold in several parts. The first sale generated a commission to the Taylor Companies of $1,000,000.00. Under his contract with the Taylor Companies, Payne was entitled to receive 10% of this sum as the Managing Director of the project and an additional 5% as his Marketing Commission for having led "the marketing efforts with [a] company that Taylor [had] not served prior to [his] employment" once a transaction was closed or a total of $150,000.00.

The second sale of part of the Borden Chemical assets generated a commission to Taylor of $1,000,000.00 in April of 2002. Under his contract, Payne was entitled to 10% of these fees ($100,000.00) as his Management Commission and 5% ($50,000.00) as his Marketing Commission.

Neither of the payments due Payne from the Taylor Companies as a result of the closing of the first two sales of Borden Chemical assets, being a total due of $300,000.00 were timely made. After a demand letter was sent by Payne's attorneys to the Taylor Companies demanding payment of the amounts owed, a partial payment of $154,418.30 was made.

4

The third proposed sale of the last piece of the Borden Chemical transaction was expected to close in December of 2002 and result in a payment of $500,000.00, from which Payne would be entitled to $50,000.00 as his Management Commission and another $25,000.00 for his Marketing Commission, for a total of $75,000.00. Again, only a partial payment of $37,500.00 was made. No accounting has been received and it is believed that there is still $183,081.70 still due and owing.

Dow Chemical Transaction

The third cause of action arises out of a transaction with Dow Chemical Company ("Dow Chemical"). The Dow Chemical Sentrachem transaction was expected and did generate a fee of about $700,000.00. Based on such amount, Payne his Management Commission of $70,000.00 and his Marketing Commission of $35,000.00 as well.

Bonus Payment

The fourth cause of action arises from the failure of the Taylor Company to pay a $75,000.00 marketing bonus due on total fees to the Taylor Companies, with respect to transactions on which Robert Payne was Managing Director, exceeds $1,500,000.00.

Profit Sharing Plan

The Fifth Cause of Action seeks damages for being denied the opportunity to participate in the 401K Profit Sharing Plan. The Taylor Companies never had to make the contribution of $2,231.08 in 2000 and 2001 resulting in a loss of $4,462.16.

Medical Coverage and Reimbursement Expenses

The Sixth Cause of action seeks damages for failing to pay Robert Payne's medical and dental insurance after thirty days of employment, despite deducting amounts for such insurance from his draw thus depriving Payne of benefits equaling at least $17,928.95.

The Seventh Cause of Action seeks damages for having to purchase equipment that Defendants had promised to supply to him, in the amount of $3,000.00.

<u>Accounting, Unjust Enrichment and Promissory Estoppel</u>

The Eighth Cause of action seeks an accounting from the Defendants with respect to

(a) the amount of draw he was paid;

(b) the amounts received by the Taylor Companies with respect to the Rexam/MiTex transaction;

(c) the amounts received by the Taylor Companies from the sale of the Borden Chemical assets; and

(d) the amounts received by the Taylor Companies from selling Dow Chemical's South African business, known as the Sentrachem.

The Ninth Cause of Action seeks to recover similar damages on the basis of unjust enrichment.

The Tenth Cause of Action seeks recovery for similar damages based on the doctrine of promissory estoppel.

B.   Defenses

Defendants have submitted an answer which denies many of the allegations and asserts as affirmative defenses that the fourth, fifth, sixth and tenth causes of action fail to state a claim on which relief can be granted and that the fourth, fifth and sixth claims are preempted by the Employee Retirement Income Security Act.

IV.   **Statement of Undisputed Facts:**

Counsel certify that they have made a good faith attempt to determine whether any material facts are undisputed. It is presently agreed the following facts are undisputed.

6

1.  Plaintiff, Robert Payne, is a citizen of Connecticut, residing at 263 Spring Valley Road, Ridgefield, Connecticut.

2.  Plaintiff, Payne Investments LLC, is a limited liability company, formed under the laws of Connecticut, with offices at 263 Spring Valley Road, Ridgefield, Connecticut.

