UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : | CASE NO. |
| Plaintiffs, | : | 3:02CV2234(AWT) |
| -against- | : | |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES and TAYLOR FINANCIAL SERVICES, LLC all defendants collectively operating: Under the name TAYLOR COMPANIES, | : | FILED 2004 JUN -2 A 11:55 U.S. DISTRICT COURT HARTFORD, CT. |
| Defendants. | : | |

## MEMORANDUM OF LAW IN OPPOSITION OF MOTION FOR PROTECTIVE ORDER

This memorandum of law is submitted in opposition to the second attempt by the Defendants to delay the investigation into the merits of this case by seeking to impose exaggerated costs of discovery, which they had expanded beyond reasonable limits, on the plaintiffs. This is apparently in keeping with the "defense" already revealed, that the defendants believe that by constant motion practice they can continue to avoid the merits and raise the costs of litigation to the point where it becomes prohibitive for plaintiffs to recover the earnings that have been withheld from him. This motion is also in keeping with this philosophy as it is made without any meaningful effort to reach a reasonable resolution.

Procedural Background

This action was commenced by Robert Payne and Payne Investments LLC (hereinafter collectively referred to as "Payne") only after efforts to obtain funds he had earned from the Defendants without litigation failed and after the "offer" by Defendants (made through their Washington D.C. attorney, Mr. Stein) to arbitrate the dispute was withdrawn after it was accepted by Payne.

After this action was begun, Defendants moved to change the venue to Washington D.C. on the grounds that was far more convenient for all the witness who worked for them, who they claimed either worked in Washington D.C. or "travel[ed] frequently to Washington D.C." See affidavit by Defendant's Vice President Kenneth Griffin, 2/25/03, p.4, describing Dermot Coughlin, one of the individuals noticed for deposition. That motion to change venue was denied.

In the Planning Meeting and in preparing the Report on the parties Planning Meeting, Defendants counsel never raised any objection to holding depositions in Connecticut or that any of the individuals they had identified as possible witnesses were not officers, directors or managing agents. In fact, each of the individuals noticed for deposition has at least one of the following titles: "Chairman", "Senior Vice Chairman", "Vice President", "Director of Human Resources and Accounting" and "Executive Assistant". Each of these titles, except for one, indicates that the individuals are either officers or directors and the only exception, "Executive Assistant" indicates a person that may be an officer or managing agent.

2

## The Issue of Ms. Taylor and Ms. Stoltz:

Prior to making this motion, the Defendants never complained that any of these individuals were not officers, directors or managing agents. Even on this motion for a protective order, the Defendants are literally sitting on the fence on the issue and refusing to take a position one way or the other only saying "at least some of the deponents (including Ms. Taylor and Ms. Stoltz) <u>do not appear</u> to be officers, directors or managing agents of a Defendant...) Defendants' Memorandum, p. 3). Yet on the motion to change venue, Ms. Stoltz was listed as the "Director of Human Resources and Accounting" and Ms. Taylor as an "Executive Assistant". More importantly, Mr. Griffin described taking these two individuals away from their work as something that would be "extremely disruptive to Taylor Companies' business." Griffin affidavit, supra. P. 6, thus indicating a significant level of responsibility.

In the Second Circuit, in order to determine if a person is a managing agent, the Courts look to see (1) if the individual possess general powers to exercise judgment and discretion in corporate matters, (2) is a person who can be relied on to give testimony at the employer's request, (3) is a person who can be expected to identify with the interests of the corporation, (4) whether any persons employed by the corporation in positions of higher authority than the individual designated in the area for which information is sought and (5) the general responsibilities of the individual respecting the matters involved in this litigation . <u>Sugarhill Records Ltd, v. Motown Record Corp</u>. 105 F.R.D. 166, 170-171 (S.D.N.Y. 1985).

Considering these factors, Ms. Stoltz, as Director of Human Resources and Accounting, would appear to qualify under all five tests as a "managing agent", in so far as she heads up two departments which must require the exercise of some judgment, is clearly someone who can be relied upon to give testimony at the company's request and identify with the company and no person would have a higher degree of responsibility in these areas.

Ms. Taylor's title, as an "Executive Assistant" does not tend itself to a similar analysis. However, it is known that her father is the primary owner of the Defendants, so she can clearly be relied upon to testify for the defendants and identify with their interests.

As conceded in the notice of motion of Defendants, this issue of whether these two individuals should be served a subpoena was never even raised, let alone discussed before making this motion. In fact, the only reason Payne noticed them at all is because the Defendants insisted, on the motion to change venue, that these were individuals "with knowledge of these matters." As Payne noted in opposing the motion to change venue, <u>as far as he knew</u>, neither individual had any material connection to the issues in this case.

The confusion the Defendant hope to generate here is intentional. The primary issue in this case is the percentage of compensation that Payne should receive under his written contract. It was agreed in writing that Payne would be compensated<u>, inter alia,</u> by receiving an additional 5% commission on net revenues from contracts where he had responsibility for the marketing efforts that Defendant had not served prior to his employment with Defendants. If an

4

"executive level Taylor personnel" directly assisted in closing the deal, the commission would be 2.5%.

