# TAB B



Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2001 WL 569132 (D.Virgin Islands)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Only the Westlaw citation is currently available.
District Court of the Virgin Islands, Division of St.
Thomas and St. John.
Kenneth EDWARDS, Appellant,
v.
GOVERNMENT OF THE VIRGIN ISLANDS,
Appellee.
**Nos. 1997-014, F186/1996.**

May 17, 2001.

Richard H. Dollison, St. Thomas, U.S.V.I., for
Appellant.
Maureen P. Cormier, Asst. Attorney General, Dept.
of Justice, for Appellee.

OPINION

MOORE, J.

*1 On April 4, 2001, the United States Court of
Appeals for the Third Circuit dismissed Kenneth
Edwards' appeal for lack of jurisdiction because his
notice of appeal was not filed within ten days of the
entry of judgment by this Court as required by Rule
4(b) of the Federal Rules of Appellate Procedure ["
Fed. R.App. P."]. The Court of Appeals dismissed
Edwards' appeal without prejudice, however,
suggesting that the Appellate Division might in its
discretion extend the time for filing a notice of
appeal pursuant to Fed. R.App. P. 4(b)(4).
Accordingly, Edwards brings this "Emergency
Motion for Reinstatement of Appeal." The
government timely filed its opposition.

*Background*

On September 25, 2000, the Appellate Division
filed its final order and judgment affirming
Edwards' convictions for grand larceny and
conspiracy to commit grand larceny and remanding
this matter to the Territorial Court for an
amendment to that court's judgment. On September
28, 2000, the Clerk of the Appellate Division noted
the judgment in the Court's docket. On November
21, 2000, the appellate clerk issued the mandate,
and on November 24, 2000, the Territorial Court
entered a corrected judgment. On November 29,
2000, Edwards filed his notice of appeal to the
United States Court of Appeals for the Third Circuit.

*Discussion*

Fed. R.App. P. 4(b)(1)(A)(i) provides that "[i]n a
criminal case, a defendant's notice of appeal must
be filed in the district court within 10 days after ...
the entry of the judgment or order being appealed."
To determine the date upon which judgment of the
Appellate Division was entered, the Court looks to
Rule 28 of the Virgin Islands Rules of Appellate
Procedure: "The notation of a judgment in the
docket constitutes entry of the [judgment]." V.I. R.
App. P. 28 ["VIRAP"] ("Entry of Judgment").
Thus, judgment in this case was entered on
September 28, 2000, the date judgment was noted
on the docket. Yet Edwards did not file his notice of
appeal until November 29, 2000, over sixty days
later. Court-appointed counsel for Edwards,
Richard A. Dollison, Esq., explains this lapse by
stating that he did not receive a copy of the
Appellate Division's order either by mail or in his
District Court box (*i.e.,* the box assigned to the firm
of Stryker, Duensing, Casner & Dollison) before the
expiration of the ten-day period for filing a notice of
appeal under Fed. R.App. P. 4(b)(1) or even before
the thirty-day maximum extension of time allowed
by Fed. R.App. P. 4(b)(4).[FN1] Attorney Dollison
further asserts that he received notice of the
judgment only after a certified copy of the mandate
was mailed to him by the appellate clerk on
November 22, 2000.

    FN1. Rule 4(b)(4) further provides:
    Upon a finding of excusable neglect or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 569132 (D.Virgin Islands)
(Cite as: Not Reported in F.Supp.2d)

Page 2

good cause, the district court may-before or after the time has expired, with or without motion and notice-extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b). Fed. R.App. P. 4(b)(4).

Edwards contends that because his counsel did not receive notice of the entry of judgment until long past the maximum time allowed for notice of appeal under Rule 4, this Court should exercise its equitable powers to either "correct" the record by changing the date of entry of judgment to November 22, 2000, or vacate the judgment of September 25, 2000 and reenter it *nunc pro tunc* to November 22, 2000.[FN2] In support of his position, Edwards points to VIRAP 35(c),[FN3] which provides that the clerk of the Appellant Division shall serve notice of judgments "immediately upon entry of an order or judgment ... by mail upon each party to the proceeding (or by putting a copy of the order or judgment in counsel's District Court box) together with a copy of any opinion respecting the order or judgment, and shall make a note in the docket of the mailing." VIRAP 35(c) ("Duties of Clerk"). He asserts that the appellate clerk's failure to serve the notice of judgment until November 22, 2000 or to make a note in the docket of service created a "unique and unfortunate set of circumstances" that warrants the equitable relief for which he prays.

FN2. Although the Court of Appeals specifically referred to Fed. R.App. P. 4(b)(4) as the potential basis for this Court to extend the time for notice of appeal, Edwards essentially concedes that by its terms, Rule 4(b)(4) is of no avail because the notice of appeal was not filed within the 30-day maximum extension period, which would have expired on November 8, 2000. (*See* Mot. for Emergency Reinstatement of Appeal at 11-13). Instead, he argues that despite the literal requirements of the rule, the Court should nevertheless grant equitable relief due to " exceptional circumstances."

FN3. In his memorandum, Edwards mistakenly refers to this rule as Rule 35(c) of the Appellate Division's Internal Operating Procedures.

*2 Edwards' arguments must fail. First, counsel's receipt of notice is not a prerequisite to the clerk's valid entry of judgment, thus there is nothing to correct. *See* VIRAP 28. As already stated, a judgment of this Court is considered "entered" on the day it is noted in the docket, date of service on the parties notwithstanding. *See id.* Second, in his insistence that the clerk made an error of some kind, Edwards conflates the mailing done in connection with the issuance of the mandate with service of notice of entry of the judgment, mistakenly believing that the former somehow was intended to serve the purpose of the latter. This cannot be so, as the issuance of the mandate and the entry of judgment are entirely distinct. *See* VIRAP 32 ("The mandate of the Appellate Division shall issue twenty-one days *after the entry of judgment* unless the time is shortened or enlarged by order." (emphasis added)).[FN4] Moreover, handwritten notations on the Court's final order indicate that on September 27, 2000, the Clerk did in fact serve a copy of the order and opinion on Samuel A. Walker, Esq.[FN5] in conformance with VIRAP 35(c).[FN6] (*See* Emergency Motion for Reinstatement of Appeal Ex. E at 2 (order filed Sept. 25, 2000).)

FN4. That the mandate issued in this case more than twenty-one days after entry of judgment does not in any way affect the date of entry of judgment or the relevant time period for filing a notice of appeal. *See* VIRAP 32 ("The filing of a notice of appeal to the United states Court of Appeals for the Third Circuit will not stay the mandate.").

FN5. According to Court records, Attorney Walker was an associate at the firm of Stryker, Duensing, Casner & Dollison who worked on Edwards' appeal with Attorney Dollison and even signed the appellant's brief, stating therein that he was "counsel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 569132 (D.Virgin Islands)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

for Edwards ." (*See* Br. of Appellant at 23.)

FN6. Rule 35(c) of our local appellate rules states in relevant part: "Immediately upon the entry of an order or judgment, the Clerk of the Appellate Division shall serve a notice of entry by mail upon each party to the proceeding (or by putting a copy of the order or judgment in counsel's District Court box)...." VIRAP 35(c). Thus, it would be perfectly proper for the Court to serve an attorney associated with a firm either by mail or by placing a copy of the order and opinion in the firm's District Court box.

