UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

ROBERT PAYNE and PAYNE INVESTMENTS LLC, :

        Plaintiffs, :

                              No. 3:02CV2234 (AWT)

        -against- :

TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, :

        Defendants. :

---

## REPLY AFFIDAVIT IN SUPPORT OF MOTION TO REOPEN

STATE OF NEW YORK  )
                         ) ss.
COUNTY OF NEW YORK )

    JAMES P. DONOHUE, JR. being duly sworn, deposes and states as follows:

    1. I am over the age of 18 years and understand the obligations of an oath.

    2. I am one of the attorneys for the Plaintiffs, Robert Payne and Payne Investments LLC. I have personal knowledge of the facts set forth in this Reply Affidavit which I submit in support of Plaintiffs' motion to reopen the case.

    3. In their opposition to this motion the Defendants make a number of claims which are patently untrue. First, Plaintiffs do not contend, as the Defendants assert,

that the clerk's office is at fault in the failure to get actual notice. Plaintiffs were not assigning "fault" in their initial papers, merely stating that the orders had not been received by the attorneys in charge. The complexity of the e-mail system is beyond the expertise of Plaintiffs' counsel, which is why we rely on others to set up and service our system and look to them for the answer as to what happened and how to correct it.

    3. In the case of the e-mails addressed to Mr. Crystal, it was immediately realized that he had not gotten the most recent e-mails because the prefix on the e-mail had not been changed. At that point, we have no idea how the error occurred (Ms Guzowski may have missed it, she might have communicated with the Clerk's office and the error occurred there, or for some other reason), but moved to correct it immediately on discovery. In addition, as was subsequently learned, the "pg" designation could have been (and it now has been) adjusted to route any e-mail to that address to Mr. Crystal. It should be noted the first 49 entries (out of 53) on the docket occurred prior to the firm moving offices. As noted, by the entries, motions were received and responded to by this firm without any problem. It was only the last few e-mails that did not reach Mr. Crystal because the "pg" designation was no longer reaching anyone after Ms. Guzowski had left. The e-mails after the office moved, until the order of March 23, 2006, (Numbers 50 through 53) were the motions and extensions of time, which were routinely sent to me by hard copy by Defendants, so we always had notice of the court's orders until the order of March 23, 2006.

    4. As to the e-mails sent to my attention ("jpd"), even the individual who set up the system (King Chan) and knows far more about these systems than I do, could not find them, even in the deleted folders. While I fully acknowledge that it is possible that

2

they were inadvertently deleted or otherwise lost, since they cannot be located in the deleted files, I cannot state with certainty what happened. What I do know, is that prior to July of this year, I had not seen them, have no recollection of having received them and no matter what family matters may have been demanding my attention at the time they were issued, if I had recognized an e-mail had arrived from any court (or for that matter even an adversary), I certainly would not intentionally have ignored it. Moreover, since the firm had already registered an e-mail address in this case when I first appeared, my e-mail address was not formally provided to the clerk's office, but apparently picked up from other documents filed with the court. I operated under the misapprehension that e-mails were being directed only to Mr. Crystal and not to me, which was one of the reasons I requested hard copies from the Defendants.

5. Obviously, hindsight is twenty-twenty. Clearly, even though my mother was dying of cancer, passed away (April 8, 2006) and was buried (April 28, 2006) during this very time period these orders had been issued, I wish the docket had been checked and that other safeguards, now installed or being installed, were in existence. However, despite the fact that the order was clearly missed, in considering the factors that come into consideration on a motion like this, it is respectfully submitted that good cause has been shown as to why the motion to reopen and restore should be granted.

<u>There is No Prejudice To Plaintiff</u>

6. As set forth in the moving papers, there is no prejudice to Defendants on this motion. The Defendant's memorandum of law recites no prejudice and refers to the affidavit of Mr. Varga. Mr. Varga, in his affidavit, does not state that his client was prejudiced. He refers to an unidentified court decision earlier this year that was withheld

from Plaintiffs, but does not explain how a decision he claims was favorable prejudices his client. He does claim that the expert's report was not delivered by the date set forth in the court's last scheduling order. However, he neglects to advise the court that he <u>agreed</u>, in light of the fact that Plaintiffs were being delayed in getting the report done by Defendants' failure to produce documents, that the report could be produced after that date (See Letter to Mr. Varga, Exhibit A). Thus, Defendants not only did not object to the delay, initially, they actually agreed to it and caused it.

