Exhibit E

PAYNE v. TAYLOR VISION

May 13, 2005

Page 107

ROBERT PAYNE

1 can be utilized at trial? Or we'll stipulate --
2 MR. VARGA: Correct.
3 A  Let me answer the question first by taking
4 the high road, Doug.
5 Q  I would just ask that you answer the
6 question, and the only question that I have for you
7 right now, Mr. Payne, is: Is there anything on
8 Exhibits 10, 11 or 12 that you have indicated that you
9 performed the task, that, in fact, you were not the
10 sole person performing the task? And if the answer is
11 yes, there are some instances of that, I would like you
12 to just make a notation next to your initials on these
13 documents just so we know what your position is in the
14 case.
15 MR. DONOHUE: Can I interrupt and ask -- off
16 the record.
17 (Discussion off the record)
18 A  As I say, let me answer the question.
19 Q  I prefer if you didn't refer to your prior
20 deposition transcript which you have in front of you.
21 A  Why not?
22 Q  Because it's inappropriate.
23 I'm asking you to answer the question.
24 MR. DONOHUE: You can refer him to your
25

Page 108

ROBERT PAYNE

1 testimony without reading a specific line.
2 Q  Mr. Payne, all I'm asking you to do is to
3 denote on these three documents which you performed
4 solely, and which you performed, but others performed
5 as well.
6 A  Doug, I was hired by Mr. Taylor to be the
7 managing director on transactions. The role of a
8 managing director is to work with a team of people in
9 executing a transaction. And where a transaction is in
10 trouble, for example, where things need to happen to
11 make sure it concludes, then the managing director
12 brings the resources necessary to that transaction.
13 In all cases, I would say that there were
14 others working in -- as a managing director's role
15 always is. There is no managing director on Wall
16 Street that ever would assert that he does things by
17 himself. That is not what a firm is all about.
18 I was hired by Taylor Companies, and my
19 previous deposition asserts this, that Taylor
20 represented to me they had resources, approaches,
21 assets, et cetera, necessary to originate, effect and
22 close transactions. I was to come in as a catalyst to
23 make sure that that would happen, to originate
24 transactions, which I did, to manage transactions,
25

Page 109

ROBERT PAYNE

1 which I did, and in some cases, reciting these three
2 issues, 10, 11 and 12, and in some cases there were
3 others within the firm that I used. And in some cases
4 others let me down and I had to step in and do it all.
5 And that is my answer.
6 Q  I appreciate that clarification.
7 A  May I talk to my counsel for a second?
8 Q  Sure.
9 (The witness and counsel confer)
10 MR. VARGA: Would you mark this.
11 (Defendants' Exhibit 13, document headed
12 "Mitek Transaction History," marked for
13 identification.)
14 Q  Mr. Payne, I would like to show you a
15 document that has been marked as Exhibit 13. Can you
16 identify that document, please?
17 A  It's entitled "Mitek Transaction History."
18 Q  Did you prepare this document?
19 A  I believe I did.
20 Q  You seemed hesitant in your answer. Is there
21 any reason why you believe you did not draft this
22 document?
23 A  It's been four years, my memory is not
24 perfect. But it looks like it would be something I
25

Page 110

ROBERT PAYNE

1 would have drafted, yes.
2 Q  Can you tell me why you drafted this?
3 A  I can speculate. My memory is not perfect.
4 Q  Do you generally recall why you drafted this
5 document?
6 A  It may have been for creating the -- for
7 supporting discussions with Ralph Taylor on fee issues
8 associated with the transaction.
9 Q  Do you know when you drafted this document?
10 A  There is no date on it, I do not know.
11 Q  Do you know if you still have this document
12 in your computer?
13 A  I don't know.
14 Q  I would like to ask you about Item No. 6 --
15 A  Right.
16 Q  -- on Exhibit 13 that references a meeting
17 with Henry Kravis of KKR.
18 A  Yes.
19 Q  You went to that meeting with Mr. Taylor and
20 Dermot Coughlan, correct?
21 A  Yes.
22 Q  Who arranged that meeting?
23 A  I don't know.
24 Q  Was that the first time you had ever met
25

8 (Pages 107 to 110)

