UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERTY PAYNE and<br>PAYNE INVESTMENTS, LLC,<br><br>         Plaintiffs,<br><br>    v.<br><br>TAYLOR VISION RESOURCES,<br>TAYLOR STRATEGIC ACQUISITIONS,<br>TAYLOR STRATEGIC DIVESTITURES<br>and TAYLOR FINANCIAL SERVICES, LLC.<br>all defendants collectively operating under<br>the name TAYLOR COMPANIES,<br><br>         Defendants. | :<br>:<br>:<br>:<br>:<br>:   3:02 CV 2234 (AWT)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO REOPEN**

This Reply Memorandum of Law is submitted in support of the Plaintiffs' Robert Payne and Payne Investments LLC ("Plaintiffs") Motion to re-open this case.

The opposition by Defendants is far more significant for what it concedes and admits rather than for what it purports to contest. As set forth by the Defendants in their memorandum of law in opposition, the Defendants would like the Court to decide this matter on only one issue, that of notice. The law requires a much broader consideration, involving at least five factors. As this memorandum of law will show, the reason the Defendants wish to ignore the other factors, is that consideration of these

factors all weigh in favor of granting the Plaintiffs' motion, which seeks to restore to the calendar a case that was dismissed on a procedural error, 1) where the merits have been acknowledged; 2) Plaintiffs have been moving the case forward and Defendants have not; 3) Defendants did not and will not suffer any prejudice as a result of Plaintiffs' inadvertent delay; 4) the motion was made within a few months of the order; and 5) a significant portion of the "lack of activity" of which the Defendants now complain can be directly attributed to the positions taken by Defendants.

As the court certainly understands, the discovery of the order and judgment when checking on the status of the case in July of 2006, resulted in two actions being immediately taken by plaintiffs' law firm: 1) make the present motion to reopen and 2) investigate how these orders were missed so that a procedure can be established to make sure there would no recurrence. The answer to the second lies well outside the bounds of expertise of most attorneys, and consequently, an expert who works with computers was specifically brought in to investigate the problem and make the appropriate recommendations. His conclusions are set forth in the reply affidavit of King Chan dated August 23, 2006 submitted herewith.

This memorandum will concentrate on the legal standards provided by the Second Circuit on a motion to reopen. Based on the law, it is respectfully submitted that (even accepting the contentions of the Defendants as accurate, which they are not with respect to the actions of counsel), that the Court, in the exercise of its discretion, should grant the Plaintiffs' motion.

<u>The Action</u>

As set forth in the draft pre-trial order, submitted with the moving papers as Exhibit F, this action is based on a breach of a written employment agreement, in which Plaintiff Robert Payne was hired as a Managing Director to handle acquisitions and divestures for the Defendants. His compensation was to include a percentage of the gross proceeds the Defendants received on such projects. The merits of Plaintiffs' claims are best demonstrated by the fact that after he retained counsel to assert his claims, the Defendants implicitly acknowledged the claims' validity and made several part payments (without prejudice) totaling more than $250,000.00 (See Draft of Joint Trial Memorandum, Moving Papers, Exhibit F, pages 6 and 8).

In addition, as acknowledged by the Defendants in their Memorandum in Opposition, a settlement conference was held, in which both sides made proposals for settlement. Although no settlement was achieved, obviously there was "money on the table" that Plaintiffs could have accepted rather than simply walk away from the case. It defies logic to believe that Defendants' counsel could have thought that under these circu8mstances, the case was being abandoned.

Previous Procedure

Although the complaint was served in January of 2003, issue was not joined until approximately eleven months later due to extensions of time requested by the Defendants and Defendants' motion to change venue, which motion was denied. This delay, of almost a year cannot be attributed to the Plaintiffs.

The parties' Rule 26 was filed on March 1, 2004 and initially anticipated all discovery being completed by September of that year. Plaintiff correctly anticipated

3

deposing eight witnesses. The Defendants (incorrectly) anticipated deposing three witnesses.

