UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

ROBERT PAYNE and PAYNE INVESTMENTS LLC,

        Plaintiffs,

        -against-

TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES,

        Defendants.

No. 202CV2234 (AWT)

AFFIDAVIT IN RESPONSE TO REQUEST FOR FEES

---

STATE OF NEW YORK

COUNTY OF NEW YORK

JAMES P. DONOHUE, JR, being duly sworn, deposes and says:

1. I am over the age of 18 a member of the firm of Crystal & Donohue, attorneys for the Plaintiffs, Robert Payne and Payne Investments LLC ("Payne") and understand the obligations of an oath. I submit this affidavit in response to the motion by the Defendants to have their attorneys fees fixed.

2. The facts on this application can be briefly stated. Payne began an action against the Defendants (collectively referred to as the "Taylor Companies") for breach of a written employment contract. After numerous extensions to allow the Taylor

Companies to complete their required discovery, the matter was dismissed due to lack of activity. Payne's counsel moved to have the matter reopened so it could be resolved on the merits. The Defendant's opposed the reopening of the case.

3. A hearing was held on October 23, 2006. As set forth in the electronic filing of the order annexed hereto as Exhibit A

> MOTION to reopen case filed by Robert Payne, Payne Investments LLC. The motion to reopen, the denial of which having been vacated, is granted. Sanctions imposed by the court: plaintiff's counsel shall pay the attorneys' fees and costs that were expended by defendants' counsel <u>regarding this motion</u>. Defendants' counsel shall submit affidavit re: same. The parties shall file an updated scheduling order. 55 minutes (Court Reporter Huntington) (Smith, S.) (Emphisis added).

4. On November 3, 2006, in compliance with this order, Payne's counsel wrote to Defendant's counsel to propose the outline of an updated scheduling order (similar to the ones that had previously been agreed upon). Inquiry was also made if the Defendants wished to resolve the issue of the fee without the filing of the affidavits and additional motion practice by submitting their time sheets with "your notations as to what is to be included as relating to the motion" (Exhibit B).

5. On November 10, 2006, the Defendants responded by providing their affidavits and time sheets which would comprise their application (See covering letter, Exhibit C) claiming they would "seek a total of $20,016.41 as itemized in the attached Affidavits." Efforts to resolve this issue were unsuccessful (as acknowledged by Defendants in their submission) at least in part due to the inability of Defendants' counsel to get authorization from his client (Exhibit D, letter of January 22, 2007, confirming impasse on the issue of fees due to lack of authorization).

6. In addition, in December, there being no objection to the outline proposed in the November 3, 2006 letter (Exhibit B, supra) the proposed form of rescheduling order was submitted to Defendants' counsel (Exhibit E). Defendants' counsel then took the position, for the first time, they would not even discuss the proposed rescheduling order until their fee issue, which had not yet been filed, was resolved.[1]

7. Plaintiff's counsel advised Defendants' counsel that since they had indicated they had no authority from their client to compromise their claim, there appeared to be no possibility of resolution. In addition, it was requested that if they insisted on refusing to cooperate in filing the scheduling order until their fees were fixed, they should file their application and eliminate what Defendants' counsel asserted as the only road block to complying with the court's direction to re-file a new scheduling order. (Exhibit D, p 4) The request was ignored.

8. A second request was made to file the motion so the sole objection to finalizing the scheduling motion would be removed (Exhibit F). This time, Plaintiff's counsel was advised it would be done on the week of February 26, 2007 and part of the motion was filed on the last day of that week, although at least one affidavit (by Mr. Varga) was not filed until later without any explanation for withholding it for four days.[2]

Objections to the Fee Application

---

[1]. The refusal to discuss the rescheduling order is even more absurd in light of the fact that on this application for fees for opposing the motion, the Defendants counsel has included time spent on this case after the decision to restore was granted and includes discussions with this office on the new scheduling order and discussion on another case.

[2]. A reference to statements in "Mr. Varga's affidavit" in the Defendants' application (which was not in the filings made on Friday) made it clear to the Plaintiff's counsel that the documents initially filed were incomplete. A call was made to Defendants counsel and what is understood to be the last filing, was made Tuesday, March 6, 2007 with instructions to ignore an affidavit that was previously filed.

9. The final fee application essentially used the same draft that had been prepared four months earlier except that the Defendants eliminated approximately half a dozen of the entries previously submitted to us (eliminating two other attorneys who apparently spent time on the matter) and now include legal time spent on various aspects of this case <u>after</u> the motion was decided.

10. This addition of legal time spent after the motion was decided was apparently included despite the fact the Court limited the application to the time and fees spent in connection with the motion to reopen, and not the time spent on making the motion for application for attorneys' fees or other matters. Defendants' counsel was certainly aware that they were not entitled to seek fees in connection with their fee application since the draft application they sent us was limited to the time spent up to and including the actual hearing and decision.

