UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------

ROBERT PAYNE and PAYNE INVESTMENTS  :    Civil Action
LLC,

      Plaintiffs,    :

              No. 202CV2234 (AWT)

              :

    -against-          :

TAYLOR VISION RESOURCES, TAYLOR
STRATEGIC ACQUISITIONS, TAYLOR   :
STRATEGIC DIVESTITURES, and TAYLOR
FINANCIAL SERVICES LLC, all defendants  :
collectively operating under the name
TAYLOR COMPANIES,        :

      Defendants.   :

              March 6, 2007

---------------------------------------------------------------

MEMORANDUM OF LAW IN RESPONSE TO
APPLICATION FOR FEES

   The facts on this application can be briefly stated.  Robert Payne and Payne

Investments LLC, ("Payne") began an action against the Defendants (collectively

referred to as the "Taylor Companies") for breach of a written employment contract.

   The matter was dismissed due to lack of activity.  Payne's counsel moved to

have the matter restored so it could be resolved on the merits. The Defendant's

opposed the restoring of the case.

   A hearing was held on October 23, 2006.  As set forth in the electronic filing

    MOTION to reopen case filed by Robert Payne, Payne
Investments LLC. The motion to reopen, the denial of which having been
vacated, is granted. Sanctions imposed by the court: plaintiff's counsel
shall pay the attorneys' fees and costs that were expended by defendants'

1

counsel <u>regarding this motion</u>. Defendants' counsel shall submit affidavit re: same. The parties shall file an updated scheduling order. 55 minutes (Court Reporter Huntington)(Smith, S.)  (Donohue Affidavit Exhibit A) (Emphasis added)

On November 3, 2006, in compliance with the order, Payne's counsel wrote to Defendant's counsel to propose the outline of an updated scheduling order to comply with the court's direction that "the parties <u>shall</u> file an updated scheduling order". Inquiry was also made to the Defendants if they wished to resolve the issue of the fee without the filing of the affidavits and additional motion practice. (Donohue affidavit, Exhibit B).

On November 10, 2006, the Defendants responded by providing affidavits of what they claimed their legal expenses were.  The draft applications contained numerous problems, which were pointed out in a subsequent written communications but eventually Defendants counsel advised Plaintiffs counsel they had no authority to propose a settlement figure (Donohue affidavit Exhibits D and F).

When it became apparent that Defendants counsel could not get authority from his client to discuss a resolution, Plaintiffs counsel requested and re-requested that the motion for fees be filed, particularly in light of the fact that in late December of 2006, Defendants counsel belatedly took the position that they would not discuss the proposed scheduling order until their fee issue was resolved, thus effectively holding Plaintiff's substantive case hostage to the determination of their fee application, which they had not yet filed.

After a second request was made by Plaintiffs to file the motion to have the fees fixed (Donohue Affidavit Exhibit D) and thus eliminate the objection to finalizing the scheduling order a representation was made the fee application would be filed the week of February 27, 2007, more than four months after the order to restore was issued. Only

part of the application was, in fact, filed at the end of the week along and the final part of it filed the following week after Plaintiffs counsel brought to the attention of Defendants counsel that the filings appeared to be incomplete since the application made reference to an affidavit that had not been filed.

This final application for fees essentially used the same affidavits that had been prepared four months earlier,[1] except that in addition, the Defendants' attorneys have also submitted, as part of their application, the additional time they claim they spent ($4,248.75) and additional fees ($360.33) they claim they spent in preparing the motion for their fees and request the right to submit a bill for even more time and more fees to reply to the objections filed by Plaintiff (of which they are already aware).

It should be noted, the Court did not extend the sanctions to time and fees spent in submitting affidavits on fees nor did the court set forth that a reply to the objections would be permitted (and Defendants now belatedly request an opportunity to reply for the specific purpose of seeking a further increase in their fee application.

As set forth in this memorandum of law, despite taking four months to file the application (which was substantially completed within two weeks of the hearing) and despite having the benefit of Plaintiff's counsel already pointing out the deficiencies, and despite apparently doing research on how such applications should be presented, the fee application suffers from a number of legal deficiencies, making an award in the excessive amount requested both unrealistic and unjustifiable.

