# EXHIBIT 1

Westlaw.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

C
**Rhone v. U.S.**
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Rudolph **RHONE**, Plaintiff,
v.
UNITED STATES of America, Defendant.
**No. 04 Civ. 5037(PKL).**

Nov. 9, 2007.

James Newman, Esq., Bronx, NY, for Plaintiff.
Michael J. Garcia, Esq., United States Attorney for the Southern District of New York, Melanie R. Hallums, Esq., New York, NY, for United States.

*OPINION AND ORDER*

LEISURE, District Judge.

*1 Plaintiff Rudolph Rhone ("Rhone") brings this action alleging negligence in violation of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (the "FTCA"). Defendant United States of America (the "Government") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted.

**BACKGROUND**

The subject of this litigation is a car accident that occurred on December 27, 2003 at approximately 7:40 a.m. on Executive Boulevard in Yonkers, New York (the "accident" or "December 2003 accident"). (Pl.'s 56.1 ¶ 1; Def.'s 56.1 ¶ 4.) The accident involved a collision between a mail delivery truck, driven by United States Postal Service employee Pio Franquelli ("Franquelli"), and a vehicle driven by Rhone. (Pl.'s 56.1 ¶ 1; Def.'s 56.1 ¶ 4.) Franquelli was traveling downhill on Executive Boulevard when Franquelli's mail truck slid on the icy road and collided with Rhone's vehicle. (PL's 56.1 ¶ 7; Def.'s 56.1 ¶ 5.)

The parties dispute the weather and road conditions leading up to and at the time of the accident. The Government states that at the time of the accident, the weather was dry and clear with a below freezing temperature. (Def.'s 56.1 ¶ 7.) The Government further contends that it did not snow the day before or the day of the accident. (Def.'s 56.1 ¶ 7-8.) Rather, the Government alleges that water had seeped onto Executive Boulevard and frozen. (Def.'s 56.1 ¶ 7-8.) Thus, the Government claims that the car in front of Franquelli unexpectedly began to slide and, in attempting to maneuver around that car, Franquelli's vehicle also slid, turning completely around and striking Rhone's vehicle. (Def.'s 56.1 ¶ 5.)

Rhone contests the Government's assertions that water seeped onto the road and froze at the time and place of the accident. (Pl.'s 56.1 ¶¶ 11-13.) Rather, Rhone states that the icy road conditions were due to ice pellets falling in the area on December 25, as well as 5.5 inches of rain on December 14, and 3.5 inches of rain on December 15, coupled with generally below freezing temperatures. (Pl.'s 56.1 ¶ 10.) Therefore, Rhone contends that Franquelli failed to observe the obvious icy conditions and was negligently operating his vehicle given the conditions. (Pl.'s 56.1 ¶¶ 7, 14.)

Rhone states that following the accident, fire personnel had to cut the doors off of his vehicle in order to remove him. (Pl.'s 56.1 ¶ 17.) Rhone subsequently was removed by stretcher, a collar was applied to his neck, and he was taken by ambulance to St. John's Hospital in Yonkers, New York. (Pl.'s 56.1 ¶ 18.) At the emergency room, Rhone complained of neck and back pain. (Pl.'s 56.1 ¶ 19; Def.'s 56.1 ¶ 10.) He was given medication, including a painkiller injection and an anti-inflammatory prescription. (Pl.'s 56.1 ¶ 19; Def.'s 56.1 ¶ 10.) Rhone was released the same day and told to follow-up with his private doctor. (PL's 56.1 St 19; Def.'s 56.1 ¶ 11.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)  
**(Cite as: Slip Copy)**

Page 2

*2 Three days after the accident, Rhone sought treatment from Dr. Gregori Pasqua, a chiropractor. (Pl.'s 56.1 ¶ 20; Def.'s 56.1 ¶ 12.) Rhone visited Dr. Pasqua for chiropractic treatments two or three times a week. (Pl.'s 56.1 ¶ 21; Def.'s 56.1 ¶ 13.) He states that Dr. Pasqua directed him not to return to work for seven months. (Pl.'s 56.1 ¶¶ 23-24.)

Dr. Pasqua referred Rhone to an orthopedic surgeon, Dr. Michael Palmeri. (Pl.'s 56.1 ¶ 25; Def.'s 56.1 ¶ 14.) Dr. Palmeri evaluated Rhone for the first time on January 15, 2004. (Def.'s 56.1 ¶ 15.) He recommended that Rhone obtain radiological examinations ("MRIs") and electro-diagnostic testing ("EMG"). (Pl.'s 56.1 ¶ 26; Def.'s 56.1 ¶ 15.) Subsequently, Dr. Palmeri advised Rhone that the MRIs showed partial tears in his shoulders and that arthroscopic surgery was indicated. (Pl.'s 56.1 ¶ 27.) The Government states that Dr. Palmeri also discussed alternatives to surgery, including physical therapy and medication. (Def.'s 56.1 ¶ 22.) Dr. Palmeri performed arthroscopic surgery on Rhone's left shoulder on March 1, 2004, and on Rhone's right shoulder on June 7, 2004, at the Sound Shore Medical Center in New Rochelle, New York. (Pl.'s 56.1 ¶ 29; Def.'s 56.1 ¶¶ 20-21.) Following each surgery, Rhone attended physical therapy. (Def.'s 56.1 ¶ 23.) In addition to the partial tears in his shoulders, Rhone was informed that the neck and cervical MRIs revealed disc herniation and disc bulges. (Pl.'s 56.1 ¶ 28.)