3.  Defendant Taylor Vision Resources was the name under which Shareholder Enhancement International, Inc. did business. Shareholder Enhancement International, Inc. was a foreign corporation, organized under the laws of the State of Delaware, with its registered office at 1209 Orange Street, Wilmington, Delaware.

4.  Defendant Taylor Strategic Acquisitions was the name under which Taylor International, Inc. did business. Taylor International, Inc. was organized under the laws of the State of North Carolina, with its principal office, as of the time of the events alleged in the complaint, at 1215 Nineteenth Street, NW, Washington, D.C. 20036.

5.  Taylor Strategic Divestitures, Ltd. (incorrectly named in the complaint as Taylor Strategic Divestitures) is a foreign corporation organized under the laws of Bermuda with its principal office, as of the time of the events alleged in the complaint, at 1215 Nineteenth Street, NW, Washington, D.C. 20036.

6.  Defendant Taylor Financial Services LLC is a limited liability company organized under the laws of the State of Delaware, with its principal office, as of the time of the events alleged in the complaint, at 1215 Nineteenth Street NW, Washington, D.C. 20036.

7.  The defendants have collectively operated under the name "Taylor Companies".

8.  On or about November 20, 1999, The Taylor Companies sent a letter to Robert Payne in the State of Connecticut. A copy of which is annexed hereto as Exhibit "A."

9. The letter of November 20, 1999 offered Robert Payne the position of Managing Director at the Taylor Companies.

10. In late December of 1999, Robert Payne became employed by Taylor Companies as a managing director.

11. Robert Payne performed some functions for Taylor Companies operating primarily out of offices in the State of Connecticut.

12. Robert Payne received $113,191.03 in compensation from Taylor Companies in 2000.

13. At the end of the year 2000, Robert Payne established Payne Investments LLC. Robert Payne and Payne Investments LLC will hereafter collectively be referred to as "Payne."

The Rexam/Mitek Transaction

14. In late 2000 or early January 2001, Taylor Companies was engaged to sell Mitek, a wholly owned subsidiary of Rexam (the "Rexam/Mitek Transaction").

15. In accordance with his status at the Taylor Companies, Robert Payne was appointed Managing Director for the Rexam/Mitek Transaction.

16. In early April of 2001, Robert Payne met with the senior management of MiTek to review potential bidders Taylor had compiled.

17. The MiTek management requested that the list be expanded.

18. Shortly thereafter, a third party, Warren Buffett made an unsolicited offer for MiTek.

19. Rexam recognized that the Taylor Companies had performed its contract. As a result, even though the closing was not with a buyer brought to Rexam by the Taylor

Companies, Rexam agreed to pay the Taylor Companies the fee the Taylor Companies was due under its engagement letter on closing.

20. The gross revenues received by Taylor Companies from Rexam were $3,000,000.

21. No commission was paid to Payne over and above the $128,791.52 paid to him in 2001.

The Borden Chemical Transaction

22. In the latter part of the year 2000, Payne contacted BCP Management Inc.

23. BCP Management was the General Partner of a limited partnership known as Borden Chemical & Plastics Operating Limited Partnership (hereinafter "Borden Chemical").

24. Robert Payne made a presentation to Borden Chemical.

25. A second meeting between the Taylor Companies and Borden Chemical followed.

26. After the conclusion of the second meeting, Borden Chemical instructed the President of BCP Management to enter into negotiations with the Taylor Companies in an effort to reach an agreement in which the Taylor Companies would manage the sale of Borden Chemical.

27. Borden Chemical filed for bankruptcy.

28. The Creditors Committee in the bankruptcy proceedings wanted certain terms of the Borden Chemical Engagement Letter renegotiated.

29. The Borden Chemical business was sold in several parts.

30. The first sale of the Borden Chemical business was of the facility in Addis, Louisiana.

9

31. This sale generated gross revenues to the Taylor Companies of $1,000,000.00 as of February of 2002, $350,000.00 which had been paid earlier and $650,000.00 on the closing of the transaction.