Consequently, at points in this litigation, it has already been in the Defendants' interest to name everyone at their company as being on the "executive level". Thus, in the past, when they sought to change venue and undoubtedly in the future, when they address the substantive issue at trial, Defendants wish to assert these people "directly assisted" in closing the deal and are on the "executive level." However, currently, t is in their interests to minimize their title and role when they seek to challenge the location of their deposition.

Although the courts have held that in close questions, the issue should be resolved in favor of the examining party. See Sugarhill Records, supra, in this case, as it relates to these individuals, the issue is not one that is pressed by Payne. As long as Defendants insist these individuals will be witnesses, Payne will need to depose them. Payne would waive their depositions if they are not

Going to be witnesses. If these individuals are not officers, directors or managing agents (i.e., not on the "executive level" but Defendants continue to insist they will be witnesses) Payne has no objection to issuing a subpoena. Under the Federal Rules this is a routine matter that can be done by this law firm. Under such circumstances, there re nay number of locations in Washington D.C. or within 100 miles of Washington D.C. that Payne could utilize to depose thee two individuals to find out why Defendants claim they will be witnesses.

By even on this motion, the Defendants still waffle on the issue as to whether Ms. Taylor or Ms. Stoltz are officers (to be produced on notice of deposition) or an employee who needs to be subpoenaed.

It is respectfully submitted that the Defendants should not be allowed to play fast and loose with the Court in this matter and definitely state whether these individuals are on the executive level or not. Their titles provided to Payne indicate they have certain managerial responsibility and certainly, in one case, are named as a "Director". If these titles were intended to mislead, the Defendants should clear up that confusion once and for all.

<u>Officers Residing Overseas Can Be Deposed Here</u>

As with Ms. Taylor and Ms. Stoltz, Defendants again take contradictory positions as to where they maintain corporate officers on this motion than they did on the motion to change venue. In seeking to change venue, Mr. Griffin the Vice President of Taylor Companies, declared that Defendants' "office [singular] is in Washington D.C." Griffin affidavit <u>supra</u>, p. 1. No mention was made of having an office anywhere else. He also declared that "<u>all</u> Taylor employees with knowledge of the degree to which Mr. Payne "managed the transaction…are based in Washington D.C. or …travel here frequently." Griffin affidavit <u>supra</u> p. 3.

On this motion for a protective order, however, Defendants, without providing any documentation in support of the claim, such as a lease, have suddenly developed office in Toronto and London and the individuals, who

6

previously traveled to Washington D.C. "frequently", have suddenly ceased to travel.

As set forth in Mr. Payne's affidavit, he is unaware of either of these individuals having any more of an "office" than he did in operating out of his home. As set forth in the prior motion, Payne worked mostly out of his home when doing office work and traveled frequently to meet potential business contacts. He understood that Mr. Coughlin and Mr. Flack did the same. However, both Mr. Coughlin and Mr. Flack apparently traveled to Washington D.C. with much greater frequency than he did.

The distinction is highly relevant in this case and again reveals the motive of the Defendants. Payne is not insisting that either individual fly to this country just for a deposition. Defendants were told the dates noticed were flexible. In the case of both individuals. They could be deposed around the dates that they frequently come to the United States.

Moreover, since Washington, D.C. is admittedly the only "office" that the Defendants have, there is no legal authority that they can cite to which would require Payne to incur the costs of transporting Defendants' officers to the city where the Defendants maintain their corporate office, particularly one to which they travel frequently.

## The Location of the Deposition of Corporate Officers

Defendants readily admit, the rule as to where corporate officers should be deposed is not one written in stone and that in the first instance, it is the plaintiffs who designate the location. A number of factors are considered by the

7

courts on determining whether the corporate defendants should appear in the forum or in the district where their principal place of business is located. The location of counsel for the parties both in the forum district. The number of corporate representatives Payne seeks to depose is based only on the number of individuals Defendants claim has knowledge of the issues. In light of the experiences with Defendants' counsel so far, it would be fair to anticipate discovery disputes which would necessitate resolution by the forum court; the people involved, according to Defendants, often travel for business purposes and the equities with regard to the nature of the claim (an employee seeking his wages) and the parties relationship (a corporation with 10-12 million in revenue as opposed to an individual with income of $100,000.00) weighs in favor of the forum location. See Amsey v. Medchares Mgmt Servs, Inc., 184 F.R.D. 569, 571 (W.D. Va. 1998). As noted in Sugarhill Records, supra, the issue is one that goes to the discretion of the Court.

The location chosen by the plaintiffs in this case was hardly chosen for the inconvenience of the defendants. It was the office of the plaintiffs' attorney in Greenwich, Connecticut. As set forth in the affidavit of David Crystal II, this location is less than an hour's drive from three major airports, all of which have access to Washington D.C. Similarly, the time to fly from Washington D.C. to the Metropolitan area is approximately an hour. None of the depositions are scheduled to run for more than a day. In most cases, it is acknowledged that two depositions could be completed in any particular day.