The Court cannot help but note that nowhere in Edwards' motion is there any discussion of this apparent service on Attorney Walker. On the contrary, Attorney Dollison contends that "there is no evidence that the Appellate Division's order was circulated to counsel for Edwards ... until November 22, 2000." (*See id.* at 12-13.) In fact, there is nothing *but* evidence that a copy was served on "counsel for Edwards" on September 27, 2000. Attorney Dollison obviously authorized Attorney Walker to sign the appellant's brief, and yet never provided any notice to the Court that Attorney Walker was no longer an attorney working on this appeal.[FN7] Attorney Dollison's belated attempt to foist the blame on the clerk's office for what is the likely result of intra-firm personnel issues is not well-taken. The Court is also somewhat disturbed by the fact that in his arguments for reinstatement of the appeal, counsel chose not to acknowledge the possibility that the lapse was due to his own error. At bottom, the "unfortunate set of circumstances" at work here is not any clerical or administrative error, but rather that Edwards' counsel failed to check the docket in his case for at least sixty days, if not more.

FN7. According to the Virgin Island Bar Association Directory of Attorneys (2000), Attorney Samuel Walker now works for the Florida Public Defender's Office in West Palm Beach, Florida. Thus, by the time the Appellate Division's judgment was filed in September 2000, Attorney

Walker may no longer have been employed by the firm of Stryker, Duensing, Casner & Dollison. Unfortunately, this is not the only case affected by the firm's failure to pay attention to its cases. Pursuant to an order issued by the Appellate Division, the firm of Stryker, Duensing, Casner & Dollison has recently filed a report in the case of *Herbert v. Government,* Crim.App. No.1997-001, outlining the changes to its policies regarding the designation of responsibility within the firm and methods for conveying information regarding firm personnel changes to the Court.

Even accepting for the sake of argument Edwards' assertion that the clerk failed to serve counsel with notice of the entry of judgment, the Court declines to apply the "unique circumstances" doctrine articulated by the Supreme Court in *Thompson v. INS,* 375 U.S. 384, 386-87 (1964), and urged by Edwards here. While certainly a viable doctrine in other circumstances not relevant here, this doctrine does not apply "to extend the time for appeal by more than the maximum specified by Rule 4 [of the Federal Rules of Appellate Procedure]." *See United States v. Rapoport,* 159 F.3d 1, 3 n. 2 (1st Cir.1998) (citing *United States v. Dumont,* 936 F.2d 292, 295 (7th Cir.1991) (internal quotations omitted)). Furthermore, this Court has no power to grant the exceptional relief of vacating the judgment entered on September 27, 2000 and reentering it to deliberately circumvent the clear terms of Fed. R.App. P. 4(b)(4). *See, e.g., Rapoport,* 159 F.3d at 3 & n. 4 (determining that the district court's vacation and reentry of judgment due to failure of the clerk to notify the defendant was "without effect " and defendant's appeal was dismissed *sua sponte* as untimely); *United States v. Buzard,* 884 F.2d 475, 476 (9th Cir.1989) (district court has no authority to vacate and reenter earlier order due to the clerk's failure to mail notice and appeal was dismissed *sua sponte*); *United States v. Matos,* 1999 U .S. Dist. LEXIS 19288 at *12-13 (E.D.Pa. Dec. 10, 1999) ("[F]ailure to receive notice of a court order cannot justify such exceptional relief after expiration of the maximum extension period provided in Fed. R.App. P. 4."). Accordingly, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 569132 (D.Virgin Islands)
**(Cite as: Not Reported in F.Supp.2d)**

Court will deny Edwards' motion for reinstatement of his appeal.

*3 An appropriate order follows.

### ORDER

For the reasons stated in the accompanying Opinion of even date, it is hereby

ORDERED that the appellant's motion for reinstatement of his appeal is DENIED.

D.Virgin Islands,A.D.2001.
Edwards v. Government of Virgin Islands
Not Reported in F.Supp.2d, 2001 WL 569132 (D.Virgin Islands)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 452454 (C.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois.
Rabbi K.A. ISRAEL, Guardian and Son of the
Dearly Departed Ms. Louise (Garth) Richardson,
Plaintiff,
v.
STATE OF ILLINOIS DEPARTMENT OF
PUBLIC HEALTH; Eric E. Whitacre, Director of
the Illinois Department of Public Health; Catherine
M. Stokes, Assistant Deputy Director Bureau of
Hospitals and Ambulatory Services, Illinois
Department of Public Health; Division of
Healthcare Facilities and Programs, Illinois
Department of Public Health; Rose Castleman,
Illinois Department of Health; Maurice McCallister,
Chicago Office, Illinois Department of Public
Health; Aida Trinidad, Chicago Office, Illinois
Department of Public Health; Rose Kraem, Chicago
Office, Illinois Department of Public Health;
Secretary Tommy Thompson, Director U.S.
Department of Health and Human Services;
Defendants.
**No. 04-3140.**

Feb. 22, 2006.

Rabbi K.A. Israel, Chicago, IL, pro se.
Karen L. McNaught, Illinois Attorney General,
James A. Lewis, U.S. Atty., Springfield, IL, for
Defendants.

*OPINION*

RICHARD MILLS, U.S. District Judge:
**\*1** The Seventh Circuit has remanded the case to
this Court to determine whether to "reopen" the
time in which to appeal under Federal Rule of
Appellate Procedure 4(a)(6), based on the Plaintiff's
filing of June 22, 2005 [d/e 41].

On April 6, 2005, the Court entered a judgment

dismissing the case. Because a federal official was a
party, Plaintiff Rabbi K.A. Israel had 60 days to file
a notice of appeal. *See* Fed. R.App. P. 4(a)(1)(B).
The Plaintiff's notice of appeal [d/e 42] was filed
more than 60 days later-on June 22, 2005. On the
same date, the Plaintiff filed a document which was
docketed as a "Notice of Change of Address,"
which the Seventh Circuit treats as a separate
request to extend or reopen the time to appeal. It
asks the Court to determine whether to "reopen" the
time to appeal under Rule 4(a)(6) based on that
filing.

Federal Rule of Appellate Procedure 4(a)(6)
provides:
The district court may reopen the time to file an
appeal for a period of 14 days after the date when
its order to reopen is entered, but only if all the
following conditions are satisfied:
(A) the motion is filed within 180 days after the
judgment or order is entered or within 7 days after
the moving party receives notice of the entry,
whichever is earlier;
(B) the court finds that the moving party was
entitled to notice of the entry of judgment or order
sought to be appealed but did not receive the notice
from the district court or any party within 21 days
after entry; and
(C) the court finds that no party would be
prejudiced.

In the document which the Seventh Circuit asks the
Court to consider (which is addressed to the Clerk
of Court), the Plaintiff states in pertinent part, "I am
writing to you because my address has not yet been
changed in the files of your offices. This has
resulted in the delay of my response to the order
issued by the Hon. Mag. Judge B.E. [sic] Cudmore
on April 6, 2005." [FN1] The Plaintiff further claims
that his address changed on January 1, 2005.

    FN1. Presumably, the Plaintiff is actually

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 2

Not Reported in F.Supp.2d, 2006 WL 452454 (C.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

referring to the Order signed by the undersigned.

The Court concludes that the conditions of Federal Rule of Appellate Procedure 4(a)(6) have not been satisfied.

*Rule 4(a)(6)(A):* The Plaintiff's request of June 22, 2005 obviously was filed within 180 days after the order was entered; however, it is unclear whether it was filed within 7 days after the Plaintiff received notice of the April 6, 2005 judgment and order.