  7. Clearly, after Plaintiffs' expert had to withdraw when a conflict arose, this delayed getting the report to Defendants beyond what was previously anticipated (Exhibit B), but at no time did Defendants ever object to not getting the report by a certain date and for understandable reasons.

<u>Duration of Delay</u>

  8. Although Plaintiffs are certainly not happy that it took several months to find a new expert and prepare a report, Plaintiffs' delays in this matter were of short duration when compared to those of the Defendants. As set forth in the moving papers, even prior to the expert's report being done, Defendants had been asked for and had represented they would produce additional documentation. This was reflected in the amendments to the scheduling orders. See Exhibit C, paragraph 1:

> "The plaintiffs conducted the depositions of eight (8) individuals in Washington DC during the week of March 14, 2005 and have requested additional documents based on the deposition testimony to which the defendants have not yet responded. This fact discovery was supposed to be completed by June 14, 2005 and it is still open.

  9. Similarly, when Defendants sought to depose Robert Payne a year after his first deposition, which when they closed, had reserved only as to additional documents

4

that might be produced (Exhibit D, Payne deposition p. 79) and when Robert Payne came in to be deposed on those subjects, Defendants went well beyond the subject matter that they had reserved at Payne's first deposition. At that deposition, Defendants agreed to supply their position as to each new point by way of stipulation (Exhibit E Payne Deposition, pp 106-107) That "on record" representation was also not fulfilled.

    10. Consequently, while Defendants are now complaining about the Plaintiffs' "lack of activity", they ignore their own "lack of activity". They concede they did not provide the documents requested, did not abide by the "on the record" stipulation, apparently did nothing to prepare for trial and agreed to a delay in the Plaintiffs' getting their expert report.

    11. Similarly, while Defendants (in their memorandum) question when the draft proposed pre-trial order was done, there is no question that they were advised it was being drafted back as long ago as August of 2005 (Exhibit A) and, more importantly, that they represented they would not do their part until a new date was set by the court.

Notice

    12. Defendants also argue that Plaintiffs were receiving prior notices by e-mail and never complained about a problem. As set forth above, there was no reason to complain. As noted above the e-mails to "pg" were getting through on the "pg" designation until the beginning of 2005. In addition we <u>were receiving hard copies</u> by mail or fax See (Exhibit F –mailed notice of settlement conference by court; Exhibit C – Mailed copy of Fifth Amendment to Scheduling Order). Again, hindsight being twenty-twenty, I acknowledge that after getting the hard copies, and recording the dates in our calendars, I could have inquired of Mr. Crystal if he had gotten an e-mail which

5

corresponded to the hard copy I received from Defendants, and the problem might have been discovered. Unfortunately, there was no reason to suspect there was a problem.

13. However, the manner in which these earlier notices were sent and received is not the issue before the court, since it was conceded by Defendants in the pre trial discovery orders that Plaintiffs had complied with orders involving completing depositions and producing documents and Defendants had not.

14. The issue on this motion is the failure to respond to the order of March 23, 2006, and the reopening of the order of May 2, 2006 which as these Defendants recognize, "can be suspended, altered, or rescinded by the court." In the case at bar, as shown in the accompanying memorandum of law, the factors considered on these motions weigh overwhelmingly in favor of granting this motion. It would clearly be a miscarriage of justice to deny the Plaintiffs a determination on the merits of a case, which clearly has merits, due to an inadvertent act of counsel or a breakdown in electronic communications.

15. It is respectfully requested that the motion be granted and the Defendants required to produce what they are required to produce, and that parties be given a final date for the submission of expert's reports and a pre-trial order.

                                      <u>S/ James P. Donohue, Jr.</u>
                                      James P. Donohue, Jr.

Sworn to before me this
28th day of August, 2006

<u>s/Frederic P. Rickles</u>
Frederic P. Rickles
Notary Public, State of New York
No. 31-4999232
Qualified in Westchester County
Commission Expires, September 27, 2006