SANDERS, GALE & RUSSELL
(203) 624-4157

Page 103

ROBERT PAYNE

1 performance of some of those tasks?
2
3   A   I did not.
4   Q   Are there any on Exhibit 12 that should be
5 denoted partial?
6   A   In the context of the earlier comment about
7 partial, not on the Dow transaction, but on the Borden
8 transaction where there were multiple parties always
9 doing that task vis-a-vis delegating, et cetera. The
10 word "partial" does not apply on the Rexam transaction,
11 because partial in the Dow transaction is meant to say
12 I was finished, I was done with Taylor Companies, and
13 so I started the process, but did not finish it. That
14 is what I mean by "partial."
15   Q   For Dow, your partial means you started the
16 process but did not complete it?
17   A   That is correct.
18   Q   However, on none of Exhibits 10, 11 or 12 did
19 you in any way indicate that while you were involved in
20 a particular task others also were involved in a
21 particular task?
22   A   That is correct.
23   Q   I would now ask you to indicate on Exhibits
24 10, 11 and 12, Mr. Payne, any task that you partially
25 performed and others partially performed, just with a

Page 104

ROBERT PAYNE

1
2 star next to your initials or some similar notation.
3   What I'm trying to get at here, Mr. Payne, I
4 just want to know which of these tasks that you have
5 initialled you performed solely, or you performed in
6 conjunction with others.
7   MR. DONOHUE:  Doug, I really --
8   THE WITNESS:  Can we talk?
9   MR. DONOHUE:  One second. I understood when
10 we left the last deposition he might be called
11 back to look at a couple of documents that we were
12 going to produce. It's now pretty clear to me
13 that Mr. Stein, who was at the deposition last
14 time, had this document, because we sent it to
15 him. It's in the Notice of Claim. Why are we
16 doing all of this? This was not supposed to be a
17 second round of depositions of Mr. Payne. You
18 don't want to produce your guys and me do the same
19 thing to them, do you? This really is going over
20 the same ground.
21   MR. VARGA:  I disagree that it's going over
22 the same ground. I would note that the prior
23 deposition of Mr. Payne lasted all of about two
24 hours. All I'm trying to do at this point is to
25 just nail down the specific tasks that Mr. Payne

Page 105

ROBERT PAYNE

1
2 performed on three deals. It's not going to take
3 an inordinate amount of time. I assure you I'm
4 not plowing new ground, and I'm not asking
5 questions about it. I wanted to initial them so
6 we all know exactly what Mr. Payne's position is
7 before we go to trial.
8   MR. DONOHUE:  You have to agree with me,
9 though, that you had the opportunity -- not you,
10 but your partners had the opportunity to ask these
11 questions the first time around.
12   MR. VARGA:  That may or may not be true.
13   MR. DONOHUE:  So this is a second bite of the
14 apple, really.
15   MR. VARGA:  I'm continuing the Plaintiffs'
16 deposition. I'm not going to take five hours to
17 complete the Plaintiffs' deposition. I'm just
18 trying to find out what his side of the story is
19 before we go to trial. I did not think it was
20 necessary for me to have to go back to the judge
21 and explain what I'm doing, and I'm asking you
22 to -- I don't think I need leeway, but I'm asking
23 you to just let me finish the questioning of the
24 witness and we'll be done with this.
25   MR. DONOHUE:  Mr. Payne, you said you wanted

Page 106

ROBERT PAYNE

1
2 to speak to me about this?
3   THE WITNESS:  I'm just rereading part of my
4 other deposition.
5   (Witness perusing document)
6 BY MR. VARGA:
7   Q   Mr. Payne, I would just ask you to look at
8 Exhibits 10, 11 and 12 and just --
9   A   I understand your question.
10   MR. DONOHUE:  Also, Doug, again, are you
11 going to provide us, then, once you have his
12 responses, as to Taylor's positions on each of
13 these points in a manner that can be utilized at
14 trial?
15   MR. VARGA:  We can go off the record if we
16 need to go off the record.
17   (Discussion off the record)
18   MR. VARGA:  We have had a colloquy off the
19 record, and I have agreed with Mr. Donohue that
20 with respect to Exhibits 10, 11 and 12, that I
21 will provide Mr. Donohue with the Defendants'
22 position as to whether or not we agree or disagree
23 that Mr. Payne performed all or part of the tasks
24 as he has denoted on these exhibits.
25   MR. DONOHUE:  That will be in a manner that

7 (Pages 103 to 106)