The Defendants' later revised their discovery projection to include five individuals and also sought to depose Robert Payne a second time. Although Plaintiffs had finished all their depositions by March of 2005, Defendants required several more months to complete theirs. The parties regularly returned to the Court for extensions of time, due primarily to Defendants' need to take additional depositions. In each case, when the parties returned to Court, it was represented and adopted by the Court in its orders that the parties were diligently working to complete discovery.

By the middle of July, 2005, all depositions of the fact witnesses were completed. During the depositions, both sides identified additional documents and requested their production. As set forth in the moving papers and not contested, the Plaintiffs had made all such production by July, 2005 and the Defendants had not.

The delay by the Defendants in producing these documents had an impact on the remaining work to be done by both sides. First, it meant that any expert the Plaintiffs utilized would potentially be forming his opinions without all relevant documents. Second, the joint pre-trial order, which required parties to list, inter alia, the exhibits they intended to utilize, could not be completed with absolute confidence of accuracy.[1]

Defendants' counsel, in contrast to the positions taken in their opposition papers, that the expert's report was issued well after the date of the order of May 5, 2005, took

---

[1]. The suggestion by Defendants in their memorandum that the draft pre-trial memo may be a recent creation is refuted by the fact that they were notified in August of 2005, that despite the Defendants decision not to provide its portion of the joint trial order, Plaintiffs were proceeding with theirs (Donohue affidavit, Exhibit A )

4

the position that the most recent order of the Court, which adjourned without date, the time for the parties to submit their pre-trial order, relieved the parties of the obligation to finish the report by the earlier date in the previous orders. Moreover, while promising to produce the documents that had been requested months earlier, Defendants' counsel suggested that Plaintiffs proceed with their expert report without the documents, subject to possible amendment and the Defendants would not object to receiving it after the date for the close of discovery.

Plaintiffs' obviously, did not wish to delay. Since Defendants' counsel could not provide a date for the final production of documents by Defendants. Plaintiffs proceeded with preparation of their expert report, subject to possible amendment when the documents were produced.

In addition, as documented on the moving papers, Plaintiffs, by this time had also drafted a substantial portion of the pre-trial order, but Defendants made it clear they would not be providing their portion of the pre-trial order until after the court issued its next order providing a new deadline for doing so.

Plaintiffs' counsel confirmed, by letter dated August 17, 2005, that Plaintiffs were proceeding in reliance on these representations (See Donohue Affidavit, Exhibit A) Defendants' counsel never objected.

Shortly thereafter, Plaintiffs were in fact, delayed in getting their expert's report prepared due to the fact that the expert they had retained while reviewing his draft with one of his partners, discovered his partners had been involved in a transaction with the Defendants years earlier and had to bow out due to a conflict. Defendants were notified of this problem and the potential delay and made no objection. Plaintiffs immediately

5

began a search for a new expert, which did in fact a significant amount of time due to the fact that there are only a limited number of candidates with the requisite skill, not conflicted and available to testify. However, the report was finally produced in March of 2006. As documented in the moving papers, Plaintiffs were preceding in getting an expert's report and did by March of 2006, clear evidence that Plaintiffs were not inactive during this time.

As set forth in the moving papers, and not contested by Defendants, during the same period Defendants still did not produce the documents that had been requested more than a year ago and apparently never sought to obtain an expert.

In March of 2006, the Court issued an order seeking a satisfactory explanation as to why the case should not be dismissed. Defendants' counsel clearly received the order. As set forth in the moving papers, and as explained in the reply affidavit of Mr. Chan, the attorneys for the Plaintiffs counsel did not, as it went to the "pg" e-mail address.

As this reply memorandum will show, the dismissal of an action, which in essence denies a party of his right to a substantive adjudication, is considered a harsh remedy that should be utilized only in extreme circumstances, and one that should only be utilized after considering the entire record and the five factors set forth by the Second Circuit Court of Appeals.

It is respectfully submitted, that in considering these factors, the extreme remedy of dismissal should be set aside and the Plaintiffs permitted to proceed.