11. Significantly, the Defendants' counsel's covering letter providing us with the proposed application stated: "we <u>will seek a total of $20,016.41</u>" (Exhibit C), clearly recognizing that the application was limited to the time spent opposing the motion to restore and not an ongoing aware that would grow the longer they delayed filing their application. The application now exceeds that amount by several thousand dollars, primarily by adding on time spent on this case after the decision. While Defendants claim they are entitled to continue to add on to their fee application post hearing time relating to there work on the fee application, not only was that not included in the court's decision, a fact which they clearly recognized at the time it was made, but it is clear that much of the time spent after the hearing was <u>not</u> related to the fee application.

4

12. In addition to attempting to expand the amount of their fee request by including post hearing time, even the number contained in Defendant's initial correspondence as to time spent prior to and including the hearing, was overstated. In reviewing the amount of time and billing allegedly spent opposing the motion, the amount of legal time allegedly spent up to and including the date of the court hearing was $18,217.00 and the total of "other charges" was $671.46. This is a total of $18,888.46 (see calculations annexed hereto as Exhibit G) which is approximately $1,100.00 less than what was initially claimed in the letter forwarding the draft application (Exhibit C). It is substantially less than what is being sought in the present application where Defendants subsequently decided to "add on" time spent on the fee application and any other matters relating to the case at bar and even matters relating to other cases, including reviewing or conferring on the rescheduling order that they have now refused to formalize. By including these "post hearing" events, Defendants counsel now seek an additional sum of more than $4,500.00.

13. There are, however, far more serious problems with the present fee application than mathematical discrepancies, the failure to file all the application documents at the same time or including post hearing time spent on this case or other cases. As set forth in the accompanying memorandum of law, that portion of the fee application that relates to the applicable period (the date the motion was made to restore to the date the decision was made to reopen) suffers from a number of legal deficiencies, making an award in the amount requested both unrealistic and unjustifiable.

14. The present application consists of time entries by three different individuals. One individual is a Ms. Long, identified as a law student, who has five entries for a total of 9.8 hours. Ms. Long is the <u>only</u> timekeeper who made an effort to designate the amount of time spent on <u>each work item with a specific time entry</u>. Thus, we can ascertain from Ms. Long's entries that she did research on Federal Rule 60(b) (which was <u>not</u> referred to in the submissions made by Defendants in opposition to the motion) and Local Rule 41(a) (which was referred to in the submissions made by Defendants) and the amount of time spent on each project. Although the entries themselves do not educate the Plaintiffs or the Court as to how this related to the opposition to the opposition motion, both the Plaintiffs and the Court are at least in a position to determine if research done in an area was used or not and if it should be properly included in this application.

15. However, Ms. Long is the only individual who provided even this limited amount of information on what she was doing. The remaining two individuals, both lawyers, repeatedly fail to meet this basic legal requirement on fee applications to provide specific information as to what they were allegedly doing.

16. As set forth in the accompanying memorandum of law, the courts require contemporaneous records of specific information as to what was done and the time spent on each item. The submissions by the two attorneys include time which clearly has nothing to do with the opposition to the motion, such as reviewing the expert's report and settlement discussions.

17. However, and most significantly, both attorneys make sure it is impossible to do an entry by entry evaluation by routinely collecting two or more work entries

(sometimes referred to as "block billing") under one time entry and then by using vague terms to describe what they are doing. This makes it impossible to determine how much time was spent on each work item and in many cases, what was being done. Annexed hereto as Exhibit H is a partially redacted list of time entries by Defendant's[3]. As shown in Exhibit H, 36 of the 60 entries during the relevant period have more than one "work description" making it impossible to determine how much time was spent on each aspect contained in such entry.

18. The very first entry demonstrates why this type of defect leads courts to discount such entries in a fee application. In this first entry Ms. Poston claims to have spent time on:

    a) a telephone conference with Attorney Crystal re motion to reopen;

    b) reviewing an affidavit from Attorney Donohue;

    c) reviewing the expert reports ;

    d) two telephone conferences with Attorney Lane;

    e) review file; and

    f) reviewing e-filing procedures

20. Clearly, from what is submitted, although we know that Ms. Poston is claiming that fees for this work should be $375.00, what we cannot know is how this amount should be divided. Clearly, the expert report (which deals with the substantive issue of damages, not dealing with the procedural motion to reopen) would appear to be the longest of the documents that was reviewed and one could assume this made up the bulk of the time, but engaging in this assumption is all that can be done. Similarly,

---

[3]. The entries where "block billing" was not done have been eliminated from the exhibit, to focus on the problem presented by having multiple entries for one amount.

we cannot ascertain what the telephone conferences "with Attorney Lane" were about except that we can ascertain from other entries that there were numerous telephone conferences, mailings and e-mails to Mr. Lane[4]. It is also clear from reviewing the opposition to the motion and the time submitted in the fee application that Mr. Lane did <u>not</u> get involved in research, drafting or appearing in court and is <u>not</u> listed as an attorney of record. Nor is any reason given as to why Mr. Lane must be continuously sending communications back and forth with Defendants' counsel. What is clear, is these various communications, lent nothing to the documents filed with the court and potentially (since the use of block billing prevents an allocation, include $10,470.00 of legal time. A list on the entries from the relevant period shows that communications with Mr. Lane appear in 21 out of the 60 time entries during the relevant period (Exhibit I).