---

[1]. Ms. Poston's affidavit filed in March of 2007 had <u>one additional sentence</u> in it from the draft affidavit sent in early November, 2006. More than 75% of the additional time being added, is submitted for time spent on the application after November 10, 2006, when the applications was essentially completed.

I

## THE DEFENDANTS HAVE THE BURDEN OF PROVING THE RERASONABLENESS OF THE FEES

Generally speaking, in seeking attorney fees, the attorney applying for the fees has the burden of proving the reasonableness of the fees. The standard in Connecticut was set forth in Mr. and Mrs. B v. The Weston Board of Education 34 F. Supp. 2d 777 (DC Ct., 1999) (hereinafter "Weston") relying heavily on the United States Supreme Court decision in Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). In Weston, which involved a fee application under IDEA, the District Court discussed what the movant must do "with any …fee application", which is to meet "certain standards of specificity" so that the court could determine that the fees claimed represent time reasonably expended and charged at a reasonable rate.

The need for the application to be specific was set forth in detail in Weston with the court stating:

> Additionally, fee applications submitted under IDEA, as with any other fee application, are expected to meet certain standards of specificity in order for the court to be able to render a determination that the fees claimed represent time reasonably expended on the case in question, and charged at a reasonable hourly rate considering the prevailing rate in the community and experience of the person rendering the services. Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993).

> * * * * *

> It is well established that "the fee applicant bears the burden of demonstrating, through proper documentation, that an appropriate amount

4

of time was expended at an appropriate hourly rate." <u>Patrick G., supra,</u>
citing <u>Zabkowicz v. West Bend Company, 789 F.2d 540 (7th Cir. 1986).</u>
Applications for attorney's fees "must be accompanied by
contemporaneous time records that specify for each attorney, the date,
hours expended, and nature of the work done." <u>New York State Ass'n for</u>
<u>Retarded Children, Inc. v. Carey, 711 F.2d at 1148.</u> Counsel may recover
fees only for entries that "identify the general subject matter of their time
expenditures." <u>Hensley, 461 U.S. at 437 n.2.</u> (Emphasis added)

Thus, at the outset, the burden is not only on the Defendants' attorneys to prove

the reasonableness of the fees, but the application must provide contemporaneous

records that provide <u>specific information</u> on what was done. This enables the Court,

<u>inter alia,</u> to eliminate time spent that: a) was not related to the issues in consideration

or; b) is duplicate time. It also permits the opposing party to point out those entries

which are inherently unreasonable and allows the Court to make an educated decision

as to the reasonableness of the application by determining if the time spent on each

aspect covered by the fee application was reasonable.

The Defendants' attorneys in the case at bar spend most of the time on their

application seeking to establish the correct hourly billing rates. This is only one part of a

proper fee application. More significant is providing the court with specific information

based on contemporaneous time records that specify for each attorney, the date, hours

expended, and nature of the work done. It is here that Defendants' counsel's application

clearly fails to meet the legal requirements for a fee application in virtually every

respect.

II

## THE FEE APPLICATION IS DEFECTIVE IN NUMEROUS RESPECTS

In the case at bar, the application by Defendants' counsel suffers from numerous defects, defects which the courts have consistently found are fatal to a fee application. One of the most blatant defects is including time which clearly was <u>not related</u> to the opposition to the motion. While the majority of the 60 pre-hearing time entries submitted by the Defendants[2] are extremely vague (and vagueness, by itself, is a reason to discount a fee application), in some cases there is enough information in the entries that it can be determined that at least some of the time spent has <u>nothing to do with the motion to restore</u> and should not have been included in the fee application at all.

Thus, for example, the first two entries by Ms. Postn on July 24, 2006 and on July 25, 2006, (totaling 2.5 hours) she claims to spend time on both occasions reviewing an "expert's report". There is only one such report. It deals with Payne's damages, not the motion to restore. Similarly, on August 4, 2005, Mr. Varga spends time (.30 hours) on a telephone conference with Mr. Donohue concerning "settlement". Clearly, an issue that is unrelated to the motion to restore.