The Government notes that several other doctors have evaluated Rhone's medical condition. Dr. Andrew N. Bazos performed an orthopedic surgical peer review to determine the medical necessity of Rhone's left shoulder surgery. (Def.'s 56.1 ¶ 29.) Dr. Kenneth Falvo performed an independent medical examination of Rhone at the request of his insurer, GEICO. (Def.'s 56.1 ¶ 31.) In addition, the Government's experts, Dr. Samuel Rapoport, a neurologist, and Dr. Harry Goldmark, an orthopedic surgeon, performed medical examinations of Rhone in February 2005 and March 2005, respectively. (Def.'s 56.1 ¶¶ 46, 50.)

Prior to the December 2003 accident, Rhone worked as a telephone dispatcher for a staffing company, owned by his son, named Comfort Care. (Pl.'s 56.1 ¶ 22; Def.'s 56.1 ¶ 40.) Rhone states that following the December 2003 accident he did not work again until July 22, 2004. (Pl.'s 5 6.1 ¶ 23; Def.'s 56.1 ¶ 41.) During that time, Rhone worked from home once a week, which involved talking on the telephone. (Def.'s 56.1 ¶ 42.) Rhone continued to attend graduate school classes twice a week from January through May 2004, except for two weeks following his left shoulder surgery. (Def.'s 56.1 ¶ 45.) Additionally, he attended classes once a week from September through December 2004. (Def.'s 56.1 ¶ 45.) In July 2004, Rhone returned to work at a different staffing company, C & H Staffing, doing work similar to that which he did at Comfort Care. (Def.'s 56.1 ¶ 43.)

*3 Rhone states that the function and motion of his right shoulder is permanently restricted. (Pl.'s 56.1 ¶ 35.) Further, Rhone notes that he considers himself to have permanently diminished work capacity and that his physical activities are limited in that he can no longer lift weights and do the types of exercises that he did prior to the December 2003 accident. (Pl.'s 56.1 ¶¶ 32, 34.) Rhone states that he continues to have pain every day in his shoulders, neck, and back. (Pl.'s 56.1 ¶¶ 31, 33.)

The Government notes, and Rhone does not contest, that Rhone was involved in a prior car accident on March 14, 2001 (the "prior accident" or "March 2001 accident"). (Def.'s 56.1 ¶ 1.) The day after that accident, Rhone was treated at Lawrence Hospital in Bronxville, New York, where he complained of dizziness and neck and shoulder pain. (Def.'s 56.1 ¶ 2.) Rhone was diagnosed with a neck sprain. (Def.'s 56.1 ¶ 2.) Additionally, x-rays taken of Rhone's spine following that accident showed "degenerative changes with space narrowing at the C5-6 and 6/7" and "degenerative changes of the cervical spine."(Def.'s 56.1 ¶ 3.)

As a result of the December 2003 accident, on June 25, 2004, Rhone and his son, Andre Rhone

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4 of 13

("Andre"), filed this action asserting two claims. First, Rhone sought damages for basic economic loss and non-economic loss. Second, Andre, who owned the vehicle that Rhone was driving at the time of the accident, sought $10,000 for property damage and loss of use of his vehicle. On November 9, 2004, the Court signed a Stipulation and Order agreed to by the parties, which stated that Rhone was the only proper plaintiff in this action and Andre dismissed his claims against the Government without prejudice. Following discovery, on October 17, 2005, the Government filed its motion for summary judgment. Rhone opposed the motion on December 15, 2005. On January 20, 2006, the Government replied.

## DISCUSSION

I. *Legal Standards*

**A. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure allows for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the "heavy burden" of demonstrating that no genuine issue as to any material fact exists and that it is therefore entitled to judgment as a matter of law. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir.1999); *accord Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 433 (2d Cir.2005) (" 'The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment ....' ") (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004)); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (Kearse, J.) (same).

*4 "[I]t is a fundamental maxim that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried."*American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967). In so determining, a district court "must resolve all ambiguities and draw all inferences in favor of the non-moving party," such that "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."*Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002); *accord Brown v. Cara,* 420 F.3d 148, 152 (2d Cir.2005) ("We will affirm the District Court's grant of summary judgment to defendants only if, based on facts not in genuine dispute and drawing all inferences in favor of plaintiffs, defendants are entitled to judgment on the merits as a matter of law .").