32. No payment was made to Payne in February of 2002 with respect to this transaction.

33. The second sale of part of the Borden Chemical assets generated gross revenues to Taylor of $1,000,000.00 in April of 2002.

34. The last piece of the Borden Chemical transaction resulted in gross revenues to the Taylor Companies of $500,000.00.

35. A payment of $154,418.30 was made to Payne on May 7, 2002. *And a payment of $62,500 was made to Payne on December 31, 2002.*

36. The Taylor Companies agreed this payment could be cashed by Payne without prejudice.

## Dow Chemical Transaction

37. In the first quarter of 2001, Robert Payne, Ralph Taylor and a third Taylor Companies executive visited with Pedro Rheinhard at Dow Chemical Company ("Dow Chemical")

38. Negotiations of the Taylor Companies engagement letter, were first with Brian Taylorson of Dow Chemical and subsequently concluded with Alfonso Escudeao of Dow Chemical.

39. Once the contract with Dow Chemical was signed, Robert Payne initially worked on the transaction, together with his assistant, Kenneth Griffin.

40. Robert Payne participated in only two trips to South Africa in connection with this transaction.

10

41. The Dow Chemical Sentrachem transaction closed in 2002 and generated gross revenues to the Taylor Companies of about $1,301,539.00.

42. The Taylor Companies have made no payment to Payne as a result of the closing of the Dow Chemical transaction.

Bonus Marketing Commission

43. Total gross revenues received by the Taylor Companies for the Rexam/Mitek, Borden Chemical and Dow Chemical Transactions exceeded $1,500,000.00.

44. Taylor Companies have not paid a $75,000.00 Bonus Marketing Commission to Payne.

45. A Bonus Marketing Commission payment of $37,500.00 was made to Payne on October 7, 2002, and it was agreed by the Taylor Companies he could cash it without prejudice.

Medical Insurance

46. The Taylor Companies deducted from Robert Payne's draw, approximately $275.00 each draw period (draw was paid twice a month), deducting in excess of $6,000.00 by the end of October of 2000.

47. At the end of 2000, Payne established himself as a Limited Liability Corporation ("Payne Investments LLC"). Defendants did not object to this action.

V.    **Case Management Plan.**

A.    Standing Order on scheduling in Civil Cases.

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases. The schedule set forth in the standing order cannot be met in light of the fact that the Defendants moved for a change of venue in February 2003, and the answer to the

complaint was served 37 days after receipt by defendants of the ruling on Defendants' motion for a change of venue. The parties request that discovery be completed by ~~August~~ September ~~31~~ 30, 2004 as set forth in the dates listed below with Rule 26(a) disclosure to be made no later than ~~March~~ April 2, 2004.

**B.    Scheduling Conference with the Court.**

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed.R.Civ.P. 16(b).

**C.    Early Settlement Conference.**

1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.

2.    The parties request an early settlement conference.

3.    The parties prefer a settlement conference with a magistrate judge or other judicial officer the Court feels appropriate.

**D.    Joinder of Parties and Amendment of Pleadings.**

1.    Plaintiffs should be allowed until ~~March~~ April 1, 2004 to file motions to join additional parties and until ~~March~~ April 1, 2004 to file motions to amend the pleadings.

2.    Defendants should be allowed until ~~March~~ April 15, 2004 to file motions to join additional parties, and until ~~March~~ April 30, 2004 to file motions to amend the pleading.

**E.    Discovery.**

1.    The parties anticipate that discovery will be needed on the following subjects:

    (a)    The legal status and location of offices of some of the defendants.

    (b)    The employment status of the plaintiff with the defendants, the terms under which he received various payments.

(c) The exact amounts received by the Defendants with respect to the transactions involved.

(d) Reasons why Defendants have not paid the amounts demanded by Plaintiff.