8

Taking this into account, as well as the willingness of Payne's attorneys to re-arrange the dates for the convenience of the witnesses and even move the site of the depositions to Manhattan, so they could be closer to the airports and further reduce travel time for the Defendants' witnesses, demonstrate that the real purpose of this motion is really to seek delay.

This is further substantiated by the "costs" the defendants claim they will incur. Since these witnesses could go on the same day, there would be no need for any witness coming form Washington D.C. to stay overnight unless they were using the occasion to confer with their own counsel. Defendants have provided no legal authority that would support plaintiffs having to pay the expenses of defendants' officer to confer with his own lawyers  The cost of hotels is non-existent.

Similarly, the cost of "cabs" is overstated. A cost of a cab from LaGuardia or JFK to Greenwich, Connecticut is less than $50.00. Both directions, less than $100.00. A rental car for a day would be less than $75.00. When one considers that in most cases, two individuals would be coming at the same time, the cost of cabs is not $500.00 for two people but less than $100.00.

Similarly, the cost of meals is exaggerated, in some cases to $260.00 per person, for what would be at most, two meals, probably only one.

Similarly, the cost of airfare from Washington D.C. is also exaggerated. As set forth in the affidavit of David crystal II, he has checked on the fares between Washington D.C. and New York and they are half of what Defendants claim. Under 28 USC 1821, witnesses are suppose to seek common carriers at

the most economical rate reasonably available. Clearly, that is not what the defendants are doing.

However, all of these "costs" assume the plaintiffs are not flexible in scheduling the location. As noted, Plaintiffs' attorneys also have a New York office that is even closer to the airports which could be used to further diminish the costs and travel time to the defendants, but that was similarly unacceptable. Had the defendants indicated any desire to reach an accommodation, this motion would never have been made. Plaintiffs' counsel also has strong relationships with law firms in Wilmington, Delaware, and would have agreed to use that as a location. As set forth in the affidavit of David Crystal II, the defendants' position was unfaltering. All depositions had to be held in Washington, D.C. on dates that were convenient to them. The Defendants, however, are more interested in motion practice which delays getting to the substance of this action.

It is therefore respectfully submitted that:

1) The Defendants either define Ms. Taylor and Ms. Stoltz's titles and responsibilities so that a determination can be made that they need to be subpoenaed or nor or that portion of the motion seeking a protective order be dismissed;

2) That Defendants request that plaintiffs pay the costs of transportation, lodging and meals of their corporate officers to travel to Washington D.C., a location to which they travel frequently, be denied and

3) That Defendants motion to hold all other corporate officers depositions

10

in Washington D.C., instead of the forum state, be dismissed.

Respectfully submitted,

By: _____
David Crystal II    (CT24276)
Gilbride, Tusa, Last & Spellane LLC
Attorneys for Plaintiffs
420 Lexington Avenue
New York, NY 10170
(212) 692-9666

## CERTIFICATION

    This is to certify that a copy of the foregoing has been sent by Federal Express, postage paid, to the following counsel of record:

> Jacob D. Zeldes, Esq.
> Zeldes, Needle & Cooper
> 1000 Lafayette Boulevard
> Bridgeport, CT 06604

Dated: New York, New York this 1st of June, 2004.

_____
David Crystal II (CT24276)

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



2004 JUN -3  A 10: 32

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 3:02CV2234(AWT)<br>) |
| v. | ) Judge Alvin W. Thompson<br>) |
| TAYLOR VISION RESOURCES,<br>TAYLOR STRATEGIC ACQUISITIONS<br>TAYLOR STRATEGIC DIVESTITURES<br>and TAYLOR FINANCIAL SERVICES,<br>LLC all defendants collectively operating<br>Under the name TAYLOR COMPANIES, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) Notice of Manual Filing<br>) |

Please take notice that Plaintiffs ROBERT PAYNE and PAYNE INVESTMENTS LLC have manually filed the following documents:

1. Plaintiffs Affidavits in Opposition to Defendants Motion for Protective Order and
2. Memorandum of Law in Opposition of Motion for Protective Order.

This document has not been filed electronically because

[ X ]  the document or thing cannot be converted to an electronic format
[ ]  the electronic file size of the document exceeds 1.5 megabytes
[ ]  the document or thing is filed under seal pursuant to Local Rule of Civil Procedure 5(d) or Local Rule of Criminal Procedure 57(b)
[ ]  Plaintiff/Defendant is excused from filing this document or thing by Court order.

The documents have been manually served on all parties.

Respectfully submitted,

David Crystal II CT24276
Gilbride, Tusa, Last & Spellane LLC
420 Lexington Avenue
New York, NY 10170
Phone: (212) 692-9666
Fax: (212) 651-6328
E-mail: pg@gtlsny.com
[CT24276]