On April 13, 2005, the Plaintiff filed what he referred to as a motion for jury trial.[FN2] There does not appear to be any language in that motion which would indicate that the Plaintiff had received notice that his case was dismissed one week earlier. On April 18, 2005, the United States filed a memorandum on behalf of the federal Defendant in opposition to the Plaintiff's motion for a jury trial. In that memorandum the Government states, "On April 6, 2005, this Court dismissed this claim." The certificate of service shows that a copy of the Government's memorandum was mailed on April 18 to the Plaintiff at the address that was then on file for him (which only made sense given that he did not file a notice of change of address when his address changed).

> FN2. That motion is actually dated April 11, 2005.

**\*2** In another memorandum filed on July 19, 2005, [FN3] the Government observes that the Plaintiff could have had his mail forwarded. The Government further states in footnote 2, "In fact, he may have done this. When the United States Attorney's Office sent him mail, it was not returned." The Court notes that the docket does not show that any mail addressed to the Plaintiff (such as the April 6, 2005 Order dismissing the case or the subsequent Judgment) was returned.

> FN3. This was a memorandum in opposition to the Plaintiff's motion to extend the time to file a notice of appeal.

Based on the foregoing, the Court concludes that the Plaintiff's June 22, 2005 notice regarding his address change was not filed within seven days of when he received notice that his case was dismissed. Consequently, the Plaintiff cannot meet the time requirement of Rule 4(a)(6)(A). Given that the Plaintiff's mail was not returned, the Court concludes that he received notice within 60 days of April 6.[FN4]

> FN4. The Court recognizes that the notice at issue was filed approximately 75 days after the judgment appealed from was entered. Accordingly, the seven-day window is rather narrow.

*Rule 4(a)(6)(B):* For the reasons already given, the Court is unable to find that the Plaintiff "did not receive the notice from the district court or any party within 21 days after entry" of judgment. The Court has no reason to believe that it took more than 21 days for the Plaintiff to receive his forwarded mail.

*Rule 4(a)(6)(C):* The Court also finds that the Plaintiff cannot meet this condition in that other parties clearly would be prejudiced. The Plaintiff blames the Clerk for not changing his address, even though he failed to file a notice of change of address until June 22, 2005, when he filed the document which is now at issue. This was almost six months after the Plaintiff claims that his address changed. The Court finds that extending or reopening the time for the Plaintiff in which to file an appeal would result in other parties being prejudiced. It would prejudice those parties who keep the Court informed as to their whereabouts and closely monitor the docket.

The Plaintiff has failed to satisfy each of the three conditions which are required in order to reopen the time for appeal under Rule 4(a)(6). Accordingly, the Court will deny his request of June 22, 2005 to extend or reopen the time in which to file an appeal.

*Ergo,* the Court hereby DENIES the Plaintiff's request of June 22, 2005 [d/e 41] to reopen the time in which to file an appeal under Federal Rule of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2006 WL 452454 (C.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**


Appellate Procedure 4(a)(6).

The Clerk of Court will forward a copy of this
Opinion and Order to the Seventh Circuit.

C.D.Ill.,2006.
Israel v. State of Illinois Dept. of Public Health
Not Reported in F.Supp.2d, 2006 WL 452454
(C.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 3:04cv03140 (Docket) (Jun. 24, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Betty LASTER et al., Plaintiffs,
v.
DISTRICT OF COLUMBIA et al., Defendants.
**Civil Action No. 05-1875 (RMU).**

July 17, 2006.

**Background:** Three disabled students, through their parents or guardians, brought suit against District of Columbia and District of Columbia Public Schools (DCPS) seeking to enforce their right to remain in their current educational placement pending resolution of their administrative due process complaints under the Individuals with Disabilities Education Act (IDEA). Students moved for stay-put relief under IDEA pending outcome of administrative due process hearings. The District Court, 394 F.Supp.2d 60, granted students' motion for stay put injunction. Defendants moved for relief from judgment.

**Holdings:** The District Court, Urbina, J., held that:

6(1) district court applied correct legal standard in treating request for stay put injunction as an automatic injunction;

14(2) defendants received adequate notice of injunction and did not show that expedited briefing schedule affected their ability to oppose motion; and

17(3) stay put injunction did not violate defendants' statutory right to participate in selection of children's alternative school placement.

Motion denied.

**[1] Federal Civil Procedure 170A** ☞2651.1

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2651.1 k. In General. Most Cited Cases
In its discretion, court may relieve party from otherwise final judgment pursuant to any one of six reasons set forth in federal civil rule. Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ☞2656

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2656 k. Mistake; Inadvertence; Surprise; Excusable Neglect. Most Cited Cases
Relief from judgment involving mistake, inadvertence, surprise or excusable neglect turns on equitable factors, notably whether any neglect was excusable. Fed.Rules Civ.Proc.Rule 60(b)(1), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ☞2654

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2654 k. Fraud; Perjury. Most Cited Cases
For court to set aside final judgment for fraud, misrepresentation, or other misconduct by adverse party, movant must show that such fraud prevented him from fully and fairly presenting his case, and that fraud is attributable to the party or, at least, to counsel. Fed.Rules Civ.Proc.Rule 60(b)(3), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A** ☞2651.1

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                       Page 2

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

170A Federal Civil Procedure
   170AXVII Judgment
     170AXVII(G) Relief from Judgment
      170Ak2651 Grounds
        170Ak2651.1 k.  In General.  Most
Cited Cases
Courts use "catch-all" final reason for granting
relief from judgment sparingly, applying it only in
extraordinary       circumstances.      Fed.Rules
Civ.Proc.Rule 60(b)(6), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ☞2657.1**

170A Federal Civil Procedure
   170AXVII Judgment
     170AXVII(G) Relief from Judgment
      170Ak2657 Procedure
        170Ak2657.1 k.  In General.  Most
Cited Cases
Party seeking relief from judgment bears burden of
demonstrating that he satisfies prerequisites for such
relief. Fed.Rules Civ.Proc.Rule 60(b), 28 U.S.C.A.

**[6] Schools 345 ☞155.5(5)**

345 Schools
   345II Public Schools
     345II(L) Pupils
       345k155.5     Handicapped     Children,
Proceedings to Enforce Rights
        345k155.5(5) k.  Judgment and Relief;
Damages, Injunction, and Costs. Most Cited Cases
District court applied correct legal standard in
treating students' request for stay put injunction in
IDEA case as an automatic injunction. Individuals
with Disabilities Education Act, § 615(j), 20
U.S.C.A. § 1415(j).

**[7] Schools 345 ☞155.5(5)**

345 Schools
   345II Public Schools
     345II(L) Pupils
       345k155.5     Handicapped     Children,
Proceedings to Enforce Rights
        345k155.5(5) k.  Judgment and Relief;
Damages, Injunction, and Costs. Most Cited Cases
Under the IDEA, party attempting to change current
placement of child in manner inconsistent with

current individualized education program (IEP) will
be   required   to   meet   four-factor   preliminary
injunction  test.  Individuals  with  Disabilities
Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et
seq.; Fed.Rules Civ.Proc.Rule 65(a) 28 U.S.C.A.

**[8] Schools 345 ☞155.5(5)**

345 Schools
   345II Public Schools
     345II(L) Pupils
       345k155.5     Handicapped     Children,
Proceedings to Enforce Rights
        345k155.5(5) k.  Judgment and Relief;
Damages, Injunction, and Costs. Most Cited Cases
Purpose of stay put injunction under IDEA is to
prevent educational authorities from unilaterally
moving a child from his or her current placement.
Individuals  with  Disabilities  Education  Act,  §
615(j), 20 U.S.C.A. § 1415(j).