I

## CONSIDERING ALL FACTORS, THE CASE SHOULD BE REOPENED

The Defendants' opposition to this motion is far more significant for what it admits and concedes rather than for what it purports to contest. At then outset, it should be noted that the Defendants concede that as a matter of law, this motion is addressed to the discretion of the court and that the courts have regularly acknowledged that dismissal is a "harsh remedy to be used only in extreme situations." Minnette v. Time Warner 997 F.3d 1023, 1027 (2d Cir. 1993); United States v. Norden Systems, 375 F.3d 248, 254 (2d Cir. 2004).[2] At no point do the Defendants argue that the case at bar is "an extreme situation".

The Second Circuit Court of Appeals has set forth five factors the court should consider on such a motion to reopen: 1) duration of the failure to prosecute, 2) whether notice was received or not, 3) prejudice to the other party, 4) the balance between

---

[2]. The United States v. Norden Systems case is cited by the Defendants at page 5 of their memorandum in opposition, but not discussed by Defendants at length nor quoted. The bulk of the cases relied upon by Defendants are not from the Second Circuit, and readily distinguishable. Fox v. United States, 389 F.3d 1291 (DC Cir., 2004) failing to respond to a motion, which was referred to a joint memo prepared by the very counsel who failed to respond. Davila-Alvarez v. Surgical Group 257 F.3d 58 (1st Cir., 2001) failure to respond to a motion for dismissal or appear for a conference despite a dozen phone messages). Edwards v. Government of the Virgin Island 2001 WL 569132 (D. Virgin Islands, 2001) and Norgard v. DuPuy Orthopaedics, 121 F.3rd 1074 (7th Cir. 1997) both deal with failing to file a timely appeal. Laster v. District of Columbia, 2006 WL 1982291 (DDC, 2006) belated request for relief from judgment after a hearing. Isreal v. State of Illinois 2006, WL 452454 (C.D. Ill., 2006) (failure to timely file an appeal, other parties clearly prejudiced). Stella v. Mineta 231 FRD 44 (DDC, 2005) dismissed after failure to comply with six orders over eight years).

calendar congestion and the opportunity to be heard and 5) consideration of lesser sanctions.[3]

In their opposition, the Defendants, who seek to focus on a "single issue" appear to concede that four out of five of these factors weigh in favor of the Plaintiffs.

<u>There is No Prejudice to the Defendants</u>

First, there is no serious claim that the Defendants have been prejudiced. As documented in the moving papers, (Moving Papers, Exhibit F, Draft of Proposed Pre-Trial Memorandum), this case involved a breach of a written employment contract which provided that the Plaintiffs would receive certain percentages of contracts where Robert Payne was the Managing Director. The statute of limitations on these claims has not run. The Defendants do not claim that they have destroyed critical documents or that an important witness has died or has otherwise become unavailable.

Defendants in their affidavit in opposition, make only three claims, none of which can seriously be considered a claim of prejudice. The first is that the expert's report was delivered late. The second is that there was a decision in an undisclosed case involving their client that they believe enhances their defenses. The last is that there was a lack of activity for six months. Defendants do not explain how any of these prejudiced their case and clearly they do not.

---

[3] The cases cited by Defendants from the Second Circuit are readily distinguishable and similarly, do not deal with a dismissal for failure to prosecute Theodoropoulos v. Thompson-Starrett Company, 418 F.2d 350 (2d Cir., 1969) where plaintiffs were ordered to file a Note of Issue or be dismissed, and having already obtained a 90 day extension to do so, did not file it Avolio v. County of Suffolk 29 F.3d 50 (2nd Cir. 1994) and OPM Leasing Services v. FAR West federal Savings and Loan 769 F.2d 911 (2d Cir., 1985) and United States ex rel . McAllen v. City of New York 248 F.3rd 48 (2d Cir, 2002) all involve the failure to file appeal timely and Mennen Company v. Gillette 719 F.2d 668 (2nd Cir., 1983) dealt with the failure to timely file request for extension of time to appeal. These issues raise different legal standards.