21. This first entry by Ms. Poston also shows that in addition to grouping multiple entries into one fee entry, Defendants' counsel routinely use vague descriptions. Again in this entry, Ms. Poston claims to have had "telephone conferences with Attorney Lane (2)" What these phone conversations dealt with is not set forth. Similarly this is followed by "review file" without providing any information as to why. The "review file" entry re-occurs throughout the fee application, but clearly the most popular reference is "intraoffice conference" almost always without identifying the person who the conference was with and if a reference as to the subject matter is provided, it is usually similarly vague such as "re motion to reopen" or "strategy" or "same". Examples of these repeated vague references are annexed hereto as Exhibit J.

---

[4]. Sometimes referred to as "Carlos Lane" and "Attorney Lane."

22. These exhibits identify and highlight the problems with Defendants' counsel's application. Obviously, as with Ms. Poston's first entries, each could be analyzed for several paragraphs for its numerous defects. But such an exercise would soon become redundant as the same vague entries, the same problem with block billing and other defects appear over and over.

23. As set forth in the accompanying memorandum, courts have repeatedly held these types of vague descriptions are insufficient on these types of applications and have regularly reduced such fee applications by 20% or 30% or even more, simply for engaging in such practices.

24. Precisely because the time descriptions are so vague and usually "blocked billed", the amount of time that Defendants' counsels have spent which would be considered duplicative and similarly should be discounted on such an application cannot be ascertained with any reasonable accuracy. Even within the application, as vague as it is, there are numerous examples of billing for the same work twice or what appear to be billing for the same work twice. Again, simply looking at the first two entries, Ms. Poston bills for reviewing the expert report in her first entry and then bills for it <u>again</u> on her second entry. Annexed hereto as Exhibit K are select examples of billing twice or more than twice for what is, or certainly appears to be, identical work. Once again, courts have routinely discounted fee applications by rejecting such block billings, in whole or in part.

25. While any one of these defects is sufficient to permit a court to disallow an application or apply a substantial discount against the application. In the instant application, in the case at bar, the Defendants submit an application which combines,

block billing, with vague references, and multiple billings for the same work (not to mention entries unrelated to the opposition to the motion to restore). The combination of defects provides neither Plaintiffs nor the Courts with any significant basis for determining what was done and since the burden of showing that the work relates to the opposition to the motion to reopen rests on the Defendants, they should not be rewarded for making it impossible to do anything more than guess as to what percentage of the time spent actually related to opposing the motion and whether that was a reasonable expenditure of time, which is precisely what they asking, not only by submitting an application that is riddled with defects, but by asking for permission to increase their fee application if they deem it necessary to explain why they ignored the basis legal standards that apply to such applications.

26. In addition, after the motion was decided, in addition to having drafted their affidavits, by November 10, 2006, the Defendants' attorneys claim to have done research on what a fee application should contain. This would have alerted them to the prohibition of block billing and using vague references. Yet they continued with both practices and included even more matters that had nothing to do with opposition to the motion to reopen. Included in the post hearing time spent are issues relating to amending pretrial deadlines, expert discovery, multiple intraoffice conferences concerning strategy, multiple communications with Mr. Lane on the "case status", all of which clearly do not relate to the opposition to the cross-motion (which had already been decided) or even the fee application and yet are included in the present application. In fact, one entry actually sets forth that there was a discussion with Mr. Lane about another case.

27. While it is clear that the Defendants' counsel spent some time in opposing the motion to reopen, it is also clear that the present application substantially exaggerates the amount of time spent in opposing the motion, by including time that clearly was not related to the opposition and including duplicate time. The attempt to hide this, by repeatedly using multiple work entries on a single time entry and by using vague references should not be rewarded and Defendants counsels' application should be substantially reduced to what the reasonable costs of defending the motion to restore.

_/s/ James P. Donohue, Jr._
James P. Donohue, Jr.

Subscribed to and sworn to before me this 7th day of March, 2007

_/s/ David Crystal II_

DAVID CRYSTAL II
NOTARY PUBLIC, STATE OF NEW YORK
No. ~~31-0346925~~ 02CR08160 25
Qualified in New York County
Commission Expires Dec. 31, ~~2005~~ 2009