These entries are significant as they make it clear at the outset that the Defendants' attorneys were spending time on matters <u>not</u> related to the motion to restore and yet are included in the application. As will be shown, there are numerous

---

[2]. There are 95 time entries by the Defendants counsels. Of these, 35, more than a third of the time entries, relate to time spend <u>after</u> the decision of the court and do not relate to the decision by the court to aware fees in connection with the motion to reopen.

entries by the Defendants' counsel which make no distinction between these areas

dealing with the substance of the case, settlement , status conferences with third parties

or other matters unrelated to the motion to restore and time spent in working on the

opposition to the motion to restore.  These objectionable entries are "block-billed" with

entries that might relate to the opposition to the motion to restore. As Defendants

concede in the cases cited in their application this practice of "block billing" would

normally require the elimination of the entire entry when it is contaminated by

objectionable entries. In their own memorandum, the Defendants cite American

Charities  v. Pinella County 278 F. Supp 2d 1301 (M.D.Fl., 2003), where at footnote

nine, the Magistrate Judge discounted the application for tasks:

> that were inadequately described and completely when "an objectionable
> entry is "block-billed" i.e. grouped together with non-objectionable tasks
> without allocating the time spent on each task, the entire entry should be
> eliminated because the amount of time devoted to the objectionable task
> cannot be determined.

It should be noted, that even though the last 35 entries submitted on this

application deal with time spent after the motion to restore was granted are improperly

included (Defendants claiming they have the right to include time spent on the fee

application as well as the opposition to the motion), many of these the entries

themselves clearly indicate they are not related to the opposition to the motion and in

many cases, not related even to the fee application. [3]

---

[3] Included in the post hearing time entries and usually "blocked billed" is time spent "reviewing
pre-trial deadlines and expert discovery", "strategy", "case status generally", "counter-offer on fees [a
settlement issue]", telephone conference with Mr. Lane re potential compromise of fee claims [a
settlement issue]; correspondence (e-mail) to/from Mr. Lane re same, telephone conference with Mr.
Donohue re same;", "telephone conference with Mr. Lane re case status", "correspondence from Jim
Donohue with proposed amended scheduling order; draft response letter to Mr. Donohue", "Revise letter
to Mr. Donohue re resolution of fee application [the letter actually dealt with the refusal to discuss the
scheduling order until the fee application was resolved]", "Telephone conference with Mr. Lane re status

<u>Duplicative Services Are Not Properly Included</u>

In addition to including time spent on matters unrelated to the opposition to the

motion to restore, courts routinely reject applications which contain duplicative services.

As set forth by the District Court in <u>Weston, supra</u>:

> Fees should likewise not be awarded for duplicative services and
> unnecessary expenditures of time, and the records submitted <u>must be</u>
> <u>sufficient</u> to permit the court to assess the reasonableness of the time
> expended <u>Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979)</u>, affirmed, <u>448</u>
> <u>U.S. 122, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980)</u>; <u>Ingram v. Madison</u>
> <u>Square Garden Center, Inc., 482 F. Supp. 918, 929 (S.D.N.Y. 1979)</u>.
> Emphasis added)

Clearly aware of the issue, the Defendants counsel has eliminated approximately

six entries which were previously contained in the draft application submitted to

Plaintiff's counsel in November of 2006, and after having received Plaintiff's counsel's

comments. This included including eliminating time allegedly spent reviewing their own

filings <u>after</u> they were filed.  However, these are not the only duplicative entries.