Of course, " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " *Lang v. Ret. Living Publ'g Co.,* 949 F.2d 576, 580 (2d Cir.1991) (quoting *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). "A dispute as to a material fact is 'genuine,' and hence summary judgment is not appropriate, under this standard, only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson,* 477 U.S. at 248);*accord N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel LLC,* 293 F .3d 550, 554 (2d Cir.2002) (same). "[T]he law provides no magical talisman or compass that will serve as an unerring guide to determine when a material issue of fact is presented. As is so often true in the law, this is a matter of informed and properly reasoned judgment." *American Mfrs. Mut. Ins. Co.,* 388 F.2d at 279.

**B. New York's No-Fault Law**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 4

Pursuant to 28 U.S.C. § 1346(b), the laws of New York, which is where the accident occurred, govern this case.[FN1] Rhone seeks recovery of damages for both economic and non-economic losses under New York's Comprehensive Motor Vehicle Insurance Reparations Act (the "No-Fault Law"). *See* N.Y. Ins. Law § 5102 (McKinney 2000). Rhone asserts a claim for negligence causing "serious injury" pursuant to the No-Fault Law. *See id.* § 5102(d). To prove a negligence claim under New York law, plaintiff must show that "(1) defendant owed plaintiff a duty of care; (2) defendant breached that duty; and (3) the breach proximately caused plaintiff's injuries." *Kane v. United States,* 189 F.Supp.2d 40, 51 (S.D.N.Y.2002).

> FN1. Section 1346(b) provides that FTCA actions are to be decided "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The No-Fault Law precludes recovery for non-economic losses [FN2] arising out of negligence in the use or operation of an automobile except where the claimant has suffered a "serious injury." [FN3] *See* N.Y. Ins. Law § 5102(a). "New York courts have strictly construed the serious injury requirement, noting the legislature's determination to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.' " *Cruz v. Pritt,* No. 99 Civ. 3029, 2000 WL 224106, at *2 (S.D.N.Y. Feb. 28, 2000) (quoting *Licari v. Elliot,* 57 N.Y.2d 230, 236, 441 N.E.2d 1088, 1091, 455 N.Y.S.2d 570, 573 (N.Y.1982)). Toward that end, plaintiff bears the burden of making a prima facie showing that he has suffered a serious injury. *See Khouzam v. Zalesky,* No. 93 Civ. 6360, 1996 WL 79882, at *4 (S.D.N.Y. Feb. 26, 1996); *Gaddy v. Eyler,* 79 N.Y.2d 955, 957, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991 (N.Y.1992). Further, the sufficiency of the showing is a threshold question of law appropriate for the Court to decide on summary judgment.[FN4] *See Jackson v. Greyhound Lines, Inc.,* No. 96 Civ. 7431, 1998 WL 355423, at

*2 (S.D.N.Y. July 2, 1998); *Rosas v. Hertz Corp.,* No. 96 Civ. 7165, 1997 WL 736723, at *2 (S.D.N.Y. Nov. 24, 1997); *Khouzam,* 1996 WL 79882, at *4. In order to defeat summary judgment, plaintiff must rely on more than "subjective complaints of pain" and must substantiate his claim with "objective medical evidence." *Cruz,* 2000 WL 224106, at *3; *Eldred v. Stoddard,* 217 A.D.2d 952, 630 N.Y.S.2d 171, 172 (4th Dep't 1995).

> FN2. The statute defines "non-economic loss" as "pain and suffering and similar non-monetary detriment." N.Y. Ins. Law § 5102(c).

> FN3. "Serious injury" is defined as:
> A personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.
> N.Y. Ins. Law § 5102(d).

> FN4. "The moving party bears the initial burden of 'informing the district court of the basis for its motion' and identifying the matter that 'it believes demonstrate[s] the absence of a genuine issue of material fact.' " *Jackson v. Greyhound Lines, Inc.,* No. 96 Civ. 7431, 1998 WL 355423, at *1 (S.D.N.Y. July 2, 1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). If the movant meets its burden, then the burden shifts to the nonmoving party to provide "specific facts showing that there is a genuine issue for trial." *Id.* (citing Fed.R.Civ.P. 56(e)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*5 Additionally, the No-Fault Law guarantees compensation for economic losses up to $50,000. Therefore, plaintiffs may only recover in tort for "basic economic loss" that exceeds $50,000. *See* N.Y. Ins. Law §§ 5102(a), 5104. "Basic economic loss" includes medical expenses, lost wages, and other reasonable and necessary expenses. *Id.* § 5102(a).

In support of its motion, the Government asserts three grounds for summary judgment. First, the Government claims that it was not negligent. Second, the Government contends that Rhone has not suffered a serious injury, as required to recover non-economic damages under the No-Fault Law. Third, the Government states that Rhone has not suffered sufficient economic damages in order to recover under the No-Fault Law. For the reasons set forth below, the Government's motion is GRANTED.