(e) The services performed by various individuals with respect to each transaction.

(f) Reasons why Defendants have not provided Plaintiff with the benefits of 401K Plan, Medical Insurance and reimbursement for business expenses.

(g) The basis for the assertion of affirmative defenses.

(h) The exact amount received by plaintiffs from defendants with respect to each of the three transactions at issue in the complaint.

(i) The services performed by plaintiffs in connection with each of the three transactions at issue in the complaint.

2. Rule 26(a) discovery is to be made no later than ~~March~~ April 2, 2004 and initial requests for documents and initial interrogatories to be made no later than ~~March~~ April 15, 2004.

3. All other discovery, including depositions of expert witnesses pursuant to Fed.R.Civ.P. 26(b)(4), will be commenced by ~~April 22~~ May 24, 2004 and completed (not propounded) by ~~August 31~~ September 30, 2004.

4. Discovery will be conducted in phases. Document production and interrogatory responses will be completed by ~~April 30~~ May 31, 2004. Depositions of fact witnesses proceeding first, commencing by ~~March~~ April 1, 2004 and being completed by ~~May~~ June 14, 2004. Designation of experts will be withheld until ~~April 30~~ May 31, 2004, while the parties review documents and conduct

13

Case 3:02-cv-02234-AWT  Document 16  Filed 02/27/2004  Page 14 of 20

initial depositions of fact witnesses in an effort to narrow or eliminate the necessity of using experts.

5. The parties anticipate that the plaintiff(s) will require a total of 8 depositions of fact witnesses and that the defendant(s) will require a total of 3 depositions of fact witnesses. The depositions will commence by ~~March~~ *April* 1, 2004 and be completed by ~~May~~ *June* 14, 2004.

6. The parties will not request permission to serve more than twenty-five (25) interrogatories, except that Plaintiff requests the right to serve additional interrogatories to determine the legal status of each of the defendants and the location of their principle offices.

7. Plaintiffs presently intend to call expert witnesses at trial. Plaintiff(s) will designate all trial experts by ~~May~~ *June* 14, 2004, and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by ~~May~~ *June* 14, 2004. Depositions of any such experts will be completed by ~~June~~ *July* 30, 2004.

8. Defendants presently intend to call expert witnesses at trial. Defendant/s will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed.R.Civ.P. 26(a)(2) by ~~June 11~~ *July 12*, 2004. Depositions of such experts will be completed by a date not later than ~~July~~ *August* 30, 2004.

9. A damage analysis will be provided by any party who has a claim or counterclaim for damages by ~~March~~ *April* 1, 2004.

F. **Dispositive Motions.** Dispositive motions will be filed on or before ~~September 30~~ *October 31*, 2004.

G. **Joint Trial Memorandum.** The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil cases will be filed by ~~October~~ *November* 15, 2004 or within 30 days of a ruling on any dispositive motion filed by defendants.

14

## VI.    Trial Readiness.

The case will be ready for trial by ~~November~~ *December* 1, 2004 or within 15 days of a ruling by the Court on any dispositive motion filed by defendants.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Plaintiffs

By _____    Date: 2/26/04
David Crystal II (ct 24276)

Gilbride Tusa Last & Spellane, LLC
420 Lexington Avenue
New York, New York 10170
(212) 692-9666

Defendants

By _____    Date: 2-24-04
Jacob D. Zeldes (ct 04351)
Sarah W. Poston (ct 19702)

Zeldes Needle & Cooper
1000 Lafayette Boulevard
Bridgeport, Ct. 06604
(203) 333 9441
fax: (203) 333-1489
email:  jzeldes@znclaw.com
        sposton@znclaw.com

**VI.    Trial Readiness.**

The case will be ready for trial by ~~November~~ December 1, 2004 or within 15 days of a ruling by the Court on any dispositive motion filed by defendants.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Plaintiffs

By_____    Date:
David Crystal II (ct 24276)