**[9] Injunction 212 ☞148(1)**

212 Injunction
   212IV Preliminary and Interlocutory Injunctions
     212IV(A)   Grounds   and   Proceedings   to
Procure
      212IV(A)4 Proceedings
        212k148 Bond or Undertaking
         212k148(1) k.  In General.  Most
Cited Cases
Bonds are sometimes required for payment of costs
and damages that may be incurred or suffered by a
party who is wrongfully enjoined. Fed.Rules
Civ.Proc.Rule 65(c), 28 U.S.C.A.

**[10] Schools 345 ☞155.5(5)**

345 Schools
   345II Public Schools
     345II(L) Pupils
       345k155.5     Handicapped     Children,
Proceedings to Enforce Rights
        345k155.5(5) k.  Judgment and Relief;
Damages, Injunction, and Costs. Most Cited Cases
In IDEA action, only party seeking to change, not
maintain, status quo via injunction needs to post a
bond. Individuals with Disabilities Education Act, §
601 et seq., 20 U.S.C.A. § 1400 et seq.; Fed.Rules

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                    Page 3

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Civ.Proc.Rule 65(c), 28 U.S.C.A.

**[11] Injunction 212 ☞143(1)**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)4 Proceedings
          212k143 Notice of Application
            212k143(1) k. In General. Most Cited Cases
Because preliminary injunction may be unlimited in duration, notice to adverse parties is required; notice should be sufficient to give opposing party an opportunity to respond and prepare opposition to motion for injunctive relief. Fed.Rules Civ.Proc.Rule 65(a), 28 U.S.C.A.

**[12] Injunction 212 ☞139**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)4 Proceedings
          212k139 k. Authority of Court or Judge. Most Cited Cases
District court judges have substantial discretion in managing timing of preliminary injunctions. Fed.Rules Civ.Proc.Rule 65(a), 28 U.S.C.A.

**[13] Injunction 212 ☞143(1)**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)4 Proceedings
          212k143 Notice of Application
            212k143(1) k. In General. Most Cited Cases
Because injunctions are usually time sensitive, courts determine length of notice needed for preliminary injunction based on urgency of factual circumstances and time available. Fed.Rules Civ.Proc.Rule 65(c), 28 U.S.C.A.

**[14] Schools 345 ☞155.5(5)**

345 Schools
    345II Public Schools
      345II(L) Pupils
        345k155.5 Handicapped Children, Proceedings to Enforce Rights
          345k155.5(5) k. Judgment and Relief; Damages, Injunction, and Costs. Most Cited Cases
District of Columbia and District of Columbia Public Schools (DCPS) received adequate notice of students' request for stay put injunction in IDEA case, where motion was granted four days after it was made and civil suit was filed and three days after court ordered expedited briefing schedule, and court's memorandum opinion was issued two days after grant of motion; case was particularly time-sensitive because of high risk of irreparable injury to children involved and involved atypical circumstances because both children's current placements were unavailable and parents of both students disagreed with defendants' suggested substitute schools, and defendants' excuse they did not receive e-mail notice of court's memorandum opinion and as result arrived at next day's meeting to discuss potential stay put placements unaware that opinion had been issued was unavailing. Individuals with Disabilities Education Act, § 615(j), 20 U.S.C.A. § 1415(j); Fed.Rules Civ.Proc.Rule 65(a), 28 U.S.C.A.

**[15] Federal Civil Procedure 170A ☞1991**

170A Federal Civil Procedure
    170AXV Trial
      170AXV(B) Time for Trial; Dockets, Lists and Calendars
        170Ak1991 k. In General. Most Cited Cases
It is party's duty to monitor docket regardless of lack of email notification; excuse that electronic case filing system was malfunctioning is unacceptable and unconvincing.

**[16] Schools 345 ☞155.5(5)**

345 Schools
    345II Public Schools
      345II(L) Pupils
        345k155.5 Handicapped Children, Proceedings to Enforce Rights

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 4

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

345k155.5(5) k. Judgment and Relief; Damages, Injunction, and Costs. Most Cited Cases District court would not alter or amend its judgment entering stay put injunction in IDEA case, where defendants received adequate notice and did not show that expedited briefing schedule affected their ability to oppose that motion for injunction. Individuals with Disabilities Education Act, § 615(j), 20 U.S.C.A. § 1415(j); Fed.Rules Civ.Proc.Rules 60(b)(1), 65(a), 28 U.S.C.A.

[17] Schools 345 ⟐155.5(5)

345 Schools
    345II Public Schools
      345II(L) Pupils
        345k155.5 Handicapped Children, Proceedings to Enforce Rights
          345k155.5(5) k. Judgment and Relief; Damages, Injunction, and Costs. Most Cited Cases Stay put injunction did not exclude school district from participating in selection of children's alternative school placement thus violating their IDEA rights; district did not have a statutory right to violate its stay put obligations. Individuals with Disabilities Education Act, § 615(j), 20 U.S.C.A. § 1415(j).

Karen D. Alvarez, Washington, DC, for Plaintiffs.
Edward P. Taptich, Veronica A. Porter, Office of the Attorney General for the District of Columbia, Washington, DC, for Defendants.

*MEMORANDUM OPINION*
URBINA, District Judge.

**Denying the Defendants' Motion for Relief From Judgment**

**I. INTRODUCTION**

*1 This Individuals with Disabilities Education Act ("IDEA") case comes before the court on the defendants' motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).[FN1] The plaintiffs, handicapped children and their parents and guardians, filed a motion for a stay put

injunction to prevent the defendants, the District of Columbia and the District of Columbia Public Schools ("DCPS"), from unilaterally modifying the students' current school placement.[FN2] Because the defendants' proposed placements modified the students' Individualized Education Plans ("IEP"),[FN3] the court granted the plaintiffs' motion for a stay put injunction. The defendants now move the court for relief from judgment under Federal Rule of Civil Procedure 60(b). Because the court applied the correct legal standard in analyzing the plaintiffs' motion for a stay put injunction, because the court entered the stay put injunction after the defendants received adequate notice, and because the stay put injunction does not violate the defendants' statutory rights, the court denies the motion to relieve the defendants from the judgment.

**II. BACKGROUND**

**A. Factual Background**

The instant motion relates to two of the plaintiffs, T.L. and A.J.P., both special education students in the District of Columbia.[FN4] Mem. Op. (Sept. 28, 2006) ("Mem.Op.") at 2. T.L. is sixteen years old and brings suit through his grandmother and legal guardian, Betty Laster. *Id.* T.L.'s May 2004 IEP concluded that T.L. should attend Kingsbury Day School ("KDS") because he "requires small group instruction, individualized education and integrated related services." *Id.* On July 28, 2005, Laster and various school officials met to discuss T.L's IEP for the 2005-2006 school year. *Id.* At this meeting, DCPS changed "T.L's classification from 'learning disabled' to a primary classification of 'learning disabled' with a secondary classification of 'emotionally disturbed.' " *Id.* Because of the change in T.L's classification, KDS refused to admit him. Pls.' Mot. for Stay Put Inj. at 3. DCPS notified Laster that it was placing T.L. at the D.C. Alternative Learning Academy ("DCALA") as an alternative to KDS. Mem. Op. at 7. Laster informed DCPS that she disagreed with T.L's placement at DCALA. *Id.* On September 9, 2005, Laster filed an administrative due process complaint challenging the IEP and T.L.'s placement at DCALA. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                      Page 5