As to the first issue, clearly Plaintiffs' expert's report was completed after the last established date. However, Defendants ignore the fact that the possibility of a delay was discussed due to the failure of the Defendants to turn over documents that had been promised and Defendants actually advanced the proposition, that in light of the last order of the Court, adjourning the date to file the Joint Pre-Trial order, this would not be a problem. Having actually encouraged the Plaintiffs to delay providing an expert's report, Defendants can hardly complain about this delay now. Moreover, Plaintiffs have never asserted that Defendants should be barred from deposing their expert or getting their own expert.

As to the second claim, concerning the unreported case, Defendants' counsel concedes the impact of this case was never reported to Plaintiffs' counsel. Clearly, Plaintiffs' counsel was not involved in it and would have no reason to suddenly capitulate without knowledge of its determination. Even on this motion, Plaintiffs' counsel (and the Court) is not in a position to judge whether this unidentified case would impact the case at bar. Neither the parties nor the jurisdiction, let alone the court, are identified. If such a case was decided and had an impact on the merits of this case, one would think Defendants would be rushing to court to utilize it or at least advise Plaintiffs of a decision which they apparently believe strengthens their defenses. But Defendants did nothing.

Finally, the Defendants' claim there was no activity in the case. To a certain extent, that is true. Defendants apparently did nothing. They did not produce the documents they had promised to produce. They did not forward the decision which they now claim was significant, they did not acquire an expert and they made no inquiry as to

the progress that Plaintiffs were making with theirs, and certainly took no action to prepare their portion of the pre-trial order.

As documented on the moving papers, the Plaintiffs, although frustrated by the belated discovery of a conflict with their expert, located another, proceeded forward and got the report.

Even the claim that the Defendants' attorney "thought" the claim had been abandoned, is not a claim of prejudice. It is not claimed that this "thought" resulted in any prejudicial action by Defendants' attorney or his client. Moreover, in light of the fact that the Defendants, as the case progressed, 1) recognized the validity of at least part of the Plaintiff' 'claims and made payments (without prejudice) on those claims in a total amount in excess of $250,000.00; and 2) knew that there were open settlement proposals in which there was "money on the table", it would be absurd to think that Plaintiffs and his counsel would simply walk away from the case in such circumstances. If in doubt, it is hard to believe Defendants' counsel did not contact Plaintiffs' counsel to confirm Defendants' thought process. .

In a case cited by Defendants, Stella v. Mineta. 231 FRD 44 (D.D.C., 2005), the court made clear that the prejudice that must be shown must be so severe as to make it unfair for the other party to proceed, stating:

> The circuit [District of Columbia Circuit] has held that as a rule, . . . dismissal is in order only when lesser sanctions would not serve the interests of justice." Bristol Petroleum Corp. v. Harris, 284 U.S. App. D.C. 59, 901 F.2d 165, 167 (D.C. Cir. 1990) (citation omitted). Accordingly, "[a] District Court may dismiss under Rule 41(b) only after less dire alternatives have been explored without success.'" Gardner v. United States, 211 F.3d 1305, 1308, 341 U.S. App. D.C. 247 (D.C. Cir. 2000) (citing Trakas v. Quality Brands, Inc., 245 U.S. App. D.C. 165, 759 F.2d 185, 187 (D.C. Cir. 1985)); see also O-J-R v. Ashcroft, 216 F.R.D. 150, 151 (D.D.C. 2003). The District of Columbia Circuit has held that the considerations relevant to the

> determination of a Rule 41(b) motion include (1) the effect of a plaintiff's conduct on the court's docket; (2) whether the defendant has been prejudiced by the plaintiff's conduct, and (3) whether deterrence "is necessary to protect the integrity of the judicial system." Bristol Petroleum Corp., 901 F.2d at 167. The circuit has observed that these justifications [to dismiss the action] are not easily met. Prejudice, for instance, must be "so severe" as to make it unfair to require the other party to proceed with the case."

This clearly did not happen in the case at bar and the Defendants do not even allege that it happened.