It is precisely to eliminate duplicative billings that the requirements for being

specific on these applications exist.  In the present application, there is massive

potential for duplication.  For example: On August 1, 2006, Mr. Varga has an "interoffice

conference re additional research" with an unidentified person.  The next day, on

August 2, 2006, Mr. Varga spends time with an "update legal research" and another

---

of fee claims and proposed scheduling order; correspondence (e-mail) from Mr. Lane with Borrelli order of judgment" [he "Borrelli order' would be an order in another case, not the case at bar], "Telephone conference with Carlos Lane re case status; review case docket' "Letter from Jim Donohue re fee application and proposed scheduling order; correspondence (e-mail) to Carlos Lane with same; telephone conference with Mr. Lane re same."  All of these entries, on their fact, are clearly not related to the opposition to the motion to restore. They are not even related to the fee application, which is the sole justification for including them in the application.

"interoffice conference [again not identifying the person] re additional research for objection to motion to vacate [area of research otherwise unidentified]". The same day, August 2, 2006, Ms. Posten does "legal research". This is also on an unidentified topic. We thus have multiple entries on undisclosed research, all in the same time period, potentially equaling $1,360.00 in legal time, with no basis for determining what was the subject matter researched.

There is no reason for this complete lack of specificity. On the following two days a summer law student, Meredith Long does "legal research <u>re rules on vacating dismissal under FR. 60(b)</u> and "legal research re <u>vacating judgment for lack of notice</u>" followed on August 16, 2006 by two entries for research on Rule 41 and doing a memo on the research done."[4] Thus, it is clear that it was possible for the other two lawyers who worked on this motion to have provided some identification as to what topic was under review when they did their research. If their law student could at least make that distinction, there is no reason why the two lawyers could not, nor do they offer one. In this situation, we know that research on Local Rule 41 was used in the memorandums submitted by Defendants and Federal Rule 60(b) was not.

Ms. Long's research is followed by more "legal research" by Ms. Poston, again on an unspecific subject on August 16, 2006. Still more "legal research re motion to open [again no area of the law is identified]" is billed by Ms. Poston on August 30, 2006. Since these entries (equaling another $900.00 in legal time) provide no more specifics, it is not possible to determine on this submission if Ms. Poston or Mr. Varga are

_____

[4]. These entries which identify <u>the issue being researched</u>, demonstrate that the Defendants counsel had the ability to be a least somewhat specific in what was being researched so the court could determine if this was an appropriate expenditure of time, as well as by <u>dividing</u> the multiple entries on the same day for different tasks rather than group blocking them all together as was routinely done by Mr. Varga and Ms. Posten,

duplicating the efforts of Ms. Long or each other or researching different areas. Only Ms. Long consistently identifies at least the subject matter of the area of her research while leaving it to the court to determine how it related to the opposition to the motion to restore.

Similarly, when it comes to drafting, on September 8, 2006, Mr. Varga claims to be involved in the preparation of a sur-reply memorandum and affidavit, which he continues to work on two days later. On September 11, 2006, Ms. Posten "reviews and revises" the "sur-reply brief" (since only one sur-reply was filed, this appears to be the same document) and then Mr. Varga continues his preparation of the same document. The next day, <u>both</u> Mr. Varga and Ms. Poston "review and revise" the <u>same</u> document. Thus, it appears that the same sur-reply memo was the subject of being "reviewed" by two different lawyers (potentially taking $3,610.00 of legal time), without any explanation as to why the issues were so complex as to require the review of multiple attorneys on the same issue.

Finally, it should be noted, for appearing in court, for an argument that was slightly less than an hour, Mr. Varga and Ms. Poston have a combined 9.6 hours of time, resulting in $2,640.00 of their fee application.

<u>Numerous Vague Entries Collected Together Violates the Standards</u>

The extent to which Defendants counsel may have duplicate time cannot actually be readily determined from their submission due to the continued use of vague references to what they were doing. Specifically relevant to the fee application in the case at bar was the rejection by the court in <u>Weston</u> of "vague references" which made it impossible to evaluate the reasonableness of the services. Concepts such as "review

of file", "review of correspondence", "research", "conference with client", and

"preparation of brief" were all types of entries that were specifically rejected as failing to

meet this burden. As set forth by the court in <u>Weston</u>, <u>supra</u> a7 781