II. *Negligence*

The Government asserts that Rhone cannot prove his negligence claim. Specifically, the Government contends that there is no evidence that it breached its duty of care, and, even if it did, there is no evidence that the December 2003 accident was the proximate cause of Rhone's injuries. (Gov't Mot. at 9-13.)

A. Emergency Doctrine

The Government relies on the "emergency doctrine" for its assertion that it was not negligent. Rhone responds that the emergency doctrine should not apply in this case. Under New York law, "[t]he emergency doctrine applies when a party is confronted with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation, or consideration." *Cheung v. Dominican Convent of Our Lady of the Rosary,* 22 A.D.3d 450, 451, 802 N.Y.S.2d 208, 209 (2d Dep't 2005); *see also Marsch v. Catanzaro,* 40 A.D.3d 941, 942, 837 N.Y.S.2d 195, 195 (2d Dep't 2007). If confronted with an emergency, a party is required to react as a reasonable person when faced with similar circumstances. *See Pettica v. Williams,* 223 A.D.2d 987, 988, 636 N.Y.S.2d 502, 503 (3d Dep't 1996)." '[T]he existence of an emergency and the reasonableness of a party's response to it will ordinarily present questions of fact.' " *Marc v. Kohl,* 13 Misc.3d 1206(A), No. 40092/03, 2006 WL 2589924, at *2 (N.Y.Sup.Ct.2006) (quoting *Bello v. Transit Auth. of New York City,* 12 A.D.3d 58, 60, 783 N.Y.S.2d 648, 650 (2d Dep't 2004)).

The Government asserts that the "emergency doctrine" should apply here because the icy conditions on the road were unexpected. Specifically, the Government alleges that the ice on the road was caused by water seeping onto the road and freezing, resulting in "invisible or 'black' ice." (Gov't Mot. at 10.) Further, the Government contends that it had not snowed the day before the accident, but rather, "the weather was dry and clear."(Gov't Mot. at 10.) Additionally, the Government contests Rhone's assertions that the weather was below freezing in the two weeks leading up to the accident, and further alleges that any ice pellets on December 25 melted immediately. (Gov't Reply at 2.) Thus, the Government argues that "[t]he icy condition of the road was therefore not foreseeable."(Gov't Mot. at 10.) As a result, the Government contends that when the car in front of Franquelli was sliding, Franquelli reacted to the situation as a reasonable person would under the given "emergency" circumstances. (Gov't Mot. at 11.)

*6 Rhone argues that the "emergency doctrine" is not applicable because defendant should have known that the road conditions were icy. (Rhone Opp. at 3.) In support of his assertion, Rhone contests the Government's claims that water seeped onto the road and froze at the time and place of the accident. (Pl.'s 56.1 ¶¶ 11-13.) Rather, Rhone states that the icy road conditions were due to ice pellets falling in the area on December 25, as well as 5.5 inches of rain on December 14, and 3.5 inches of rain on December 15, coupled with generally below

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 6

freezing temperatures. (Pl.'s 56.1 ¶ 10; Rhone Opp. at 2-3.) Rhone contends that Franquelli's failure to observe the obvious wet and icy conditions makes the Government negligent. (Rhone Opp. at 4.)

The Government has not demonstrated prima facie entitlement to judgment as a matter of law with respect to whether the Government breached a duty. In opposition, Rhone has presented sufficient evidence to raise a triable issue of fact as to whether the Government breached its duty of care. In support of his claims, Rhone has provided more than "speculative and conclusory assertions," *Pettica,* 223 A.D.2d at 988, 636 N.Y.S.2d at 503, including supporting weather and police reports. (Pl.'s 56.1 Exhs.) Therefore, genuine issues of fact remain regarding the road conditions at the time of the December 2003 accident, whether the icy conditions were obvious, and the reasonableness of defendant's actions. In light of the forgoing, issues of fact exist concerning whether the driver was "confronted with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation, or consideration,"*Cheung,* 22 A.D.3d at 451, 802 N.Y.S.2d at 209, and whether the Government's response to the emergency, assuming it existed, was reasonable.