Gilbride Tusa Last & Spellane, LLC
420 Lexington Avenue
New York, New York 10170
(212) 692-9666

Defendants

By _/s/ Sarah W. Poston_____    Date: 2-27-04
Jacob D. Zeldes (ct 04351)
Sarah W. Poston (ct 19702)

Zeldes Needle & Cooper
1000 Lafayette Boulevard
Bridgeport, Ct. 06604
(203) 333 9441
fax: (203) 333-1489
email:  jzeldes@znclaw.com
            sposton@znclaw.com

15



November 20, 1999

Mr. Robert Payne
VIA FACSIMILE: (203) 431-9746

Dear Bob,

I am pleased to offer you the position of Managing Director at Taylor Companies (Taylor). The terms of our mutual understanding are as follows:

Commissions of 10.0% will be paid on net revenues (gross revenues collected less senior advisor compensation) from contracts which you manage the transaction or project.

An additional 5.0% commission will be paid on net revenues from contracts which you take responsibility for leading the marketing efforts with companies which Taylor has not served prior to your employment with us. These marketing efforts include visualization of the opportunity, initial telephone contact, presentation of Taylor Companies materials, and contract closure. Contract closure should be completed without the assistance of any executive level Taylor personnel. In those instances in which another Taylor executive directly assists in contract closure, the aforementioned percentage will be reduced to 2.5%.

On the first $1,500,000 net revenues generated from you leading the marketing efforts, Taylor will pay a bonus commission of 5% above all commissions previously mentioned. Here again, this percentage will be reduced to 2.5% in those instances in which another Taylor executive directly assists in contract closure. This bonus commission is offered in the spirit of making you whole towards the $75,000 bonus which you are forfeiting with your present employer.

Annual draw against commissions will be $125,000.

Once commissions earned exceed the annual base draw in any calendar year, commissions due will be paid monthly. There will be no true-up or carryover of annual short fall from draws advanced exceeding commissions earned.

Taylor Companies

Taylor Vision Resources
Taylor Strategic Acquisitions
Taylor Strategic Divestitures
Taylor Executive Solutions
Taylor Capital
Taylor Global Trading

Helping our clients
achieve purposeful
change to optimize
shareholder value

1215 Nineteenth Street NW   Washington DC 20036   Phone 202.955.1330   Fax 202.293.1862

Mr. Robert Payne
November 20, 1999
Page 2

Taylor will provide you a laptop computer and cover the costs of your telecommunications needs including hookups and cellular phone expenses.

All medical, dental, and life insurance premiums shall be paid on your behalf after 30 days employment in a manner consistent with our group benefits programs.

You will be eligible to participate in our 401(k) plan after 30 days. Taylor Companies matches 25% of your contributions up to the statutory limits. Entrance dates for the plan are at the beginning of each calendar quarter.

You will be eligible for three weeks of paid vacation during your first year with the firm. The company requires that all employees take vacation during the period between Christmas and New Year's Day.

Taylor is in the process of developing a retirement plan specific to the Managing Director's position. While this plan is still in a conceptual form, we anticipate that it will include an annuity to be paid beginning at retirement which corresponds to the person's tenure with the firm as well as future profits generated in his corresponding client base.

It is our understanding that you will be available to begin employment with us on January 3, 2000.

Please contact Ralph or me at your earliest convenience regarding the acceptability of this offer. Upon your acceptance, these terms will be formalized into an employment contract by our attorney.

I apologize for the delay in getting you this letter. We are looking forward to a long and mutually fulfilling relationship.

Kindest regards,

Kenneth H. Griffin, CPA
Chief Financial Officer
Chief Operating Officer

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via first class U.S. Mail, postage prepaid, to the following counsel of record:

David Crystal, II, Esq.
GILBRIDE TUSA LAST & SPELLANE LLC
420 Lexington Avenue
New York, NY  10170-0105

Dated at Bridgeport, Connecticut this 27th day of February 2004.

_____
Sarah W. Poston