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

A.J.P. is four years old and brings suit through his mother, Leslie T. Jackson. Mem. Op. at 3. In August 2004, A.J.P.'s IEP for the 2004-2005 school year stated that he should attend the "inclusion nursery school program" at Stoddert Elementary School. *Id.* Stoddert Elementary School, however, no longer offers its inclusion program. *Id.* On August 10, 2005, DCPS issued a new IEP placing A.J.P. in the citywide autism program at Barnard Elementary School. *Id.* The IEP also changed A.J.P.'s classification from developmentally delayed to autistic. *Id.* Jackson disputes the classification change and the new placement at Barnard Elementary School. *Id.* As a result, she filed an administrative due process complaint on September 13, 2005. *Id.*

### B. Procedural Background

**\*2** After filing administrative due process complaints, the plaintiffs filed a civil suit alleging violations of their stay put rights on September 22, 2005. Mem. Op. at 4. In conjunction with their civil suit filings, the plaintiffs requested stay put injunctions to prevent the defendants from modifying the students' current IEP placements. *Id.* On September 23, 2005, the court ordered an expedited briefing schedule. *Id.* The court subsequently determined that the alternative placement facilities proposed by the defendants were not substantially similar to the children's current schools. *Id.* Because the defendants are required to find a substantially similar placement when an IEP placement becomes unavailable, the court granted the plaintiffs' motion for a stay put injunction on September 26, 2005. *Id.* In addition to granting the motion for an injunction, the court ordered the parties to meet on September 29, 2005 to discuss potential stay put placements, but the parties were unable to reach an agreement. On October 14, 2006, the defendants filed a motion for relief from judgment. The court now turns to that motion.

### III. ANALYSIS

### A. Legal Standard for Relief under Federal Rule

of Civil Procedure 60(b)

**[1][2][3][4]** In its discretion, the court may relieve a party from an otherwise final judgment pursuant to any one of six reasons set forth in Rule 60(b). Fed.R.Civ.P. 60(b); *Lepkowski v. Dep't of Treasury,* 804 F.2d 1310, 1311-12 (D.C.Cir.1986). First, the court may grant relief from a judgment involving " mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b). Such relief under Rule 60(b) turns on equitable factors, notably whether any neglect was excusable. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Second, the court may grant relief where there is "newly discovered evidence" that the moving party could not have discovered through its exercise of due diligence. Fed.R.Civ.P. 60(b). Third, the court may set aside a final judgment for fraud, misrepresentation, or other misconduct by an adverse party. *Id.; Mayfair Extension, Inc. v. Magee,* 241 F.2d 453, 454 (D.C.Cir.1957). Specifically, the movant must show that "such ' fraud' prevented him from fully and fairly presenting his case," and that "the fraud is attributable to the party or, at least, to counsel." *Richardson v. Nat'l R.R. Passenger Corp.,* 150 F.R.D. 1, 7 (D.D.C.1993) (Sporkin, J.) (citations omitted). Fourth, the court may grant relief where the judgment is "void." Fed.R.Civ.P. 60(b). A judgment may be void if the court lacked personal or subject-matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by law. *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 871 (4th Cir.1999). Fifth, the court may grant relief if the "judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed ... or it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b); *Twelve John Does v. Dist. of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988) (noting that not all judgments having continuing consequences are "prospective" for the purposes of Rule 60(b)). Sixth, the court may grant relief from a judgment for "any ... reason justifying [such] relief." Fed.R.Civ.P. 60(b). Using this final catch-all reason sparingly, courts apply it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 6

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

only in "extraordinary circumstances." *Pioneer Inv. Servs.,* 507 U.S. at 393, 113 S.Ct. 1489.

*\*3* [5] A party proceeding under one of the first three reasons must file his Rule 60(b) motion within one year after the judgment at issue. Fed.R.Civ.P. 60(b). A party relying on one of the remaining three reasons may file his Rule 60(b) motion within a reasonable time. *Id.* The party seeking relief from a judgment bears the burden of demonstrating that he satisfies the prerequisites for such relief. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.,* 298 F.3d 586, 592 (6th Cir.2002).

**B. The Court Denies the Defendants' Motion**

The defendants make a number of arguments in their motion for relief from judgment. First, the defendants argue that the court applied the wrong legal standard in granting the stay put injunction. Defs.' Mot. to Alter J. ("Defs.' Mot.") at 6. Second, the defendants contend that their due process rights were violated because they did not receive adequate notice of the plaintiffs' request for a stay put injunction. *Id.* at 8. Last, the defendants argue that the court's decision precludes them from participating in the IEP process. *Id.* at 13. For the following reasons, the court denies the defendants' motion for relief from judgment.

**1. The Court Applied the Correct Legal Standard in Granting the Stay Put Injunction**

[6][7] The defendants argue that the court committed a mistake of law in treating the plaintiffs' request for a stay put injunction as an automatic injunction. According to the defendants, the court should have applied the four part test typically used in analyzing motions for preliminary injunctions. Defs.' Mot. at 7. The IDEA's stay put provisions, however, explicitly state that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child *shall* remain in the then current educational placement of such child." 20 U.S.C. § 1415(j) (emphasis added). Moreover, courts have consistently interpreted the

stay put provision to be an automatic injunction. FN5 *Casey K. ex rel. Norman K. v. Saint Anne Cmty High Sch. Dist.,* 400 F.3d 508, 511 (7th Cir.2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case); *Drinker by Drinker v. Colonial Sch. Dist.,* 78 F.3d 859, 864 (3d Cir.1996) (stating the stay put provision " functions, in essence as an automatic preliminary injunction"); *Wagner v. Bd. of Educ. of Montgomery County,* 335 F.3d 297, 301 (4th Cir.2003) (noting that an "injunction is automatic").

[8] The purpose of the stay put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Honig,* 484 U.S. at 306, 308, 108 S.Ct. 592. If the court were to accept the defendants' interpretation of the rule, it would nullify Congress's purpose-preventing unilateral action by school officials-unless a plaintiff could make a favorable showing on the four preliminary injunction factors. *Bd. of Edu. of Comm. High Sch. Dist. No. 218, Cook County, Ill. v. Ill. State,* 103 F.3d 545, 549-550 (7th Cir.1996) (noting that to impute the equitable factor test into the stay put provision would undermine the statutory framework).FN6 In short, the court properly granted the plaintiffs' stay put injunction without requiring the plaintiffs to meet the four part test typically applied to motions for injunctive relief.

**2. The Defendants Received Adequate Notice**

*\*4* [9][10][11][12][13] The defendants also argue that the court should alter its judgment because they did not receive adequate notice of the plaintiffs' motion for a stay put injunction.FN7 Defs.' Mot. at 8. · Because a preliminary injunction may be unlimited in duration, notice to adverse parties is required. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 432 n. 7, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Notice should be sufficient to give an opposing party an opportunity to respond and prepare an opposition to the motion for injunctive relief. *Id.* District court judges have substantial discretion in managing the timing of preliminary injunctions. *Ciena Corp. v. Jarrard,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

203 F.3d 312, 319 (4th Cir.2000). Because injunctions are usually time sensitive, courts determine the length of notice needed based on the urgency of the factual circumstances and the time available. *Id.* at 319-320.

[14] Because of the high risk of irreparable injury to the children involved, the court regarded the present case as particularly time sensitive, requiring expedited attention. *Blackman v. Dist. of Columbia,* 277 F.Supp.2d 71, 79 (D.D.C.2003) (noting that each day students lack an appropriate education that is "sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs constitutes irreparable harm"). Additionally, the present case involved atypical circumstances because both T.L. and A.J.P.'s current placements were unavailable and the parents of both students disagreed with the defendants' suggested substitute schools. Mem. Op. at 7. The unavailability of the students' last placement coupled with the parties' inability to agree on a substantially similar placement heightened the court's concern over the plaintiffs' right to a free and public education. Based on the circumstances of the case, and the potential harm to the children, the court allotted the amount of time it deemed sufficient to both parties.