Balance Between Calendar Congestion and Opportunity to Be Heard

Similarly, just as the Defendants make no meaningful claim of prejudice to them by the "delay", there is also no claim by Defendants that this delay impacted the trial calendar or otherwise impeded the Court's work. It is difficult to see how such a claim could be made by Defendants, since the case was not on the trial calendar and clearly the only side working on the case during this time was the Plaintiffs. Obviously, if Plaintiffs' counsel had been aware of the court's order, they would have responded, but this did not adversely impact the Court, other than the necessity of having this motion decided when Defendants refused to consent to restoration. The only victim here are the Plaintiffs, whose claims, which clearly had merit, in light of the payments already made, are placed in peril due to a procedural error, not a substantive one.

Duration

It is not contested that the first actions taken by the Plaintiff, when the dismissal was discovered, was to immediately notify the Court and to take steps to prevent the problem from arising again (which steps have continued).

However, in addition, the diligence of the Plaintiff, in this matter in moving the case forward, prior to August of 2005, is well documented. It is uncontested that

Plaintiffs completed its depositions and fulfilled all document requests. The Defendants were the parties that needed additional time to complete their deposition discovery and the only parties that have still failed to turn over documents that were requested and promised.

Similarly, the Plaintiffs were the only parties to have prepared at least their portion of the initial draft of the pretrial order and the only party that had contacted and arranged for an expert

In short, it is undisputed that prior to September of 2005, the plaintiffs diligently pushed the case forward at all times, and it is uncontested that after that date, only Plaintiffs continued to work on getting ready for trial and that Plaintiffs moved to reopen within four months of the issuance of the Court's order.

The delay in this case was not long. In Time Warner Cable of New York.v. Caro, WL. 99 5413 (E.D.N.Y., 1999), the court noted, in a case where the plaintiff had not moved the case forward in almost a year that:

> Regarding the duration, if the delay is relatively short, then dismissal is not appropriate. See Francis v. Morganthau, 1998 U.S. Dist. LEXIS 6284, No. 97 Civ. 5348, 1998 WL 226186, at 2 (S.D.N.Y. May 4, 1998) (declining to dismiss after a two-month delay); Webb v. Ashburn, 1997 U.S. Dist. LEXIS 20847, No. 96 Civ 325, 1998 WL 2552, at 2 (S.D.N.Y. Jan. 5, 1998) (declining to dismiss against a *pro se* plaintiff for a five-month delay). However, dismissal is appropriate with relatively longer delays. See Morrow III v. Juchnewicz, 1996 U.S. Dist. LEXIS 2, No. 93 Civ. 5216, 1996 WL 1996, at 1-2 (S.D.N.Y. Jan. 3, 1996) (granting dismissal after eighteen-month delay); Stoenescu v. Jablonsky, 162 F.R.D. 268, 271 (S.D.N.Y. 1990) (granting dismissal after a nineteen-month delay). The Court concludes that the duration is not as long as other cases that have warranted dismissal, and therefore, this factor weighs against dismissal.

In the case at bar, the Plaintiffs moved as soon as they discovered the order, the delay was months, not more than a year

Sanctions

Obviously, one of the issues before the court is whether other sanctions, if any, would be more appropriate than the extreme remedy of dismissal. Again, it should be patently clear that there are a variety of sanctions that could be employed without prejudicing the Plaintiffs or the Defendants. In some cases, sanctions imposed are to reimburse the Defendants for any reasonable costs incurred by Defendants as a result of the delay. However, in this case, Defendants do not claim they incurred any such costs. Obviously, the Plaintiffs do not seek to prejudice the Defendants from deposing Plaintiffs' expert or obtaining their own. It had been confirmed, months ago, they would be allowed to do so.

Receipt of Notice

Defendants oppose the motion to re-open soley on the basis that they believe the notice sent by the Court was actually received by one of the Plaintiffs' lawyers in this and simply ignored. Although in their memorandum the Defendants claim Plaintiffs are attempting to blame the Clerk's office that is not true. When it was first discovered that the orders had been missed, Plaintiffs' counsel immediately contacted the Clerk's office to find out what happened, learned of the issue with respect to the mistaken prefix on the e-mail and immediately took steps to make sure the problem would not be repeated. Affixing blame for the mistake was not the issue. Correcting the mistake was the issue.