> Entries stating such vague references as "review of file", "review of
> correspondence", "research", "conference with client", and "preparation of
> brief" do not provide an adequate basis upon which to evaluate the
> reasonableness of the services and hours expended on a given matter.
> See, <u>Connecticut Hospital Ass'n v. O'Neill, 891 F. Supp. 687, 691
> (D.Conn. 1984); Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp.
> 510 (S.D.N.Y. 1994); Orshan v. Macchiarola, 629 F. Supp. 1014 (E.D.N.Y.
> 1986).</u> Courts have applied an across-the-board reduction where entries
> failed to indicate the issue researched or the subject of a conference call,
> telephone call, or meeting. <u>Smart SMR of New York, Inc. v. Town of
> Stratford, 9 F. Supp. 2d 143 (D.Conn. 1998)</u>(Goettel, J.)(applying 30%
> reduction to entire lodestar figure for vague time entries), citing, <u>Local 32
> B-32J, Serv. Employees Int'l Union v. Port Auth. of New York and New
> Jersey, 180 F.R.D. 251 (S.D.N.Y. 1998)</u>(reducing requested fees by 20%
> due to vague descriptions such as "research and draft papers" where
> entry did not indicate topic researched and "phone and meetings" where
> entries did not describe nature of discussions). In order to survive a
> dispute about the sufficiency of time entries, the time records should
> include a reference line to describe adequately the subject of the work
> performed. <u>Smart SMR, 9 F. Supp. 2d at 153,</u> citing <u>Wilder v. Bernstein,
> 975 F. Supp. 276, 286 (S.D.N.Y. 1997).</u>

In the Defendants' counsels' fee application there are massive vague references

used to describe work that was allegedly done to oppose the motion to restore (See

Donohue affidavit, Exhibit J) and this error is regularly compounded by the collection of

these vague references under one record and one time entry.  This goes to the heart of

the application since, in conjunction with the "block billing" vague references effectively

prevent the Plaintiffs or the court from eliminating the references to time that is clearly

unrelated or duplicative work. Courts have not looked favorably on this tactic.

In <u>Sony Electronics v. Soundview Technologies</u>, 389 F. Supp 2d 443 (cited by

Defendants) the court noted that "while some review, comment and teleconferencing is

11

to be expected where <u>several parties are involved with some divergence interests</u>"
(which is not the situation in the case at bar) the court rejected expenditures that were
"clearly excessive)  Courts have slashed fee applications where there are massive
entries which provide absolutely no information about what is being done.

In the case are bar there are more than 30 entries (more than half the pre-
hearing entries that are submitted) which include a reference to an "interoffice
conference" without providing any meaningful detail of the subject matter of the
conference or even who was involved. Even when there is some description on the
subject matter, it still remains vague, such as "intraoffice conference re strategy" without
disclosure as to whether the strategy related to responding on the substance of the
case, dealing with the expert's report, the settlement discussions, the motion itself or
some other strategy aspect of the case or even whether the discussion is on an issue
that was already discussed at one of the other more than 30 interoffice conferences.

While Defendants argue courts have approved such conferences, it should be
noted that none of those "approvals" sanction abusing the right to hold conferences. In
the case at bar, the same firm represent all the Defendants.  There was no need for
excessive conferences between attorneys representing different interests to resolve
differences and yet the Defendants' counsel held more than 30 conferences in a time
period of less than 90 days.

Nor were these conferences limited to just the two attorneys working on the
motion.  In addition to holding more than 30 "intraoffice conferences" , there are
numerous "tel. conference with Mr. Lane".  Mr. Lane is never identified in the time
records that lead up to the hearing or the application.  However, the bulk of these

telephone conferences fail to reveal even the subject matter of the discussions other than that they relate to "same", which often refers back to some other multiple vague references.  As noted in Exhibit I to Mr. Donohue's affidavit, there are more than 25 entries of such telephone conferences or the sending of correspondence and e-mails to Mr. Lane, potentially equaling more than $10,000.00 in legal time.   Mr. Lane did not have his name on any filings related to the motion to restore; he apparently did no research, no drafting and made no revisions to the submissions made to the court.  He certainly did not appear in court and is not an attorney listed for service. Yet potentially thousands of dollars of legal time are spent in unidentified communications with him. It is precisely these types of entries that the court's found insufficient in Weston, supra

As the court noted in American Charities , supra at pp. 1318-1319 (cited by the Defendants) "many objections should be sustained as to conferences and telephone calls because the time entry does not identify adequately the communication."  That is precisely the situation in the case at bar.  While some conferences may be reasonable, more than 30 intra office conferences and more than 20 conferences or calls to Mr. Lane, without providing any meaningful description of the subject matter, is clearly excessive.