**B. Proximate Cause**

The Government also claims that even if it did breach its duty of care to Rhone, Rhone's injuries were not caused by the December 2003 accident. One essential element of a negligence claim is that "the breach proximately caused plaintiff's injuries."*Kane,* 189 F.Supp.2d at 51;*see also Carter v. Full Service, Inc.,* 29 A.D.3d 342, 344, 815 N.Y.S.2d 41, 43 (1st Dep't 2006) ("In order to recover damages for non-economic loss related to a personal injury allegedly sustained in a motor vehicle accident, a plaintiff is required to present competent, non-conclusory expert evidence sufficient to support a finding, not only that the alleged injury is 'serious' within the meaning of Insurance Law § 5102(d), but also that the injury was proximately caused by the accident at issue.")."[E]ven where there is objective medical proof [of a serious injury], when additional contributory factors interrupt the chain of causation between the accident and claimed injury-such as a gap in treatment, an intervening medical problem or a preexisting condition-summary dismissal of the complaint may be appropriate."*Pommells v. Perez,* 4 N.Y.3d 566, 572, 797 N.Y.S.2d 380, 383 (N.Y.2005); *see also Arenes v. Mercedes Benz Credit Corp.,* No. 03 Civ. 5810, 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006). Therefore, "[w]hen a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled to summary dismissal of the complaint."*Arenes,* 2006 WL 1517756, at *8;*see also Pommells,* 4 N.Y.3d at 580, 797 N.Y.S.2d at 389. The Government asserts that it has put forth persuasive evidence that Rhone's injuries are related to a pre-existing condition. Further, the Government claims that it is entitled to summary judgment because Rhone has not met his burden to put forth evidence that addresses the Government's contentions.

*1. The Government's Evidence*

*7 In this case, the Government has submitted persuasive evidence that Rhone's injuries are related to a pre-existing condition. The Government asserts that, even if the Court assumes that Rhone can meet the serious injury threshold required under the No-Fault Law, Rhone cannot show that his injuries were caused by the December 2003 accident, rather than a prior accident or pre-existing conditions. (Gov't Mot. at 11.) In support of its contention, the Government cites the evaluations of three doctors who found no causal connection between Rhone's injuries and the December 2003 accident. (Gov't Mot. at 12; Gov't Reply at 3-4.) Rather, the doctors state that the injuries were the result of degenerative changes. (Gov't Mot. at 12-13.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 7

Specifically, Dr. Samuel Rapoport, the Government's expert neurologist, after obtaining Rhone's medical history and examining him and his medical records, states that any injuries are caused by degenerative disease and are unrelated to the December 2003 accident. (Rapoport Decl. ¶ 5.) In support of his findings, Dr. Rapoport discusses, in detail, Rhone's medical records, including x-rays, MRIs, and an EMG. For example, Dr. Rapoport notes that degenerative changes "were already evident" in a March 2001 x-ray of Rhone's spine, and "it is clear that Mr. Rhone has a chronic, degenerative disease of his cervical spine...." [FN5] (Rapoport Report at 6-7.) Dr. Rapoport further states that "[i]t is important to note that Mr. Rhone was involved in an automobile accident on 3/15/01. As a result of that accident he complained of neck and bilateral shoulder symptoms that were very similar to those that he attributes to his 12/27/03 accident." (Rapoport Report at 7.)

> FN5. In addition to stating that degenerative changes were evident in x-rays taken after the 2001 car accident, the Government also notes that Rhone suffered from neck and shoulder pain following the 2001 car accident. (Def.'s 56.1 ¶ 2; Rapoport Report at 6-7.) Further, Dr. Rapoport states that Rhone "has been suffering from pain attributable to his lumbar spine since at least 6/28/95." (Rapoport Report at 7.) *Cf. Ashquabe v. McConnell,* 14 Misc.3d 211, 829 N.Y.S.2d 427 (N.Y.Sup.Ct.2006) (holding that a medical expert's opinion was not sufficient to shift the burden to plaintiff because plaintiff's injury was asymptomatic prior to the accident at issue and there was no objective evidence of a degenerative condition prior to the accident).

The Government also relies upon the Declaration and Report from Dr. Harry Goldmark, the Government's expert orthopedic surgeon. After examining Rhone and his medical records, Dr. Goldmark concluded that although Rhone "sustained bilateral shoulder strains as a result of the December 27, 2003 accident, which would be expected to resolve in six to eight weeks with appropriate treatment," he "did not sustain any permanent injury to either of his shoulders as a result of the December 27, 2003 accident."(Goldmark Decl. ¶¶ 5-6.) Further, MRIs revealed "long-standing degenerative type changes," but showed "no evidence of any acute injury that occurred at the time of the accident."(Goldmark Report at 5.) Dr. Goldmark also noted that "[t]he fact that findings in both shoulders were essentially the same is not what would be expected if the accident of December 27, 2003 were the cause of Mr. Rhone's alleged injuries."(Goldmark Report at 5.)

In addition to the evidence proffered by the Government's experts, the Government also notes that Dr. Andrew N. Bazos, who conducted an orthopedic surgical peer review, stated that "[t]he only significant MRI findings were degenerative changes at the acromioclavicular joint, which build up over many years and would not be related to a motor vehicle accident that took place only a few weeks before the MRI was obtained."(Gov't Mot. at 6; Hallums Decl., Exh. M.) Further, Dr. Bazos stated that he "found no evidence of any mechanical abnormalities in the shoulder that were acute and that would have been related to the motor vehicle accident on December 27, 2003."(Gov't Reply at 3; Hallums Decl., Exh. M.)