The defendants further assert that "failure of the efile notification system" contributed to their denial of due process. Defs.' Mot. at 8-9. Specifically, the defendants contend that they did not receive e-mail notice of the court's September 28, 2005 memorandum opinion. *Id.* As a result, the defendants state that they arrived at the September 29, 2005 meeting unaware that an opinion had been issued the previous day and unprepared to express their opposing views. *Id.*

[15] It is a party's duty to monitor the docket regardless of a lack of email notification. *Fox v. Am. Airlines, Inc.,* 389 F.3d 1291, 1294 (D.C.Cir.2004). The excuse that the electronic case filing system was malfunctioning is unacceptable and unconvincing. *Id.* (analogizing a party's claim that counsel never received notice because the electronic case filing system malfunctioned to "an updated version of the 'my dog ate my homework'

line"); *see also McMillian v. Dist. of Columbia,* 233 F.R.D. 179, 181-82 (D.D.C.2005) (quoting *In re Mayhew,* 223 B.R. 849, 856 (D.R.I.1998) for the proposition that "it is the attorney's duty to monitor the docket and 'that an attorney may not simply sit back and rely on the court to keep him or her up to date' ").

*5 [16] Moreover, aside from stating that they were only given a short period of time to respond to the plaintiffs' request for a stay put injunction, the defendants have not stated what effect, if any, the expedited briefing schedule had on their ability to oppose the plaintiffs' motion. *Sparshott v. Feld Entm't, Inc.,* 311 F.3d 425, 433 (D.C.Cir.2002) (stating a party arguing that time limits are unfair must show prejudice). Because the defendants received adequate notice and because the defendants do not show that the expedited briefing scheduled affected their ability to oppose the plaintiffs' motion, the court declines to alter or amend its judgment.

### 3. The Court's Order does Not Violate the Defendants' Statutory Rights

Last, the defendants argue that the court's order excludes them from participating in the selection of both children's alternative school placement, thus violating their statutory rights. Defs.' Mot. at 13-14. Here, however, the court did not deny the defendants the right to participate in the IEP process. Rather, the court compelled the defendants to comply with the statutory obligations of finding a substantially similar placement.

The creation of an IEP under the IDEA is a collective effort among parents, teachers, the school district and other professionals. Mem. Op. at 4. The parties involved have separate and important roles in the process. For instance, if a student's current educational placement becomes unavailable, it is the role of educational authorities to provide the student with a similar placement pending administrative and judicial approval of its alternative placement plans.[FN8] *Knight by Knight v. Dist. of Columbia,* 877 F.2d 1025, 1028 (D.C.Cir.1989) (stating that DCPS must provide

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 8

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

child with a similar placement pending administrative procedures); *McKenzie v. Smith,* 771 F.2d 1527, 1533 (D.C.Cir.1985) (explaining that because DCPS disagreed with the alternative placement proposed by child's parents, it was obligated to provide a new, similar placement).[FN9]

Although the defendants suggested alternative placement programs for T.L. and A.J.P., these programs were not substantially similar to the children's current placement. Mem. Op. at 8, 9. In the case of T.L., the placement suggested by the defendants substantially reduced or eliminated the related services and supplemental aids he received at his current placement. Mem. Op. at 7. With respect to A.J.P., the school board's alternate placement in an autism program was much more restrictive than placement at an inclusion pre-school classroom in a language-intensive program. Mem. Op. at 8.

[17] The defendants argue that the court's order violates their statutory rights because it permits the plaintiffs to unilaterally select a substitute school for the child without the defendants' input. Defs.' Mot. at 13-14. But, the defendants do not have a statutory right to violate their stay put obligations. [FN10] In light of the defendants' failure to propose any placement that met the requirements in either child's 2004-2005 IEP, the court determined that the plaintiffs' proposed placements did in fact comply with the children's 2004-2005 IEP.[FN11] Furthermore, the defendants do not present any evidence that the new placement is inconsistent with the school criteria stated in either of the children's 2004-2005 IEP.[FN12]

*6 Here the defendants failed to find a substantially similar placement, as required by the IDEA. The defendants do not present any new evidence or arguments to counter the court's conclusion that their proposed alternate placements do not comply with the IDEA. Accordingly, the court denies the defendants' motion for relief from judgment.

### IV. CONCLUSION

For the foregoing reasons, the court denies the

defendants' motion for relief from judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of July, 2006.

FN1. The defendants bring their motion under Federal Rule of Civil Procedure 59(e), which requires parties to file motions within ten days of the challenged order. Because the defendants filed their motion more than ten days after the challenged order, the court analyzes the defendants' motion under Federal Rule of Civil Procedure 60(b). *McMillian v. Dist. of Columbia,* 233 F.R.D. 179, 180 n. 1 (D.D.C.2005) (explaining "that a motion filed within ten days of the district court's entry of judgment is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) and a motion filed ten days after the district court's entry of judgment is treated as a motion for relief under Federal Rule of Civil Procedure 60(b)") (citing *United States v. Emmons,* 107 F.3d 762, 764 (10th Cir.1997)).

FN2. Under the Individuals with Disabilities Education Act ("IDEA"), a parent who objects to her child's educational placement may file an administrative due process complaint requesting review of the placement decision. 20 U.S.C. § 1415(b)-(d). A stay put injunction allows a student to remain at his or her current school pending administrative review of the child's educational placement. 20 U.S.C. § 1415(j) ; *Andersen by Andersen v. Dist. of Columbia,* 877 F.2d 1018, 1023 (D.C.Cir.1989).

FN3. A disabled child's Individualized Education Plan ("IEP") is a comprehensive educational plan designed at annual meetings by the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                        Page 9

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

) tailored for each disabled child's needs. 20 U.S.C. § 1414(d). The IEP "sets forth the child's educational level, performance, and goals and is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.,* 103 F.3d 545, 546 (7th Cir.1996).

FN4. The court's order also granted a stay put injunction for a third disabled child, C.A. The defendants' instant motion, however, does not ask the court to reconsider the portion of the order that pertains to C.A. Defs.' Mot. to Alter J. (" Defs.' Mot.").

FN5. This is not to say that the traditional four part test for preliminary injunctions is entirely inapplicable to stay put injunctions. A party attempting to change the current placement of the child in a manner inconsistent with the current IEP will be required to meet the four factor preliminary injunction test. *Doe v. Brookline Sch. Comm.,* 722 F.2d 910, 917 (1st Cir.1983) (requiring a school board that ceased funding for the last agreed upon IEP placement to meet the traditional four part preliminary injunction test).

FN6. The defendants rely on *Honig v. Doe* and *Henry v. School Administrative Unit No. 29* to argue stay put injunctions are subject to the four part traditional preliminary injunction test. Defs.' Mot. at 6-7. The defendants, however, misunderstand the language in the forgoing cases. Both cases indicate that the IDEA's stay put provision creates a presumption in favor of the child's current placement, but the school district may overcome the presumption if it can demonstrate that application of the traditional four part preliminary injunction test warrants a different result. *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Henry v. Sch. Admin. Unit No. 29,* 70 F.Supp.2d 52, 58 n. 5 (D.N.H.1999).

In this case, the defendants have not shown that the traditional four part preliminary injunction test requires a different result.