Mr. Varga's statement that according to the clerk's records, Mr. Crystal and Mr. Donohue had received earlier communications by e-mail, does not resolve the problem. Neither Mr. Varga nor the clerk can have personal knowledge of what happened after the e-mails were sent. For that matter, due to the technical nature of these

communications, neither do the Plaintiffs' attorneys other than to honestly state, that the e-mails they were <u>not</u> received by them and point to the obvious reasons why they would not have ignored such an order if they knew of it.  It is one thing for Defendants' counsel to claim that the failure to find and correct the error in the e-mail process should rest entirely on the shoulders of Plaintiffs' counsel, it is entirely another to assert that they are lying, when they cannot have personal knowledge of the manner in which the system works and it should be clear that no lawyer would have ignored this order if they had known about it when funds had already been paid and there was "money" on the table in settlement conferences.

Obviously, Plaintiffs' attorneys are not experts in the manner in which e-mails work (or do not work).  After the serious problem was discovered, and the seriousness of the problem cannot be overstated, counsel took the prudent step of having an experiences computer systems professional investigate the issue, at least at the recipient's end, to fix any problems that were discovered and make recommendations as to how to avoid them in the future.  As set forth in the annexed reply affidavit of King Chan, dated August 23, 2006, he investigated the matter, made corrections and recommendations on how to avoid the problem in the future.  These recommendations either have already been implemented or will be implemented.  Most importantly, he found no evidence that either document ever reached the attorneys to whom it was addressed.

In the case of David Crystal, the problem was clearly a clerical error, but Plaintiffs have never claimed the fault was the Clerk's office. It is simply not possible, at this point to determine where the error occurred, only that it did occur.  What is clear, is that all

other sender's of e-mails to Mr. Crystal made the switch to the new designation. Whether the failure to made the change in the case at bar was due to a failure to notify the Clerk's office or a failure of the notification to be acted upon, or some other failure, at this date, cannot be determined. What can be determined is that because the change in e-mail designation was not made, the most recent order never reached Mr. Crystal, although it is clear that the designation "pg" was working, and he thus got the overwhelming majority of the court filings (1 through 49), until early 2005, when Ms. Guzowsk left.

Similarly, with respect to Mr. Donohue, as documented in the reply papers which annex copies of settlement conference notices from the court and copies of the amended motions for extensions of time, demonstrate that he normally received hard copies of court documents, despite the designation of an e-mail address. And as set forth in the affidavit of Mr. Chan, and despite the e-mail designation on the notices, the March, 2006 order apparently never reached him either.

However, even <u>assuming</u>, the orders had reached either attorney, and for some reason they were missed, forgotten or otherwise misplaced or somehow deleted (and as noted, clearly in light of the merits of the case, if they had been seen, they would have been acted upon), it does not change the fact that 1) the Defendants were no way prejudiced by the failure to respond, 2) the Plaintiffs have a valid claim which they would be inequitably denied the right to proceed upon; 3) the court's calendar was not disrupted by this error and  4) the Plaintiffs, for two years, "diligently" (to quote the stipulation drafted by the attorneys for the Defendants) pursued discovery and continue

to pursue closing out remaining issues and make the case ready for trial even during the subsequent months.

CONCLUSION

As shown in this memorandum of law, dismissal of an action is a harsh remedy, used only in the most extreme situations. In light of the factors the courts are required to consider, the case at bar is clearly not such an extreme situation as to deny a party a right to an adjudication on a claim.

It is respectfully requested, the matter be restored and the parties provided with a date to submit a pre-trial order.

Respectfully submitted,

PLAINTIFFS ROBERT PAYNE AND
PAYNE INVESTMENTS LLC

By s/ James P. Donohue, Jr.
James P. Donohue, Jr. ct-25763

GILBRIDE TUSA LAST & SPELLANE LLC
Attorneys for Plaintiffs
708 Third Avenue
New York, New York 10170
Telephone (212) 692 9666
Facsimile (203) 333-1489
E-Mail jpd@gtlsny.com