Commingling Of Time Is Not Permitted

The final and possibly the most serious problem with the submission is the commingling or "block billing" of all these vague references under one time entry rather than break them out and specifing how much time was spent on each item. Both Ms. Poston and Mr. Varga regularly and consistently co-mingle their unidentified research and "inter-office conferences" with unnamed individuals on unidentified topic with other

purported activities. Consequently, even if the subject matter which makes up their time was set forth in a form that would permit a reasonable evaluation of the necessity and value of the time spent, it would be impossible to determine the amount of time spent (only the potential amount of time spent) since the time is commingled into one time entry. Thus, not only is it not known what area of the law was being researched but it is also not known how much time was spent on research and how much time was spent in other areas. Since, as previously noted, some of the areas identified in the time records are not properly included in the motion, it cannot be determined how much time would be part of an appropriate application since all the time is commingled into one entry.

Not counting the five time entries by the law student, Ms. Long, who consistently broke out each entry with a time reference, of the other 55 entries, all by attorneys,[5] 40 (more than two-thirds) have combined two or more activities under one heading.

The majority of the entries are textbook examples of block billing. Thus, for example, on August 2, 2006, Mr. Varga lists six different entries, some of which appear to deal with the motion and some of which clearly did not, as follows:

      a) Telephone conference with Mr. Donohue re date for filing objection to motion to vacate judgment, potential re-filing of action and potential settlement;

      b) Interoffice conference re same;

      c) Update legal research re CMECF system requirements and attorney responsibility to monitor same [research previously done on earlier entries];

      d) Telephone conference with Chystine Cody (Bridgeport clerk's office) re confirmation of plaintiff's counsel receipt of electronic orders and

---

[5]. There is one entry by a person designated as "DPA". There is no indication whatsoever as to this person's identity.

CMECF procedure generally [a second conference with the same people on the same CMECF procedure is included in billing two weeks later];

e) Interoffice conference re additional research for objection to motion to vacate [ still unspecified as to how it differed from earlier research]

f) Draft affidavit in support of opposition to motion to reopen

Obviously the phone conference on "Settlement" and the refilling of the action and the interoffice conference on the same issues should not be part of the fee submission. As noted, other entries are similar or identical to earlier or later entries and thus are likely to be duplicative. However, all six entries are combined in one "billing". It is thus impossible to determine how much time was spend on any specific item, even if there was enough specific information to permit a reasonable determination that it was necessary and related to the motion.

As noted, "block billing" in this fashion, usually requires the elimination of the entire entry. American Charities, supra. As the District Court of Vermont pointed out in reviewing an application for fees in a bankruptcy proceeding, the "attorneys' fee application must clearly identify each discrete task billed… [and] identify the precise amount of time spent on the task… . In re Lance M. Lawaway 2004 Bankr. Lexis 687. Only one timekeeper even attempted to perform this function, Ms. Long.

The reason the standards for fee applications exist is thus made abundantly clear by the Defendants' attorneys' submissions and their failure to abide by the legal standards.  In responding to the fee application, Payne's attorneys have to guess:

1) what was actually being done (since the "word descriptions" regularly fail to provide such information;

2) What amount of time was spent on unrelated activities and should be eliminated;

3) which time is duplicative of previous efforts: and

4) how much time was spent on each task, since the "work descriptions" combine multiple tasks, without distinguishing between one task and the other and the time spent on each task.

The same problem faces the Court.