*8 The reports of Drs. Rapoport, Goldmark, and Bazos are sufficient to establish a prima facie case that Rhone's injuries resulted from a pre-existing, degenerative condition. The doctors provide persuasive evidence that a degenerative condition was evident and symptomatic both before and after the December 2003 accident. Because the Government has met its burden, Rhone has the burden of providing evidence that addresses the Government's claimed lack of causation. *See Arenes,* 2006 WL 1517756, at *8.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                         Page 8
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*2. Rhone's Evidence*

Before considering whether Rhone has met his burden, the Court first addresses the Government's contention that three of the affirmations submitted in support of Rhone's opposition to the summary judgment motion are inadmissible. Specifically, the Government asserts that affirmations from Drs. John Rigney, Allen Rothpearl, and John S. Vlattas are inadmissible because they were not previously disclosed during discovery as treating physicians or experts. *See*Fed.R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

Under Rule 37(c)(1), a failure to disclose may be excused if there is a "substantial justification" for the failure or if the failure is harmless.[FN6]*See*Fed.R.Civ.P. 37(c)(1). In offering the affirmations, Rhone provides no "substantial justification" for failure to disclose the doctors.[FN7] Notably, these three doctors each performed their examinations well before the close of discovery.[FN8] Nonetheless, the Court will consider the contested affirmations because, although Rhone does not offer a "substantial justification" for failure to disclose,[FN9] the failure is harmless in this case.

> FN6. Courts recognize that preclusion under Rule 37(c)(1)"is a drastic remedy and should be exercised with discretion and caution."*Ebewo v. Martinez,* 309 F.Supp.2d 600, 607 (S.D.N.Y.2004) (Koeltl, J.) ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."); *see also Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000) (recognizing that preclusion is a drastic remedy); *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.,* 77 F.Supp.2d 446, 458 (S.D.N.Y.1999) (same). Some district courts in the Second Circuit have required that "the party's conduct represent [ ] flagrant bad faith and callous disregard of the federal rules," in order to warrant preclusion of expert testimony. *Ebewo,* 309 F.Supp.2d at 607 n. 2 (citing cases requiring bad faith, but noting that it remains an open question). The Second Circuit previously had "express[ed] no opinion as to whether a showing of bad faith is required before evidence may be excluded under Rule 37(c)(1)."*Hein v. Cuprum, S.A., De C.V.,* 53 Fed. Appx. 134, 137 (2d Cir.2002). In *Design Strategy, Inc. v. Davis,* however, the Second Circuit expressly held that "[s]ince Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."*Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296 (2d Cir.2006). Thus, the Court need not consider whether Rhone's conduct represents bad faith.

> FN7. In the recent Southern District of New York case of *Farook v. Bailey,* the Court allowed plaintiff's medical evidence submitted in opposition to defendants' summary judgment motion even though the expert was not previously disclosed in accordance with Rule 26(a) (2) of the Federal Rules of Civil Procedure. The Court allowed the evidence because the materials responded to specific issues raised in defendants' motion practice, the materials did not exist prior to the general deadline for disclosure, and defendants were not harmed by the timing of disclosure. *See Farook v. Bailey,* No. 05 Civ. 3785, 2007 WL 2076764, at *2 (S.D.N.Y. July 16, 2007). In this case, however, Rhone's medical evidence does not respond to specific issues raised by defendant's motion prac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 9

tice and the materials existed well before the deadline for disclosure. The issue of harm is discussed further below.

FN8. In an endorsed letter on March 28, 2005, the parties were ordered to conclude all discovery by May 2, 2005. The doctors' affirmations make clear that their examinations of Rhone's injuries occurred between January and March 2004. Specifically, Dr. Rigney states that he reviewed Rhone's MRI films on January 21 and 27, 2004; Dr. Rothpearl states that he interpreted MRI films on February 10, 2004; and Dr. Vlattas states that he performed and reviewed electro-diagnostic studies on March 12, 2004. Thus, the doctors each performed their examinations well before the close of discovery.

FN9. Rhone cannot circumvent the disclosure requirement by referring to these doctors as treating physicians. Although treating physicians are not required to make disclosures under Rule 26(a) (2), these three doctors cannot be considered treating physicians. The affirmations make clear that the doctors "did not have an ongoing relationship with plaintiff as a treating physician."*Ebewo,* 309 F.Supp.2d at 606. Rather, the affirmations of Drs. Rigney and Rothpearl state that they only reviewed MRI films and make no reference to ever actually seeing Rhone, let alone treating him. Similarly, Dr. Vlattas states that he performed electro-diagnostic studies on Rhone on one occasion, but does not mention any additional contact or treatment. Because they plainly were not treating physicians, Drs. Rigney, Rothpearl, and Vlattas should have been disclosed as expert witnesses if Rhone planned to use affirmations from them in support of his opposition to defendant's summary judgment motion.