FN7. The defendants also contend that the court erred in not ordering the plaintiffs to post a bond under Federal Rule of Civil Procedure 65(c). Defs.' Mot. at 9. Bonds are sometimes required for the payment of costs and damages that may be incurred or suffered by a party who is wrongfully enjoined. Fed.R.Civ.P. 65(c). In this case, the court was not required to order the plaintiffs to post a bond. First, the defendants never requested a bond. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir.2003) (stating "[a] judge could dispense with the bond requirement when no request for a bond was ever made in district court"). Second, only a party seeking to change (not maintain) the status quo needs to post a bond. *See e.g., Bd. of Educ. of Oak Park and River High Sch. v. Ill. State Bd. of Educ. and Kelly E.,* 10 F.Supp.2d 971, 982 (N.D.Ill.1998) (requiring parents of disabled children who sought to change the child's current placement to post a nominal bond of ten dollars), *vacated in part on other grounds,* 207 F.3d 931, 938 (7th Cir.2000); *Stockton by Stockton v. Barbour County. Bd. of Educ.,* 884 F.Supp. 201, 208 (N.D.W.Va.1995) (ordering parents of disabled child who sought to change child's status in contravention of the IEP to post a $10,000 bond to obtain a preliminary motion).

FN8. Parents may invoke the stay put provision whenever educational authorities propose a "fundamental change in, or elimination of, a basic element of the [then-current education placement]." Mem. Op. (Sept. 28, 2006) ("Mem.Op.") at 5 (citing *Lunceford v. Dist. of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C.Cir.1984)). When a new IEP has been issued but contested or a change has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

Page 10

been proposed and contested "the current educational placement is interpreted as the student's placement before the proposed [c]hange." Mem. Op. at 7 (citing *Spilsbury v. Dist. of Columbia,* 307 F.Supp.2d 22, 26).

FN9. A second role of the school board is to fund a child's education. *Fagan v. Dist. of Columbia,* 817 F.Supp. 161, 164 (D.D.C.1993) (stating that the school board shall fund a disabled child's education unless an exception applies).

FN10. Assuming *arguendo* that the court's order permits the parents to act unilaterally, as the defendants argue, Defs.' Mot. at 14, the court still sees no justification to alter the judgment under Federal Rule Civil Procedure 60(b). Parents may act unilaterally when the school board does not comply with IDEA provisions. *Block v. Dist. of Columbia.,* 748 F.Supp. 891, 897-898 (D.D.C.1990) (stating that DCPS lost the right to contest the parent's unilateral actions when it failed to comply with the IEP's requirements). Here, because the defendants failed to comply with IDEA provisions by not finding a substantially similar placement facility when the children's current facility became unavailable, the parents were entitled to act unilaterally. *Id.* at 898. (stating "DCPS cannot seriously argue that [the parent] simply should have waited patiently [i]n the hope that DCPS [w]ould save the day").

FN11. The defendants argue that requiring the defendants to compensate Jackson for the cost of the private institution she chose for A.J.P. violates their statutory rights. Defs.' Mot. at 13. Parents who challenge the placement selected by school officials, however, may be reimbursed for the tuition paid to the private school if the court agrees with the parents that the school board's selected placement was inappropriate, and that the parent's

unilateral action is appropriate under the act. *Fagan,* 817 F.Supp. at 164 (citing *Sch. Comm. of Town of Burlington v. Dept. of Educ. of the Commonwealth of Mass.,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)) (concluding that a parent was not entitled to reimbursement for unilaterally placing her child in a private school when the parent did not properly challenge the school board's placement decision and made no showing that the school board's placement choice was inappropriate). Here, the defendants' proposed placement was inappropriate and the court determined that plaintiffs' proposed placement complied with A.J.P.'s 2004-2005 IEP. Therefore, the court's order does not violate the defendants' statutory rights.

FN12. The defendants further argue that permitting T.L.'s mother to select a private school for T.L.'s alternative placement prevents them from presenting an alternative public placement in compliance with D.C.Code § 38-2501(c). Defs.' Mot. at 13. The statute requires DCPS to make special educational placements in the following order: (1) DCPS schools or DCPS public charter schools; (2) private or residential District of Columbia facilities; and (3) facilities outside of the District of Columbia. D.C.Code § 38-2501(c). DCPS must find placement facilities according to the provisions of D.C.Code § 38-2501(c) and must, under the stay put provision, discern whether the selected school is substantially similar to the current placement. Here, although the school selected by DCPS was a public school, it was not substantially similar to the child's current placement. Parents are not required to wait until DCPS complies with its statutory obligations before seeking an acceptable facility so the child may continue to receive an education. *Block,* 748 F.Supp. at 897.

D.D.C.,2006.
Laster v. District of Columbia

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 11

--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**


--- F.Supp.2d ----, 2006 WL 1982291 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3439496 (Trial Pleading) Defendants'
Answer to Complaint (Nov. 3, 2005) Original
Image of this Document (PDF)
• 2005 WL 3439495 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Opposition to Defendants'
Motion to Alter or Amend Judgement (Oct. 31,
2005) Original Image of this Document (PDF)
• 2005 WL 3174168 (Trial Motion, Memorandum
and Affidavit) (Oct. 14, 2005) Original Image of
this Document (PDF)
• 2005 WL 2861201 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Motion for Temporary
Restraining Order (Sep. 22, 2005) Original Image
of this Document (PDF)
• 1:05cv01875 (Docket) (Sep. 22, 2005)
• 2005 WL 2861202 (Trial Motion, Memorandum
and Affidavit) Defendants' Opposition to Plaintiffs'
Motion for Temporary Restraining Order (Sep. 21,
2005) Original Image of this Document (PDF)
• 2005 WL 2861204 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply to Defendants'
Opposition to Plaintiffs' Motion for Temporary
Restraining Order (2005) Original Image of this
Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                          Page 1

Slip Copy, 2006 WL 346320 (D.Puerto Rico)
**(Cite as: Slip Copy)**

**c**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Puerto Rico.
Carlos Fonnegra TAMAYO, Plaintiff,
v.
SANTANDER BANK, Defendants
**No. Civ. 03-2243(DRD).**

Feb. 14, 2006.

Godwin Aldarondo-Girald, Aldarondo Girald Law
Office, San Juan, PR, for Plaintiff.
Carmen Lucia Rodriguez-Velez, Pedro J.
Manzano-Yates, Enrique R. Padro, Fiddler,
Gonzalez & Rodriguez, San Juan, PR, for
Defendant.

*ORDER*

DOMINGUEZ, J.
**\*1** Pending before the Court is Banco Santander de
Puerto Rico's ("defendant") *Motion to Strike
Plaintiff's Untimely Opposition to BSPR's Motion
for Summary Judgment.* (Docket No. 65). Through
said motion, defendant urges the Court to eliminate
from the record plaintiff's opposition to it's request
for *brevis* disposition. Defendant argues that
plaintiff, having been generously provided by the
Court with a second turn at bat to comply with
management deadlines that he had already
neglected to fulfill, ignored the Court's previous
order and, once again, ill-complied with a case
management deadline by having filed the opposition
four hours and eleven minutes past the deadline. FN1
Plaintiff, in his opposition to the motion to
strike, avers that, not only does defendant "lack
[sic] clean hands to raise any time limit defense",
but fails to raise any prejudice the delay might have
caused. They also inform the Court that:

> FN1. The Court had previously denied
> plaintiff's original request to extend time to

oppose for his failure to comply with Local
Rule 7.1(b). (Docket No. 47). Upon
reconsideration, the Court allowed plaintiff
to file said opposition, but only if it was
filed on or before August 31, 2005 at
twelve noon. Plaintiff failed to file his
opposition until 4:11p.m. (Docket No. 63).

the Motion in Opposition to Motion for Summary
Judgment was prepared before noon but the
secretary had problems with the transfer of the
exhibits to PDF and the electronic filing of the
same. The undersigner [sic] attorney had left at
noon for a medical appointment confident that the
document would be filed within the period indicated
by the Court.
*Opposition,* Docket No. 66 at 4-5, ¶ 16.