Even when there is only one work entry for a time entry (which is the clear minority of the entries), it is usually impossible to determine what was being done. Thus, for example, the first time Ms. Poston limits herself to one work item for one time entry is on August 14, 2006 where she claims to have had "Interoffice conference re strategy". Obviously, there is no indication of who the conference is with or what the aspect of strategy involved the motion, settlement, obtaining an expert to dispute Payne's expert or some other aspect of the case. The next day the entry reads, "Work on opposition to motion to reopen". This at least alleges the unidentified work concerned the motion; although it is completely silent as to what work was being done. Plaintiffs and the court are left to guess if this is more research, more drafting, or re-reviewing the file for the third or fourth time. It is simply not possible to determine from such a generalized statement what was being done.

Obviously, the Defendants counsel spent some time in opposing the motion, but their application makes it impossible to determine with any certainty how much. Clearly, they should not be rewarded for making an application that was so defective.

III

POST HEARING TIME IS IMPROPERLY INCLUDED

The Defendants claim that they are entitled to <u>additional</u> fees in making their motion for fees in addition to the costs incurred in opposing the motion. This claim is neither factually nor legally correct. The cases relied upon by Defendants are clearly not relevant to the case at bar.[6] The present application is not based on a statutory right, but on the discretionary ruling of the court, that determined the Plaintiff should be allowed to proceed, but that sanctions were appropriate against counsel and that it would be based on the time spent "in connection with this motion" not in connection with the motion to restore, the fee application for those fees, settlement discussions, status reviews of the case and substantive work on the merits. This portion of the "fee application should not be considered.

Indeed, looking at the time entries made, it is clear that the Defendants had essentially concluded their application by November 10, 2006, when they forwarded it to Plaintiffs (Donohue affidavit Exhibit C). After that time, they seek payment for an additional $3,661.37 in making the most minor revisions to their submissions and

---

[6] <u>Weyant v. Okst</u> 198 F3d 311 seeking fees permitted by statute for prevailing on a false arrest case (2d Cir., 1999; <u>Reed v. Lawrence</u> 95 F3d 1170 (2d Cir. 1996) and <u>Hiller v. County of Suffolk</u> 199 FRD 101 (EDNY 2001) both seeking fees permitted by statute for prevailing on discrimination claim, <u>Gagne v. Maher</u> 594 F2d 336 (2d Cir., 1979) seeking fees permitted by Civil Rights Attorneys Fees Awards act of 1776, all are seeking fees which, as prevailing parties in a action, they were permitted to seek under the statute, and which courts have held, should include the time spent on the application because it is in keeping with the statutory intend to compensate attorneys who take such cases. In the case at bar, the court has determined that the Plaintiffs should prevail on the motion to restore, but that Defendants should be compensated for having to oppose the motion. This is a ruling issued in the discretion of the court, not one based on statute.

delaying the filing despite two requests to do so, apparently simply to delay filing the scheduling motion.  Ms Poston's final affidavit, for example, added only a single sentence to what she had written prior to November 10, 2006. As noted above (see footnote 3), many of the entries clearly have no relation even to the fee application, which is the sole justification for including the entries.  At least one deals with working on another case.   The same vague references, the same "block billing" and the same repetitive entries are included in these more recently created entries as existed in the post hearing entries.

This belated request contradicts the court's own instructions and is clearly an attempt to simply increase the fee application, as is made obvious by the fact Defendants seek permission to file yet another application.

CONCLUSION

While it is clear the Defendants did some work in opposing the motion, it is also clear that they have attempted to expand that work by including in it matters that are clearly unrelated to the opposition to the motion and have attempted to reward themselves by using block billing and vague references. In such instances, the courts normally either reject the improper billings or simply provide an across the board percentage reduction or both.

Respectfully submitted,

By: s/James P. Donohue, Jr.
James P. Donohue, Jr.   (CT25763)
Crystal & Donohue
Attorneys for Plaintiffs
708 Third Avenue
New York, NY 10017
(212) 692-9030
(212) 661-6328
E-Mail jpd@gtlsny.com

19