The Government is not harmed by Rhone's timing because the affirmations do not change the result here. *See Farook v. Bailey,* No. 05 Civ. 3785, 2007 WL 2076764, at *2 (S.D.N.Y. July 16, 2007) (holding that "the Court finds that Defendants have not been harmed by the timing of their disclosure. Hence, the harsh remedy of preclusion is unwarranted ...."). As discussed above, the Government met its burden to put forth persuasive evidence that Rhone's injury was caused by a pre-existing condition, therefore, Rhone has the burden of providing evidence that addresses the Government's claimed lack of causation. Specifically, Rhone must "refute defendant's evidence of a preexisting degenerative condition."*Pommells,* 4 N.Y.3d at 580, 797 N.Y.S.2d at 389. The affirmations from Drs. Rigney, Rothpearl, and Vlattas are harmless because they fail to refute the Government's evidence.

The affirmations put forth by Rhone do not rebut the assessments from the Government experts that Rhone's injuries were caused by a degenerative condition and were evident prior to the December 2003 accident. First, Dr. Rigney submitted brief conclusory findings that do not consider causation. He makes no mention of Rhone's medical history or March 2001 accident. Second, Dr. Rothpearl also submitted brief conclusory findings that merely state that Rhone's MRIs revealed partial tears in the tendons in his shoulders. Dr. Rothpearl does not mention what might have caused the tears, nor does he mention any of Rhone's medical history. Third, in his brief findings, Dr. Vlattas does not mention whether he obtained Rhone's medical history. In spite of that, Dr. Vlattas states that "[t]he absence of any pre-existing condition make[s] clear that these injuries were as a result of the trauma sustained in the accident of December 27, 2003."(Vlattas Aff. at 1.) In addition, Dr. Vlattas states that he felt a muscle spasm upon examination and that his finding "is consistent and compatible with [his] diagnosis of spinal nerve injury related to and caused by accident of December 27, 2003."(Vlattas Aff. at 2.) However, without consideration of Rhone's medical history and the persuas-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 10

ive evidence of a degenerative condition put forth by the Government, Dr. Vlattas's conclusion is mere speculation. *See Farook,* 2007 WL 2076764, at *2 ("Doctors' conclusions of causation are speculative if they are merely conclusory and do not address causation."). Thus, these affirmations do not assist Rhone in meeting his burden to come forward with evidence addressing the Government's claimed lack of causation.

*9 Further, Rhone fails to provide any other evidence that refutes the Government's evidence regarding causation. Notably, the report from Dr. Pasqua, Rhone's treating chiropractor, is silent on the possibility of a degenerative condition and Rhone's previous accident. Although Dr. Pasqua states that Rhone's injuries are causally related to the December 2003 accident, he does not explain what leads him to that finding and fails to consider the evidence of degeneration put forth by the Government experts.[FN10] (Pasqua Aff. at 4.) Indeed, Dr. Pasqua's report does not address the Government's evidence that the injuries were degenerative in nature and does not mention Rhone's prior accident. In addition, Dr. Pasqua fails to consider Rhone's medical history prior to the December 2003 accident. Courts have repeatedly held that such conclusory statements are merely speculative and are insufficient to meet plaintiff's burden. *See, e.g., Arenes,* 2006 WL 1517756, at *8-9;*see also Montgomery v. Pena,* 19 A.D.3d 288, 290, 798 N.Y.S .2d 17, 17 (1st Dep't 2005) (granting summary judgment to defendants where plaintiff's expert failed to give an objective basis for the conclusion that plaintiff's injuries resulted from the accident sued upon rather than from a prior accident or pre-existing degenerative conditions); *cf. Farook,* 2007 WL 2076764, at *3 (noting that medical opinion "as to causation specifically discusses the pre-accident evidence" presented by adversary). Dr. Pasqua's conclusory statements are not sufficient to demonstrate a triable issue of fact.

> FN10. Dr. Pasqua states that "[t]he findings of disc herniation and bulging as confirmed by me clinically is consistent and compatible with my diagnosis of permanent and significant injury related to and caused by the accident of December 27, 2003," and that it can "be stated with a reasonable degree of medical certainty that the accident of December 27, 2003 was the competent producing factor of the present injuries .... " (Pasqua Aff. at 4-6.)

Rhone also submitted his own affidavit in opposition to the instant motion. Rhone states that "[a]s a result of the impact [from the December 2003 accident] I sustained injuries to both my shoulders, neck and back ...." (Rhone Aff. at 1.) He further explains the injuries that he suffered, the pain that continues to plague him, and the resulting limitations to his activities. (Rhone Aff. at 1-2.) Courts have made clear, however, that a plaintiff's own self-serving statements are insufficient to raise a triable issue of fact. *See Carter,* 29 A.D.3d at 344-45, 815 N.Y.S.2d at 43 (stating that plaintiff's own self-serving testimony is, in the absence of corroborating objective medical evidence, insufficient to raise a triable issue for submission to the jury); *see also Arenes,* 2006 WL 1517756, at *7. As discussed above, the medical evidence submitted by Rhone fails to address the Government's persuasive evidence that the December 2003 accident was not the proximate cause of Rhone's injuries. Rhone's own statements cannot serve as a substitute for objective medical evidence. Without objective medical evidence to corroborate Rhone's self-serving statements, his own affidavit cannot overcome defendant's evidence regarding causation.