Faced with this dispute, the **Court** then issued an
order scheduling a hearing with appearing counsel
in order to better ascertain the reasons behind
plaintiff's second ill-compliance before adjudicating
the pending motion to strike. During said hearing,
plaintiff's counsel merely reiterated what had
already been discussed in his opposition to the
motion to strike. That is to say, even when they
started to electronically file their opposition before
the Twelve Noon deadline, the confronted problems
with the **CM/ECF** system as well as with the
transfer of exhibits to electronic files.FN2 *Minute,*
Docket No. 75. Counsel requested the **Court** accept
plaintiff's opposition and personally economically
fine counsel for the delay. That said, the **Court**
received **notice** from the **CM/ECF** Project
Manager explaining that plaintiff's counsel's actual
login to the system to file the opposition in question
is registered by the login table at 3:22p.m. and not
earlier as had counsel expressed-three hours and
twenty two minutes past the **Court** ordered
deadline. FN3 Accordingly, the **Court** issued an
order to show cause under penalty of perjury why
defendant's motion to strike should not be granted
provided this newly acquired data. (Docket No. 76).
Plaintiff, once again restated its previous argument

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 2

Slip Copy, 2006 WL 346320 (D.Puerto Rico)
**(Cite as: Slip Copy)**

stating that "the document was filed three hours and twenty two minutes later because we had problems converting the exhibits [ ] from their paper format to electronic format". *Motion in Compliance,* Docket No. 77 at 2, ¶ 4 *(emphasis supplied* ). Plaintiff's counsel also argued that he "did not know [that paper filing in the **Clerk's** Office when such problems arise] before the hearing of October 21st, 2005." *Id.*[FN4] Finally, plaintiff purports that, were the **Court** to consider his failure to comply a serious offense, sanctions be imposed upon the attorney rather than deprive plaintiff party from his opportunity to oppose the request for summary judgment.

> FN2. As per the CM/ECF Project Manager, Coral Rodriguez, Esq.'s letter, " [s]canning documents is not a process pertaining to Electronic Filing, it is a preparatory process for documents[, and t]he electronic filing process starts when the attorney logins [sic] to the Electronic Case Filing System." *Order to Show Cause,* Docket No. 76 at 2, ¶ 3 *(emphasis ours* ).

> FN3. The Project Systems Manager clarified that plaintiff's counsel's secretary's declaration "refers only to the preparatory process, by indicating that the problem was scanning the documents. The exhibit submitted and her declaration supports the conclusion that the electronic filing process was not started before noon, only the preparatory process was started before noon." *Order to Show Cause,* Docket No. 76 at 2, ¶ 4 *(emphasis ours* ).

> FN4. The Court emphatically notes that *Standing Order No. 1 (CM/ECF),* which is available to, not only all members of this bar, but to the general public through this District Court's web page ( *www.prd.uscourts.gov* ) mandates that attachments to a pleading or motion that are not capable of conversion to PDF electronic format, as well as exhibits or documents not capable of efficient conversion to PDF electronic format, and

which exceed fifty pages, will be filed conventionally and not electronically unless otherwise specified by the Court. *Standing Order No. 1(CM/ECF), In the Matter of Electronic Filing,* Misc. No. 03-149(HL), at 6-7, ¶ 6(a)-(b). Said order is also clearly expressed in the *Notice to Counsel, Manual for CM/ECF,* No. 04-04, at 6, n. 2 (also available at the above address).

**\*2** Once again, the Court must emphasize that it cannot allow litigants to treat scheduling orders "as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril." See *O'Connell v. Hyatt Hotels of Puerto Rico,* 357 F.3d 152, 155 (1st Cir.2004). "[A] litigant who ignores a case-management deadline does so at his peril ... We have made it clear that district courts may punish such dereliction in a variety of ways.... [L]itigants have an unflagging duty to comply with clearly communicated case-management orders...." *Rosario-Diaz v. Gonzalez,* 140 F.3d 312, 315 (1st Cir.1998)(Court need not consider Summary Judgment filed beyond deadline *Id.* at 315-16.). Violations of the Court's orders impedes its efficiency and merits sanctions. *See generally Chuang Invs. v. Eagle Inns, Inc.,* 81 F.3d 13, 14 (1st Cir.1996) ("Prejudice to the court is inherent in needless delays and postponements."); *Robson v. Hallenbeck,* 81 F.3d 1, 2 (1st Cir.1996) ("[A] district court has broad authority to enforce pre-trial discipline and to dismiss a case for failure to obey pre-trial orders."); *Serrano-Pérez v. FMC Corp.,* 985 F.2d 625 (1st Cir.1993) (expert witness obtained beyond deadline excluded from case); *Goldman, Antonetti v. Medfit Int'l, Inc.,* 982 F.2d 686 692 (1st Cir.1993) (dismissal with prejudice for failure to attend pretrial and settlement conference); *Riofrio Anda v. Ralston Purina, Co.,* 959 F.2d 1149, 1154-55 (1st Cir.1992)(disallowing amendment of complaint two months after deadline in court's scheduling order); *Thibeault v. Square D Co.,* 960 F.2d 239, 247 n. 7 (1st Cir.1992) ("we heartily endorse the utilization of discovery closure dates ... as a case management tool"); *Barreto v. Citibank, N.A.,* 907 F.2d 15, 16 (1st Cir.1990) (" [W]ell established principle that discovery orders, other pre-trial orders, and, indeed, all orders

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2006 WL 346320 (D.Puerto Rico)
**(Cite as: Slip Copy)**

governing the management of a case are enforceable under pain of sanction for unjustifiable violation."); *Spiller v. U.S.V. Lab., Inc.,* 842 F.2d 535 (1st Cir.1988) (Dismissal due to failure to obey Court order to retain new counsel, *inter alia* ); *Corretjer Farinacci v. Picayo,* 149 F.R.D. 435 (D.P.R.1993) (disregard of judge's scheduling order and local rules of the district justifies sanctions).

Notwithstanding that plaintiff's counsel has not been entirely candid with the Court, perhaps because of ignorance as to his secretary's performance, the Court shall not, at this time, strike the opposition. Since the Court is authorized to "punish the dereliction in a variety of ways", *Rosario Diaz v. Gonzalez,* 140 F.3d 312, 315 (1st Cir.1998), and because all the documents, albeit late by three hours, were filed on the same date, the Court shall allow the filing. Accordingly, defendant's motion to strike plaintiff's opposition is DENIED. However, counsel is SANCTIONED with a fine of $1,000.00 to be paid FORTHWITH. Plaintiff's opposition is hereby authorized and shall be docketed and numbered by the Clerk. Counsel for defendant may reply within the next ten (10) days. No sur-reply is to be filed by plaintiff.

*3 IT IS SO ORDERED.

D.Puerto Rico,2006.
Tamayo v. Santander Bank
Slip Copy, 2006 WL 346320 (D.Puerto Rico)

Briefs and Other Related Documents (Back to top)

• 3:03cv02243 (Docket) (Nov. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.