In this case, with persuasive evidence from the Government that Rhone's injuries were related to a pre-existing condition, the burden shifted to Rhone to put forth evidence addressing the Government's evidence regarding causation. *See Arenes,* 2006 WL 1517756, at *8-9 (holding that plaintiffs' failure to address defendant's persuasive evidence that injuries are related to a pre-existing condition warrants summary dismissal of complaint). Considering all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 11

of the evidence put forth by Rhone, including the contested affirmations from Drs. Rigney, Rothpearl, and Vlattas, as well as the evidence from Dr. Pasqua, Rhone "failed to rebut [defendant's] evidence sufficiently to raise an issue of fact."*Pommells,* 4 N.Y.3d at 579, 797 N.Y.S.2d at 389;*see also Arenes,* 2006 WL 1517756, at *9. Rhone failed to present the objective proof required to create a triable issue as to whether his injuries-even if the Court assumes that Rhone can meet the serious injury threshold-were caused by the December 2003 accident.

*10 The Court recognizes that summary judgment is an extraordinary remedy and to that end, "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."*Westinghouse Credit Corp.,* 278 F.3d at 145. In this case, however, in the face of the Government's persuasive evidence from three medical experts, Rhone has failed to put forth any objective medical evidence to rebut the Government experts' conclusions. In the absence of any such evidence, the Court concludes that the Government is entitled to summary judgment on Rhone's claim for non-economic damages. Given the Court's holding that there is no triable issue of fact as to whether the Government proximately caused plaintiff's injuries, the Court need not consider the Government's claim regarding whether Rhone can meet the serious injury threshold.[FN11]

> FN11. Consideration of whether Rhone meets the serious injury threshold is rendered moot by the Court's decision on causation. Rhone's failure to put forth any objective medical evidence demonstrating a causal link between the December 2003 accident and his alleged injuries makes any consideration of the seriousness of those injuries irrelevant. *See Pommells,* 4 N.Y.3d at 579-80, 797 N.Y.S.2d at 388-89;*see also Carter,* 29 A.D.3d at 345, 815 N.Y.S.2d at 44 (holding that "plaintiff failed to sustain his burden of proving a serious injury *causally related* to the accident") (internal quotations omitted); *Montgomery,* 19 A.D.3d at 290, 798 N.Y.S.2d at 17 (stating that even if it is assumed that plaintiff met the serious injury threshold, doctor's speculative conclusions are insufficient to defeat defendant's motion for summary judgment).

III. *Economic Losses*

The Government also argues that Rhone cannot establish that he has incurred more than $50,000 in economic loss, as is required to recover basic economic loss under the No-Fault Law. *See*N.Y. Ins. Law §§ 5102(a), 5104; *see also Rambarrat v. United States,* No. 04 Civ. 6115, 2006 WL 648217, at *9 n. 3 (S.D.N.Y. Mar. 14, 2006); *Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000). In support of its position, the Government states that Rhone "has not incurred any medical costs, except for out-of-pocket expenses of approximately $150 for medication."(Gov't Mot. at 25.) Further, the Government states that Rhone's 2002 salary was $20,000 to $25,000 per year. (Gov't Mot. at 25.) Rhone's 2003 salary at Comfort Care was $500 per week with bonuses totaling less than $1,000. (Gov't Mot. at 25.) As an employee of C & H Staffing from July 2004 to November 2004, the Government states that Rhone earned $700 per week. (Gov't Mot. at 25.) Rhone's salary at the time that the instant motion was filed was $700 per week. (Gov't Mot. at 25.)

In his Memorandum of Law in Opposition to the Government's Motion for Summary Judgment, Rhone fails to address the Government's economic loss argument. Rhone does not offer any evidence that his economic loss was in excess of $50,000 and he does not oppose the Government's motion on this ground. In his affidavit, Rhone states that his vehicle sustained damage in excess of $11,000. (Rhone Aff. at 1.) In its Reply, the Government states that although Rhone asserts in his affidavit

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 12

that he owned the vehicle he was driving at the time of the accident, Rhone previously testified that his son Andre owned the vehicle. (Gov't Reply at 11.) Considering the evidence before the Court in the light most favorable to Rhone, accounting for the property damage, medical costs, and lost wages, Rhone's basic economic loss does not come close to the $50,000 threshold requirement. Therefore, the Government is entitled to summary judgment on the claim for damages for basic economic loss.

## CONCLUSION

*11 For the reasons set forth above, defendant's request for summary judgment is hereby GRANTED and plaintiff's claims against the United States are DISMISSED.

**SO ORDERED.**

S.D.N.Y.,2007.
Rhone v. U.S.
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.