**EXHIBIT H – DEFENDANTS' MOTIONS IN LIMINE**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : | Civil Action |
| | : | |
| Plaintiffs, | : | No. 3:02 CV 2234 (AWT) |
| v. | : | |
| | : | |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, | : : : : : : : | |
| Defendants. | : | March 10, 2008 |

## MOTION TO PRECLUDE EXPERT WITNESS TESTIMONY

Defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor Strategic Divestitures, and Taylor Financial Services LLC (collectively "Taylor Companies") hereby move this Court to preclude plaintiffs from offering the testimony of their purported expert witness, David Bernstein, pursuant to Fed.R.Civ.P. 26(a)(2) and 37(c)(1). In support of its motion, Taylor Companies states as follows:

1.    Payne filed his Complaint in this matter on December 16, 2002.

2.    On May 17, 2005, the parties jointly moved to amend the scheduling order in this case to provide, among other things, for the following deadlines:

| | |
|---|---|
| Completion of Fact Discovery: | June 14, 2005 |
| Plaintiffs to designate trial experts and submit reports pursuant to Fed.R.Civ.P. 26(a)(2): | June 21, 2005 |
| Defendants to complete depositions of Plaintiffs' experts: | July 15, 2005 |

Defendants to designate trial experts
and submit reports pursuant to
Fed. R. Civ. P. 26(a)(2):                July 15, 2005

Plaintiffs to complete depositions
of Defendants' experts:                 August 5, 2005

(Docket No. 52).

3.      On May 25, 2005, this Court granted this motion and extended these deadlines as requested by the parties (Docket No. 53).

4.      Plaintiffs did not designate expert witnesses or provide expert reports pursuant to Fed. R. Civ. P. 26(a)(2) at any time prior to June 21, 2005. Affidavit of Douglas J. Varga dated March 10, 2008 ("Varga Aff."), filed contemporaneously herewith, at ¶ 10.

5.      On May 2, 2006, this Court entered judgment against Payne (Docket No. 56).

6.      On July 31, 2006, Payne filed a Motion to Reopen seeking reinstatement of this case on the Court's docket. Attached as an exhibit to an Affidavit accompanying that motion was a purported expert witness report dated March 7, 2006, presented by Payne for the first time, and titled "Report of David B. Epstein of Bentley Associates, L.P." (the "Report").

7.      Counsel for Taylor Companies was not provided with the purported Report at any time prior to their receipt of the Affidavit accompanying the Motion to Reopen. Varga Aff. at ¶ 11.

2

8.    The opinions set forth in the purported Report, furthermore, address factual issues not present in this case.

9.    The agreement between Payne and Taylor Companies does not assume or incorporate from the investment banking industry as a whole any definition of the managing director role, or any industry custom and practice relating to compensation of managing directors.

10.    The purported Report also includes opinions as to what the contract at issue in this case means; the nature and extent of the parties' obligations under the contract; and the conclusions the jury should reach concerning Taylor Companies' liability on each of Payne's claims.  Report at 6-12.

11.    Douglas J. Varga, one of Taylor Companies' attorneys, has conferred with Kevin W. Gillen, one of Payne's attorneys, about Payne's failure to disclose Mr. Epstein and to provide his report in a timely manner under the Court's order.  While the parties engaged in a good faith effort to resolve defendants' objection to Mr. Epstein's testimony at trial, the dispute was not resolved.  Varga Aff. at ¶¶12-13.

WHEREFORE, Taylor Companies respectfully requests that this Court enter an Order precluding plaintiffs from calling David B. Epstein as a witness at trial pursuant to Fed.R.Civ.P. 26(a)(2) and 37(c)(1).

3

DEFENDANTS
TAYLOR COMPANIES

By: _____

Douglas J. Varga (ct 18885)
Sarah W. Poston (ct 19702)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
P. O. Box 1740
Bridgeport, CT  06601-1740
Telephone:  203-333-9441
Facsimile:  203-333-1489
E-mail:  dvarga@znclaw.com
e-mail: sposton@znclaw.com

Its Attorneys

4

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via United States

Mail, postage prepaid, on this date, to:

>Michael P. Berman, Esq.
>Kevin W. Gillen, Esq.
>Berman and Sable LLC
>One Financial Plaza
>Hartford, CT 06103
>
>Jacob A. Stein, Esq.
>Stein, Mitchell & Mezines
>1100 Connecticut Avenue, N.W. 11th Floor
>Washington, DC 20036

Dated at Bridgeport, Connecticut this 10th day of March, 2008.

Douglas J. Varga

5

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT PAYNE and PAYNE     :     Civil Action
INVESTMENTS LLC,            :

           Plaintiffs,     :     No. 3:02 CV 2234 (AWT)
    v.                  :

TAYLOR VISION RESOURCES,     :
TAYLOR STRATEGIC ACQUISITIONS, :
TAYLOR STRATEGIC DIVESTITURES, :
and TAYLOR FINANCIAL SERVICES     :
LLC, all defendants collectively     :
operating under the name         :
TAYLOR COMPANIES,          :

           Defendants.     :     March 10, 2008

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO PRECLUDE EXPERT WITNESS TESTIMONY

Defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor

Strategic Divestitures, and Taylor Financial Services LLC (collectively, "Taylor

Companies") submit this memorandum in support of their Motion to Preclude Expert

Witness Testimony pursuant to Fed. R. Civ. P. 37(c)(1), and specifically, to preclude

plaintiffs Robert Payne and Payne Investments LLC (collectively, "Payne") from calling

as a witness at trial David B. Epstein, a purported expert witness who was not disclosed

to Taylor Companies either pursuant to this Court's scheduling order, or pursuant to

Fed. R. Civ. P. 26(a)(2).

## A.  PROCEDURAL BACKGROUND

1.     Payne filed his Complaint in this matter on December 16, 2002.

2.     On May 17, 2005, the parties jointly moved to amend the scheduling order

in this case to provide, among other things, for the following deadlines:

| | |
|---|---|
| Completion of Fact Discovery: | June 14, 2005 |
| Plaintiffs to designate trial experts and submit reports pursuant to Fed.R.Civ.P. 26(a)(2): | June 21, 2005 |
| Defendants to complete depositions of Plaintiffs' experts: | July 15, 2005 |
| Defendants to designate trial experts and submit reports pursuant to Fed. R. Civ. P. 26(a)(2): | July 15, 2005 |
| Plaintiffs to complete depositions of Defendants' experts: | August 5, 2005 |

(Docket No. 52).

3.     On May 25, 2005, this Court granted this motion and extended these

deadlines as requested by the parties (Docket No. 53).

4.     Plaintiffs did not designate expert witnesses or provide expert reports

pursuant to Fed. R. Civ. P. 26(a)(2) at any time prior to June 21, 2005.  Affidavit of

Douglas J. Varga dated March 10, 2008 ("Varga Aff."), filed contemporaneously

herewith, at ¶ 10.

5.     On May 2, 2006, this Court entered judgment against Payne (Docket No.

56).

6.      On July 31, 2006, Payne filed a Motion to Reopen seeking reinstatement of this case on the Court's docket.  Attached as an exhibit to an Affidavit accompanying that motion was a purported expert witness report dated March 7, 2006, presented by Payne for the first time, and titled "Report of David B. Epstein of Bentley Associates, L.P." (the "Report").

7.      Counsel for Taylor Companies was not provided with the purported Report at any time prior to their receipt of the Affidavit accompanying the Motion to Reopen. Varga Aff. at ¶ 11.

8.      The opinions set forth in the purported Report, furthermore, address factual issues not present in this case including, but not limited to, the following:  (a) the meaning of the title "Managing Director" within the investment banking industry generally, Report at 4-5; (b) the compensation of Managing Directors in Investment Banking Firms generally, Report at 5-6; and (c) a comparison of the agreement between Payne and Taylor Companies to other compensation agreements for Managing Directors within the investment banking industry, Report at 6.  Payne has admitted that the role of managing director at Taylor Companies is not defined by the role of a managing director in the industry generally.  *See* Deposition of Robert Payne (January 23, 2004) at p. 10:16-23 (copy attached at Exhibit 1).

9.      The agreement between Payne and Taylor Companies does not assume or incorporate from the investment banking industry as a whole any definition of the managing director role; or any industry custom and practice relating to compensation of managing directors.

3

10.    The purported Report also includes opinions as to what the contract at issue in this case means; the nature and extent of the parties' obligations under the contract; and the conclusions the jury should reach concerning Taylor Companies' liability on each of Payne's claims.  Report at 6-12.

11.    Douglas J. Varga, one of Taylor Companies' attorneys, has conferred with Kevin W. Gillen, one of Payne's attorneys, about Payne's failure to disclose Mr. Epstein and to provide his report in a timely manner under the Court's order.  While the parties engaged in a good faith effort to resolve defendants' objection to Mr. Epstein's testimony at trial, the dispute was not resolved.  Varga Aff. at ¶¶ 12-13.

## B.    ARGUMENT

Federal Rule of Civil Procedure 26(a)(2)(C) expressly requires parties to disclose expert witnesses "at the times and in the sequence that the court orders."  In this case, the parties agreed to propose June 21, 2005 as the date on or before which Payne was required to disclose his expert witnesses, and the Court so ordered.  Payne has utterly failed to comply with the Court's unequivocal deadline for disclosure of expert witnesses, but nevertheless now seeks to introduce the testimony of a purported expert witness (David Epstein) at trial.

Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.

4

Courts in this District consistently have granted motions to preclude the introduction of expert testimony that has not been disclosed within deadlines set by court order. In Appelera Corp. v. MJ Research, Inc., 220 F.R.D. 13, 19 (D. Conn. 2004), for example, Judge Arterton precluded the testimony of witnesses who would offer expert testimony, but who had not been disclosed within the time limits established by the court's prior scheduling orders. *See also* King-Hardy v. Bloomfield Board of Educ., Case No. Civ. 3:01CV979(PCD), 2002 WL 32506294, *5 (D. Conn. Dec. 8, 2002) (copy attached hereto at Exhibit 2) (plaintiff's treating physician expressly precluded from offering expert testimony in light of plaintiff's failure to disclose physician as expert witness).

The irrelevance of the opinions expressed by plaintiffs' purported expert constitute another basis on which Mr. Epstein's testimony should be precluded. Fed.R.Evid. 702 governs the admissibility of expert witness testimony, and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This is a simple breach of contract case. The issues in dispute include the services Payne was expected to perform, and in fact did perform, while employed by Taylor Companies; whether and to what extent he met those expectations with respect to each of the three deals at issue in this case; and whether Payne was properly compensated for his work under the terms of the parties' written agreement. The

5

written agreement itself will be offered as an exhibit, and the parties will offer testimony

as to the meaning of its terms and as to their performance. Payne has admitted that

Taylor Companies is not like other investment banks, and that the role of managing

director there would not be the same as the role of managing director at another

investment bank in the industry. Deposition of Robert Payne (June 23, 2004) at p.

10:16-23. There is no basis, therefore, to admit plaintiffs' purported expert testimony

about a generalized description of what a managing director does or how one should be

compensated. See Rieger v. Orlor, Inc., 427 F.Supp.2d 99, 103 (D. Conn. 2006) (a

"district court should not admit testimony that is directed solely to lay matters which a

jury is capable of understanding and deciding without the expert's help."); see also

Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 509 n.11 (2d Cir. 1977) (noting that

"expert testimony concerning the practices of a particular trade or business is not

admissible if, as a matter of substantive law, only the jury's common understanding and

not the customary practices or usages are relevant.") (internal citation omitted).

Finally, Mr. Epstein's testimony should be precluded because it purports to

answer the very questions the jury is being called upon to decide. The law is well

established that, while an expert may properly testify in some circumstances about an

ultimate issue of fact in a case, he may usurp neither the judge's authority by instructing

the jury as to the law to be applied, nor the role of the jury in applying the law to the

facts. Rieger, 427 F.Supp.2d at 103, (the "district court must 'carefully circumscribe [the

use of expert testimony] to assure that the expert does not usurp either the role of the

trial judge . . . or the role of the jury' . . . Thus, 'although an expert may opine on an

issue of fact within the jury's province, he may not give testimony stating ultimate legal

6

conclusions based on those facts") *quoting* United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991).

Payne intends to use Mr. Epstein's report not only to provide "expert" testimony as to the meaning of the contractual term "managing director" as used in the parties' agreement, but also as to what the parties were required to do under the contract. He also is expected to testify that Payne should receive all of the compensation payments to which he claims entitlement in this lawsuit. Clearly this testimony usurps the role of the jury. In Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977), the trial court admitted the testimony of a lawyer as an expert witness for the plaintiffs in a case arising out of a purchase of plaintiff's assets by defendant. In addition to giving "his opinion as to the legal obligations of the parties under the [stock purchase] contract," the expert "also repeatedly gave his conclusions as to the legal significance of various facts adduced at trial," and his opinion as to the correct resolution of legal issues such as whether the defendant's nonperformance in registering the plaintiffs' stock was excused. Id. at 509-510. All of this testimony was held to be improper. As to the witness's legal conclusions, the Court of Appeals explained, "such testimony 'amounts to no more than an expression of the (witness') general belief as to how the case should be decided.' The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case." Id. at 511 (quoting McCormick on Evidence § 12 at 26-27).

7

In this case, as in <u>Marx</u>, Payne seeks to offer expert testimony as to the final issue in the case: whether Taylor Companies is liable to him under the parties' agreement. As in <u>Marx</u>, such testimony would give the jury the impression that Mr. Epstein, rather than the jury itself, will decide the ultimate issue as to the first four claims in the case. The proposed testimony, therefore, is improper.

8

## C. CONCLUSION

Taylor Companies respectfully submits that Payne's attempt to introduce undisclosed expert testimony should not succeed. Payne's disregard for this Court's scheduling order, including his delay of more than one year in disclosing his expert, and his presentation of the report only *after* judgment had been entered against him and in favor of the defendants, provide ample basis to preclude the testimony. In addition to these delays, however, the opinions Payne seeks to introduce are not relevant to the issues in disputed in this case, and they purport to instruct the jury as to how to apply the law to the facts. For all of these reasons, defendants respectfully request that this Court enter an Order pursuant to Fed.R.Civ.P. 37(c)(1) precluding the trial testimony of David B. Epstein.

DEFENDANTS

TAYLOR VISION RESOURCES,
TAYLOR STRATEGIC ACQUISITIONS,
TAYLOR STRATEGIC DIVESTITURES,
and TAYLOR FINANCIAL SERVICES LLC

By: _____
    Douglas J. Varga (ct 18885)
    Sarah W. Poston (ct 19702)

    Zeldes, Needle & Cooper, P.C.
    1000 Lafayette Boulevard
    P. O. Box 1740
    Bridgeport, CT 06601-1740
    Telephone: 203-333-9441
    Facsimile: 203-333-1489
    E-mail: dvarga@znclaw.com
    E-mail: sposton@znclaw.com

Their Attorneys

9

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via United States

Mail, postage prepaid, on this date, to:

> Michael P. Berman, Esq.
> Kevin W. Gillen, Esq.
> Berman and Sable LLC
> One Financial Plaza
> Hartford, CT 06103
>
> Jacob A. Stein, Esq.
> Stein, Mitchell & Mezines
> 1100 Connecticut Avenue, N.W. 11th Floor
> Washington, DC 20036

Dated at Bridgeport, Connecticut this 10th day of March, 2008

Douglas J. Varga

10

# EXHIBIT 1

9

1  decided to leave?
2      A    Yes.
3      Q    How many transactions?
4      A    I don't remember.
5      Q    What arrangements were made for other people to
6  take over those transactions?
7      A    I don't know.
8      Q    Did you ever check back to see whether your
9  leaving caused any problems for WP in ongoing matters?
10     A    No.
11     Q    Did you leave WP on good terms?
12     A    Very.
13     Q    If we wanted to speak with someone at WP
14  concerning your relationship there, who would that be?
15     A    I think it would be, he is no longer there by the
16  way, but it would have been one of the managing directors
17  with whom I worked by the name of Bruno Nolop.
18     Q    I have used the word managing director. Is that
19  a term of art, so to speak, in the business that you are
20  in? That is, does it have a meaning peculiar to the people
21  in the business?
22     A    Very much so.
23     Q    Would you define what it is?
24     A    Yes. A managing director certainly has a certain
25  status within the investment banking industry. That status

10

1  is one of implied independence to pursue transactions
2  anyway they wish, to organize teams around said
3  transactions and to execute.
4      Q    When you were working with WP, were you the only
5  managing director?
6      A    No.
7      Q    How many did they have?
8      A    I don't know.
9      Q    Could you estimate how many they had, when you
10  left there?
11     A    No.
12     Q    They have more than one?
13     A    Of course.
14     Q    More than ten?
15     A    Yes.
16     Q    When you decided to go with Taylor, were you
17  going there to be a managing director and an equivalent
18  role as you had at WP?
19         MR. DONAHUE: Object to the question, as to
20  whether -- what you mean by equivalent role.
21     A    Jake, I don't understand the question because the
22  firms are so dissimilar it's impossible to characterize
23  roles as being equivalent or not.
24     Q    The letter of engagement that you have with
25  Taylor Companies had the word managing director in it?

11

1      A    Yes.
2      Q    How would you define it for purposes of working
3  with Taylor?
4      A    It is very clear. My, the conditions, of my
5  hiring was that I was going to be -- I was replacing
6  somebody as a managing director, that I was going to be
7  the sole managing director within Taylor responsible for
8  divestitures because they had none others at that point.
9  If my syntax correct. My role was to identify divestiture
10  opportunities and manage transactions.
11         MR. STEIN: Would you mark this as, the
12  November 20, 1999 letter which says, Dear Bob,
13  would you mark this as number 2.
14         (Whereupon a letter, 11-20-99, was marked as
15  Defendants' Deposition Exhibit 2 for
16  Identification.)
17     Q    Looking at the first line, do you see the words
18  sole managing director in the first paragraph?
19     A    No.
20     Q    Is it your position that that was an agreement
21  made orally -- that you were the sole managing director?
22     A    Yes.
23     Q    Is there any reason why you didn't put it in this
24  agreement?
25     A    No. Yes, because I trusted Mr. Taylor.

12

1      Q    Did you want an agreement in writing?
2      A    This was my agreement in writing.
3      Q    Did you read it before you accepted it?
4      A    Of course.
5      Q    And you saw that the word sole was not there?
6      A    Agreed.
7      Q    Under your agreement, I believe you said one of
8  the things that attracted you was you would work out of
9  your home?
10     A    Yes.
11     Q    What did you understand you were going to do with
12  Taylor when you -- when you commenced there? You were
13  going to get a yearly salary of how much?
14     A    It was not actually listed as a salary. It was
15  listed as, you see on Exhibit 2, a draw against commissions
16  of one hundred twenty-five thousand.
17     Q    What did you expect to do once you began getting
18  that draw against commissions? What were you going to do
19  to, if I may use the expression, earn that draw?
20     A    Firstly, I cannot live on one hundred twenty-five
21  thousand dollars a year and, so, I would not have joined
22  Taylor, if this is my expectation of salary.  Hence --
23     Q    Why are you so definite about that, that you
24  couldn't live on one hundred twenty thousand dollars a
25  year?

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

**H**
King-Hardy v. Bloomfield Bd. of Educ.
D.Conn.,2002.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Carrie KING-HARDY, Plaintiff,
v.
BLOOMFIELD BOARD OF EDUCATION, et al.,
Defendants.
No. Civ.3:01CV979 (PCD).

Dec. 8, 2002.

Kimberly A. Graham, Paul Mpande Ngobeni, Hartford, CT, for Plaintiff.
Brett Michael Szczesny, Stephen P. Fogerty, Halloran & Sage, Westport, CT, James M. Sconzo, Halloran & Sage, Hartford, CT, for Defendants.

*RULINGS ON MOTION TO WITHDRAW ADMISSIONS, MOTION TO PRECLUDE DOCUMENTARY EVIDENCE AND EXPERT WITNESSES, AND MOTION TO VACATE TRIAL PREPARATION ORDER*

DORSEY, J.

**\*1** Plaintiff moves pursuant to FED. R. CIV. P. 36(b) to withdraw her admissions. Defendants move to preclude documentary evidence pursuant this Court's discovery order of October 12, 2001.FN1For the reasons set forth herein, plaintiff's motion to withdraw admissions is denied, defendants' motion to preclude documentary evidence and expert witnesses is granted, and defendants' motion to vacate the Trial Preparation Order is denied.

> FN1. Defendants provide as alternative bases for this motion FED. R. CIV. P. 26, 34 and 37 and D. CONN. L. CIV. R. 9. D. CONN. L. CIV. R. 9 provides that "[n]o motion pursuant to Rules 26 through 37, Fed.R.Civ.P., shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery

issues in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution."As defendants did not confer with plaintiff prior to filing their motion to preclude, they may not resort to these rules.

**I. PLAINTIFF'S MOTION TO WITHDRAW ADMISSIONS**

Plaintiff argues that she is entitled to withdraw admissions because she could not respond properly without conducting discovery and requiring her to do so would force her to concede incorrect facts. Defendants respond that plaintiff's failure to respond to or object to the requests within thirty days constitutes admission pursuant to FED. R. CIV. P. 36(b).

Plaintiff argues the following in support of her motion. On August 1, 2001, she received a request for admissions from defendants before discovery had commenced. Plaintiff's personnel file, which was required to fashion a proper response to the requests, was requested on September 4, 2001, and not received until October 16, 2001.FN2Plaintiff also had not received the requested minutes of a special board meeting at which she was terminated as of October 16, 2001. She sought an extension of time "some time after August 1, 2001," but opposing counsel could not be reached. Family illnesses in the families of both plaintiff's counsel and co-counsel further added to the delay.

> FN2. The date of the request itself would be untimely, notwithstanding any subsequent delays in processing the request.

Pursuant to FED. R. CIV. P. 36(a), "[t]he matter [within the request] is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

tion addressed to the matter."FED. R. CIV. P. 36(b) permits the withdrawal of an admission when (1) "the presentation of the merits of the action will be subserved thereby" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."

Plaintiff's justifications for the failure to respond to defendants' requests are inadequate. There is no question that plaintiff failed to respond to defendants' requests for admission within thirty days as required by FED. R. CIV. P. 36(a). Plaintiff's argument that "[i]n order to respond to some of the requests, it was necessary for [her] to conduct discovery" is addressed by FED. R. CIV. P. 36(a), which allows a party to respond with "lack of information or knowledge" when such response is appropriate. The circumstances plaintiff provides as justifying the delay are similarly addressed by FED. R. CIV. P. 36(a), which affords extensions of the thirty-day period "as the court may allow or as the parties may agree to in writing."Plaintiff's single unsuccessful attempt to contact defendants and failure to move for an extension cannot be interpreted as a diligent effort conforming to the requirements of FED. R. CIV. P. 36.

*2 Notwithstanding these deficiencies, plaintiff's motion fails utterly to convey what matters are deemed admitted by her failure to respond, instead placing the burden on defendants to prove that they would not be prejudiced were the motion granted. Although a party objecting to the withdrawal of admissions may be required to establish prejudice, see Westmoreland v. Triumph Motorcycle Corp., 71 F.R.D. 192, 193 (D.Conn.1976), the burden in the first instance is not on the party objecting to the withdrawal. FED. R. CIV. P. 36(b), providing that "the court may permit withdrawal or amendment," makes allowances for, rather than entitles, a party to withdraw an admission. Assuming, arguendo, that the moving party establishes that merits will be served and that the opposing party will not be prejudiced, there is no requirement that

the withdrawal be granted. See Carney v. IRS (In re Carney), 258 F.3d 415, 419 (5th Cir.2001) ("Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."); United States v. Kasuboski, 834 F.2d 1345, 1350 n. 7 (7th Cir.1987). Such a request to withdraw admissions will be granted "[u]nder compelling circumstances." Moosman v. Joseph Blitz, Inc., 358 F.2d 686, 688 (2d Cir.1966). In light of plaintiff's failure to seek extensions to conform to statutory time periods, failure to articulate precisely what admissions have been made, and failure to articulate how the merits will not be subserved thereby, there is no basis on which to grant her motion.[FN3]The motion is denied.

> FN3. Defendants claim they have established a litigation strategy based on the admissions and would be severely prejudiced in time and expense if required to change directions at this point. No opinion is made as to whether this claimed prejudice is sufficient under FED. R. CIV. P. 36(b).

## II. RULING ON DEFENDANTS' MOTION TO PRECLUDE

Defendants argue that plaintiff's failure to comply with a discovery order [FN4] establishing deadlines for responses to requests for production and disclosure of her expert witness requires that unproduced documents and expert witnesses be precluded from introduction at trial. Plaintiff responds that she has satisfied the requests for production of documents to the extent feasible and that she does not intend to call an expert witness.

> FN4. The parties mischaracterize the order as an order compelling discovery. The order was issued to impose requirements on discovery as a result of issues identified at a pretrial conference, not in response to a motion to compel discovery.

The relevant background for this motion is as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

follows. On October 12, 2001, a discovery order is-
sued setting forth specific deadlines. All depos-
itions were to be completed by October 16, 2001.
Plaintiff was ordered to respond to all outstanding
interrogatories and requests for production by Octo-
ber 30, 2001, "to include disclosure of expert wit-
nesses, and the production of all medical records
relating to the plaintiff's physical condition
(excluding gynecological records) for the past ten
years, and records of any treatment for psycho-
gical or psychiatric conditions which plaintiff in-
tends to relate to her claims in this case."On Octo-
ber 30, 2001, plaintiff provided documents in re-
sponse to defendants' outstanding discovery re-
quests. The responses to twenty-six requests for
production included fifteen objections for the stated
reason "[d]efendants are in possession of any such
documents."Plaintiff also responded that the fol-
lowing requests were vague, ambiguous or called
for speculation:

*3 "Produce any and all documents that relate
or refer to the plaintiff's medical condition as hav-
ing any adverse impact on her ability to perform her
job as a school psychologist."

"Produce any and all documents the plaintiff
believes she would have introduced at the 10-151
hearing in opposition to the administration's case
that were excluded at the hearing panel."

"Produce any and documents that refer to when
plaintiff first learned that her physical condition
was having an adverse impact on her job perform-
ance."

"Produce any and documents that relate or refer
to when the plaintiff first became impaired in her
ability to perform the essential functions of her job."

"Produce any and all documents that relate or
refer to any stresses in the plaintiff's life besides her
health, including but not limited to the health and
welfare of her family members and/or any financial
difficulties the plaintiff was under from January 1,
1997 to date."

"Produce any and all documents that relate or
refer to plaintiff's claim that her alleged disability
had an effect on and/or explains the deterioration in

her job performance."

"Produce a copy of any diary or other docu-
ment maintained by plaintiff covering the period
from January 1, 1997 or when she was first advised
that she had multiple sclerosis, which ever [sic] is
earlier, to date."

Plaintiff responded that "documents will be
forwarded under separate cover" to one request. In
total, of twenty-six requests only three resulted in
the production of documents.

Sanctions for violation of a pretrial order are
made "upon motion or the judge's own initiative"
pursuant to FED. R. CIV. P. 16(f). The rule
provides that "[i]f a party or party's attorney fails to
obey a ... pretrial order, the judge ... may make such
orders with regard thereto as are just."*Id.*FED. R.
CIV. P. 16(f) incorporates the sanctions available
under FED. R. CIV. P. 37. *Hernandez v. Conriv Re-
alty Assoc.,* 116 F.3d 35, 40 (2d Cir.1997). Thus, a
party failing to produce documents which are the
subject of a discovery order may be precluded from
presenting the same at trial. *Smith v. Rowe,* 761
F.2d 360, 366 (7th Cir.1985); *Rabb v. Amatex
Corp.,* 769 F.2d 996 (4th Cir.1985). Although pre-
clusion is "strong medicine," it is necessary under
the appropriate circumstances to ensure compliance
with the rules of discovery. *Daval Steel Prods., v.
M/V Fakredine,* 951 F.2d 1357, 1367 (2d
Cir.1991)."Modern instruments of discovery serve
a useful purpose ... together with pretrial proced-
ures [to] make a trial less a game of blind man's
buff and more a fair contest with the basic issues
and facts disclosed to the fullest practicable ex-
tent."*United States v. Procter & Gamble,* 356 U.S.
677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958).

The relevant question is whether plaintiff has
violated the pre-trial order. Reviewing the requests
for production and responses by plaintiff thereto,
the inescapable conclusion is that plaintiff has viol-
ated the order. Much of plaintiff's failure to produce
documents exhibits a misapprehension of the broad
scope of permissible discovery. "Parties may obtain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."FED. R. CIV. P. 26(b)(1). The only proscriptions imposed on discovery apply to requests that are irrelevant, "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit."FED. R. CIV. P. 26(b)(2).

*4 The majority of plaintiff's objections were on the ground that "[d]efendants are in possession of any such documents."This is not an acceptable response to the requests for production. FED. R. CIV. P. 34(a) requires production of any documents "which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.""[A]n assertion that [the party of whom the request is made] is in possession of the information ... sought ... is not a sufficient ground for denying [the request]."*Civil Aeronautics Bd. of Civil Aeronautics Auth. v. Can. Colonial Airways, Inc.,* 41 F.Supp. 1006, 1008 (S.D.N.Y.1940). Failure to produce documents or provide an acceptable response or objection is a violation of the pretrial order and sanction is appropriate. Plaintiff is therefore precluded from introducing documents that could be considered responsive to these requests at trial.

Plaintiff's response to one request for production that "documents will be forwarded" is similarly unacceptable. The discovery order required that plaintiff respond to all requests by October 30, 2001. Plaintiff's response is dated October 30, 2001, but the response indicates the documents will be produced at a later date. This directly violates the pre-trial order. She will be precluded from introducing the documents at trial if not yet produced on the date of this order.

Plaintiff's objection that requests for production

are vague is similarly deficient. *See Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 592-93 (W.D.N.Y.1996)."Such pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."*Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 295 (W.D.N.Y.1996). The response must clearly articulate the specifics of the objection and how the objection relates to documents requested. *Id.* The burden is on the objecting party to justify with particularity its refusal to comply with the request. *Id.*FED. R. CIV. P. 34(b) requires only that a request be made with "reasonable particularity." The requests claimed to be vague or ambiguous or speculative on their face are reasonably particular.

Plaintiff argues that defendants, in requesting "any and all documents the plaintiff believes she would have introduced at the 10-151 hearing," ambiguously used the term "believes" thus improperly calling for speculation as to what she would have introduced had she been permitted. This ambiguity cannot seriously be propounded, as plaintiff cannot "speculate" as to something she herself was denied the right to present at the hearing. The hearing date has passed, and presumably certain documents were admitted and potentially some were not. Plaintiff was obliged to produce those documents if such documents exist.

*5 The remaining objections are of a similar vein. A request for production is to be afforded a reasonable construction, *see Adolph Coors Co. v. Am. Ins. Co.,* 164 F.R.D. 507, 518 (D.Colo.1993), rather than straining to find ambiguity when there is none. The remaining requests are not ambiguous on their face, and plaintiff's arguments to the contrary are without merit. Plaintiff is therefore precluded from presenting evidence at trial not produced in response to the documents requests claimed to be vague.

Defendants also argue that expert testimony should be precluded for plaintiff's failure to identify an expert witness. Plaintiff responds that she "has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

no intention of calling an expert witness and that is why such a witness was not disclosed. Plaintiff does intend to call the plaintiff's physician as she is a fact witness. Plaintiff's treating physician prepared reports and correspondence addressed to the defendant."

Parties are required to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."FED. R. CIV. P. 26(a)(2)(A). The substance of the disclosure must meet the requirements of FED. CIV. P. 26(a)(2)(B),(C). A party who fails to disclose its **expert** witness in accordance with FED. R. CIV. P. 26(a) will not be permitted to use that witness at trial. FED. R. CIV. P. 37(c)(1). Plaintiff will not be permitted to call an **expert** witness at trial, having failed to disclose the same.[FN5]The motion to preclude documents and **expert** witnesses is granted.FN6

> FN5. Provided the substance of her testimony is confined to matters within her personal knowledge, plaintiff's treating physician most likely would not be considered an expert witness triggering the FED. R. CIV. P. 26 disclosure requirements. *See Patel v. Gayes,* 984 F.2d 214, 217 (7th Cir.1993). It would be another matter if the physician testifies to matters not within her personal knowledge or to knowledge acquired in anticipation of litigation. *Id.*

> FN6. Defendants also move for a monetary sanctions against plaintiff. It is not apparent that plaintiff's actions were flagrant or wilful, evincing more than a misunderstanding of the rules of discovery. As such, no monetary sanctions will be awarded.

III. CONCLUSION

Plaintiff's motion to withdraw admissions (Doc. 46) is denied, defendants' motion to preclude documentary evidence and expert witnesses

(Docs.49, 52) is granted, and defendants' motion to vacate the Trial Preparation Order (Doc. 58) is denied. The deadlines for the Trial Preparation Order are modified as follows: Section A: April 1, 2002; Section B: April 12, 2002; April 26, 2002. If a motion for summary judgement is to be filed, compliant with the Supplemental Order such will be served on the opposing party by February 11, 2002, the opposition brief shall be served by March 4, 2002, and the motion, opposition and any reply thereto filed in court by March 11, 2002.

SO ORDERED.

D.Conn.,2002.
King-Hardy v. Bloomfield Bd. of Educ.
Not Reported in F.Supp.2d, 2002 WL 32506294 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : | Civil Action |
|  | : |  |
| Plaintiffs, | : | No. 3:02 CV 2234 (AWT) |
| v. | : |  |
|  | : |  |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, | : | |
|  | : |  |
| Defendants. | : | March 10, 2008 |

## MOTION TO PRECLUDE FACT WITNESS TESTIMONY

Defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor Strategic Divestitures, and Taylor Financial Services LLC (collectively, "Taylor Companies") submit this motion pursuant to Motion pursuant to Fed. R. Civ. P. 37(c)(1), specifically, to preclude plaintiffs Robert Payne and Payne Investments LLC (collectively, "Payne") from calling as witnesses at trial the two fact witnesses identified in the Joint Pretrial Memorandum – Thomas Bohle and Eugene Toombs – who were not disclosed to defendants pursuant to Fed. R. Civ. P. 26(a)(1). In support of its motion, Taylor Companies states as follows:

1.  Payne filed his Complaint in this matter on December 16, 2002.

2.  On March 30, 2004, Payne submitted to defendants the initial disclosures required by Fed.R.Civ.P. 26(a)(1). Affidavit of Douglas J. Varga dated March 10, 2008 ("Varga Aff."), filed contemporaneously herewith, at ¶ 3 and Ex. A.

3.    Payne's initial disclosures included a list of 11 individuals who, according to Payne, likely to possess discoverable information concerning his claims and defenses. Varga Aff. at Ex. A.

4.    Payne's initial disclosures included neither Eugene Toombs nor Thomas Bohle as individuals likely to possess discoverable information concerning his claims and defenses. Varga Aff. at ¶ 4 and Ex. A.

5.    At no time did Payne amend his Rule 26(a)(1) disclosures to add Mr. Toombs or Mr. Bohle to their list of persons believed to have personal knowledge or information concerning the parties' claims and defenses.    Varga Aff. at ¶ 4.

6.    In reliance on Payne's initial disclosures, Taylor Companies did not conduct any pretrial discovery concerning any knowledge or information possessed by Messrs. Toombs and Bohle concerning the claims and defenses at issue in this case. Had plaintiffs identified those individuals in their initial disclosures, Taylor Companies would have conducted such pretrial discovery. Varga Aff. at ¶ 5.

7.    Neither Mr. Bohle nor Mr. Toombs has ever been deposed in this matter. Varga Aff. at ¶ 5.

8.    Taylor Companies first became aware of Payne's position that Messrs. Toombs and Bohle likely possess discoverable information concerning Payne's claims and defenses in this case upon Payne's submission (on February 20, 2008) of the initial draft of his portion of the parties' Joint Trial Memorandum, in which Payne disclosed both individuals as expected trial witnesses. Varga Aff. at ¶ 7.

9.      Despite their prior non-disclosure, Payne has retained both Mr. Toombs and Mr. Bohle in his list of witnesses in his portion of the parties' Joint Trial Memorandum.  Varga Aff. at ¶ 6.

10.      Douglas J. Varga, one of Taylor Companies' attorneys, conferred with Kevin W. Gillen, one of Payne's attorneys, in a good faith to attempt to resolve the parties' dispute about the testimony of these two witnesses, plaintiffs refused to remove Mr. Toombs and Mr. Bohle from their witness list.  Affidavit of Douglas J. Varga at ¶¶ 12-13.

WHEREFORE, Taylor Companies respectfully requests that this Court enter an

Order precluding plaintiffs from calling Eugene Toombs and Thomas Bohle as

witnesses at trial pursuant to Fed.R.Civ.P. 26(a)(1) and 37(c)(1).

DEFENDANTS
TAYLOR VISION RESOURCES,
TAYLOR STRATEGIC ACQUISITIONS,
TAYLOR STRATEGIC DIVESTITURES,
and TAYLOR FINANCIAL SERVICES LLC

By: _____
     Douglas J. Varga (ct 18885)
     Sarah W. Poston (ct 19702)

     Zeldes, Needle & Cooper, P.C.
     1000 Lafayette Boulevard
     P. O. Box 1740
     Bridgeport, CT  06601-1740
     Telephone:  203-333-9441
     Facsimile:  203-333-1489
     E-mail:  dvarga@znclaw.com
     E-mail:  sposton@znclaw.com

Their Attorneys

4

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via United States

Mail, postage prepaid, on this date, to:

> Michael P. Berman, Esq.
> Kevin W. Gillen, Esq.
> Berman and Sable LLC
> One Financial Plaza
> Hartford, CT 06103
>
> Jacob A. Stein, Esq.
> Stein, Mitchell & Mezines
> 1100 Connecticut Avenue, N.W. 11th Floor
> Washington, DC 20036

Dated at Bridgeport, Connecticut this 10th day of March, 2008

Douglas J. Varga

5

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : | Civil Action |
| | : | |
| Plaintiffs, | : | No. 3:02 CV 2234 (AWT) |
| | : | |
| v. | : | |
| | : | |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, | : : : : : : : | |
| | : | |
| Defendants. | : | March 10, 2008 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO PRECLUDE FACT WITNESS TESTIMONY

Defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor

Strategic Divestitures, and Taylor Financial Services LLC (collectively, "Taylor

Companies") submit this memorandum in support of their Motion to Preclude Fact

Witness Testimony under Fed. R. Civ. P. 37(c)(1), specifically, to preclude plaintiffs

Robert Payne and Payne Investments LLC (collectively, "Payne") from calling as

witnesses at trial the two fact witnesses identified in the Joint Trial Memorandum –

Thomas Bohle and Eugene Toombs – who were not disclosed to defendants pursuant

to Fed. R. Civ. P. 26(a)(1).

## A. PROCEDURAL BACKGROUND

1.    Payne filed his Complaint in this matter on December 16, 2002.

2.    On March 30, 2004, Payne submitted to defendants the initial disclosures required by Fed.R.Civ.P. 26(a)(1). Affidavit of Douglas J. Varga dated March 10, 2008 ("Varga Aff."), filed contemporaneously herewith, at ¶ 3 and Ex. A.

3.    Payne's initial disclosures included a list of 11 individuals who, according to Payne, likely to possess discoverable information concerning his claims and defenses. Varga Aff. at Ex. A.

4.    Payne's initial disclosures included neither Eugene Toombs nor Thomas Bohle as individuals likely to possess discoverable information concerning his claims and defenses. Varga Aff. at ¶ 4 and Ex. A.

5.    At no time did Payne amend his Rule 26(a)(1) disclosures to add Mr. Toombs or Mr. Bohle to their list of persons believed to have personal knowledge or information concerning the parties' claims and defenses. Varga Aff. at ¶ 4.

6.    In reliance on Payne's initial disclosures, Taylor Companies did not conduct any pretrial discovery concerning any knowledge or information possessed by Messrs. Toombs and Bohle concerning the claims and defenses at issue in this case. Had plaintiffs identified those individuals in their initial disclosures, Taylor Companies would have conducted such pretrial discovery. Varga Aff. at ¶ 5.

7.    Neither Mr. Bohle nor Mr. Toombs has ever been deposed in this matter. Varga Aff. at ¶ 5.

2

8.     Taylor Companies first became aware of Payne's position that Messrs. Toombs and Bohle likely possess discoverable information concerning Payne's claims and defenses in this case upon Payne's submission (on February 20, 2008) of the initial draft of his portion of the parties' Joint Trial Memorandum, in which Payne disclosed both individuals as expected trial witnesses. Varga Aff. at ¶ 7.

9.     Despite their prior non-disclosure, Payne included both Mr. Toombs and Mr. Bohle in his list of witnesses in his portion of the parties' Joint Trial Memorandum. Varga Aff. at ¶ 6.

10.     Douglas J. Varga, one of Taylor Companies' attorneys, conferred with Kevin W. Gillen, one of Payne's attorneys, in a good faith to attempt to resolve the parties' dispute about the testimony of these two witnesses, plaintiffs refused to remove Mr. Toombs and Mr. Bohle from their witness list, Affidavit of Douglas J. Varga at ¶¶ 12-13, and this motion was therefore necessary.

### B.  ARGUMENT

Payne is attempting to conduct a trial by ambush by offering the testimony of these two people never identified as witnesses prior to Payne's submission of his portion of the parties' Joint Trial Memorandum. In failing to provide Taylor Companies with the names of these witnesses, Payne has ignored and flouted his Rule 26(a) initial discovery obligations. Indeed, Payne's eleventh-hour disclosure -- which occurred years after the close of discovery -- has prejudiced Taylor Companies by hindering its ability to defend against Payne's claims in this action. Accordingly, Taylor Companies moves the Court to enter an order precluding Payne from calling these undisclosed witnesses.

3

1.    **Initial Disclosure Obligations**

Federal Rule 26(a)(1) provides for mandatory disclosures at the onset of federal

litigation and states, in relevant part, as follows:

> A party must, without awaiting a discovery request, provide to other
> parties:
>
> (A) the name, and if known the address and telephone number of
> each individual likely to have discoverable information that the
> disclosing party may use to support its claims or defenses . . .

Fed. R. Civ. P. 26(a)(1). Rule 26(e)(1), furthermore, creates an affirmative duty for

parties "to supplement . . . its disclosures under subdivision (a) if the party learns that in

some material respect the information disclosed is incomplete or incorrect and if the

additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing."   Fed. R. Civ. P. 26(e)(1).

Sanctions for a party's failure to honor its obligations under Rule 26 are

addressed in Federal Rule 37(c)(1), which states, in relevant part, as follows:

> (1) Failure to Disclose or Supplement. If a party fails to provide information
> or identify a witness as required by Rule 26(a) or (e), the party is not
> allowed to use that information or witness to supply evidence on a motion,
> at a hearing, or at a trial, unless the failure was substantially justified or is
> harmless.  In addition to or instead of this sanction, the court, on motion
> and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's
> fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and

4

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). [1]

Fed. R. Civ. P. 37(c)(1).  The Advisory Committee Notes to this provision states:

Subdivision (c). The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A).

**Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56.**  As disclosure of evidence offered solely for impeachment purposes is not required under those rules, this preclusion sanction likewise does not apply to that evidence.

Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se

---

[1]  Rule 37(b)(2)(A)(i)-(vi) states:

(2) Sanctions in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; ...

5

litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party. However, the rule provides the court with a wide range of other sanctions -- such as declaring specified facts to be established, preventing contradictory evidence, or, like spoliation of evidence, allowing the jury to be informed of the fact of nondisclosure--that, though not self-executing, can be imposed when found to be warranted after a hearing. The failure to identify a witness or document in a disclosure statement would be admissible under the Federal Rules of Evidence under the same principles that allow a party's interrogatory answers to be offered against it.

Fed.R.Civ.P. 37 (emphasis added).

## 2.    Sanctions for Failure to Comply with Initial Disclosure Obligations

The obvious purpose of Rule 26(a)(1) "is to prevent parties from 'sandbagging' an opposing party with new evidence." Rhone v. U.S., 2007 WL 3340836 (S.D.N.Y. Nov. 9, 2007) (copy attached hereto at Tab 1).   The appropriate sanction for violation of initial disclosure obligation is clear:  "Failure to satisfy these obligations precludes a party from using the withheld information as evidence at trial." Alfano v. Nat'l Geographic Channel, 2007 WL 2982757 (E.D.N.Y. Sept. 20, 2007) (copy attached hereto at Tab 2) (emphasis added).

Many courts have held that the sanction under Rule 37(c)(1) is automatic. See Westefer v. Snyder, 422 F.3d 570, 584 n. 21 (7th Cir. 2005) (the sanction of exclusion under Rule 37(c)(1) is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.") (internal quotations and citations omitted); Yeti By Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001) ("[E]ven absent a showing in the record of bad faith or willfulness,

6

exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").

Sanctions under Rule 37(c)(1) are "self-executing," and require no showing of subjective bad faith by the non-complying party. Design Strategy, Inc. v. Davis 469 F.3d 284, 296 (2d Cir. 2006). While the Second Circuit has held that the preclusion of evidence and witnesses not properly disclosed under Rule 26(a)(1) is not necessarily mandatory, id. at 297-98, the sanction is entirely appropriate here. Courts specifically have precluded evidence not disclosed until, as in this case, the submission of a pretrial memorandum. See, e.g., Gilvin v. Fire, 2002 WL 32170943 at *3 (D.D.C. Aug.16, 2002) ("At no time prior to filing the Pretrial Statement did Plaintiff identify any actual damages resulting from [defendant's conduct], let alone provide a computation of such damages in accordance with Fed.R.Civ.P. 26(a)(1)(C) .... Because Plaintiff failed to provide Defendant with a computation of his damages ... and failed to provide any factual basis whatsoever for the claim, Plaintiff may not present evidence at trial of those damages.").

Despite his obligations under Rule 26(a)(1), Payne has provided Taylor Companies, at the eleventh hour, with the names of Mr. Toombs and Mr. Bohle. This conduct clearly contravenes Rule 26(a)(1)'s requirement that a party initially disclose to the opposing party -- at the beginning of the litigation -- the name of each individual likely to possess discoverable information concerning that party's claims and defenses. Indeed, until February 20, 2008, Taylor Companies had no notice whatsoever that these individuals possessed such information, much less that Payne intended to call these witnesses to support his claims. Varga Aff. at ¶ 8. Payne's failure to provide Taylor

7

Companies with this information after the close of discovery greatly impedes Taylor Companies' ability to defend against Payne's claims and prepare this matter for trial.

## C.  CONCLUSION

Payne's transparent attempt to introduce new evidence into this case at this late date, in plain violation of the requirements of Fed.R.Civ.P. 26 (a)(1), must not succeed. Payne's disregard for Rule 26(a) is without justification.  Thus, Taylor Companies respectfully requests that this Court enter an Order pursuant to Fed.R.Civ.P. 37(c)(1) precluding the trial testimony of Payne's undisclosed witnesses, Thomas Bohle and Eugene Toombs.

DEFENDANTS
TAYLOR VISION RESOURCES,
TAYLOR STRATEGIC ACQUISITIONS,
TAYLOR STRATEGIC DIVESTITURES,
and TAYLOR FINANCIAL SERVICES LLC

By: _____
Douglas J. Varga (ct 18885)
Sarah W. Poston (ct 19702)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
P. O. Box 1740
Bridgeport, CT  06601-1740
Telephone:  203-333-9441
Facsimile:  203-333-1489
E-mail:  dvarga@znclaw.com
E-mail:  sposton@znclaw.com

Their Attorneys

8

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via United States

Mail, postage prepaid, on this date, to:

> Michael P. Berman, Esq.
> Kevin W. Gillen, Esq.
> Berman and Sable LLC
> One Financial Plaza
> Hartford, CT 06103
>
> Jacob A. Stein, Esq.
> Stein, Mitchell & Mezines
> 1100 Connecticut Avenue, N.W. 11th Floor
> Washington, DC 20036

Dated at Bridgeport, Connecticut this 10th day of March, 2008.

Douglas J. Varga

9

# EXHIBIT 1

Westlaw.

Slip Copy                                                            Page 1
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

C

**Rhone** v. U.S.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Rudolph **RHONE**, Plaintiff,
v.
UNITED STATES of America, Defendant.
**No. 04 Civ. 5037(PKL).**

Nov. 9, 2007.

James Newman, Esq., Bronx, NY, for Plaintiff.
Michael J. Garcia, Esq., United States Attorney for
the Southern District of New York, Melanie R. Hal-
lums, Esq., New York, NY, for United States.

*OPINION AND ORDER*

LEISURE, District Judge.
 **\*1** Plaintiff Rudolph Rhone ("Rhone") brings
this action alleging negligence in violation of the
Federal Tort Claims Act, 28 U.S.C. §§ 1346(b),
2671-80 (the "FTCA"). Defendant United States of
America (the "Government") moves for summary
judgment pursuant to Rule 56 of the Federal Rules
of Civil Procedure. For the reasons set forth below,
defendant's motion is granted.

**BACKGROUND**

 The subject of this litigation is a car accident
that occurred on December 27, 2003 at approxi-
mately 7:40 a.m. on Executive Boulevard in Yonkers,
New York (the "accident" or "December 2003 acci-
dent"). (Pl.'s 56.1 ¶ 1; Def.'s 56.1 ¶ 4.) The accident
involved a collision between a mail delivery truck,
driven by United States Postal Service employee
Pio Franquelli ("Franquelli"), and a vehicle driven
by Rhone. (Pl.'s 56.1 ¶ 1; Def.'s 56.1 ¶ 4.) Fran-
quelli was traveling downhill on Executive
Boulevard when Franquelli's mail truck slid on the
icy road and collided with Rhone's vehicle. (PL's
56.1 ¶ 7; Def.'s 56.1 ¶ 5.)

 The parties dispute the weather and road condi-
tions leading up to and at the time of the accident.
The Government states that at the time of the acci-
dent, the weather was dry and clear with a below
freezing temperature. (Def.'s 56.1 ¶ 7.) The Gov-
ernment further contends that it did not snow the
day before or the day of the accident. (Def.'s 56.1 ¶
7-8.) Rather, the Government alleges that water had
seeped onto Executive Boulevard and frozen.
(Def.'s 56.1 ¶ 7-8.) Thus, the Government claims
that the car in front of Franquelli unexpectedly
began to slide and, in attempting to maneuver
around that car, Franquelli's vehicle also slid, turn-
ing completely around and striking Rhone's vehicle.
(Def.'s 56.1 ¶ 5.)

 Rhone contests the Government's assertions
that water seeped onto the road and froze at the
time and place of the accident. (Pl.'s 56 .1 ¶¶
11-13.) Rather, Rhone states that the icy road con-
ditions were due to ice pellets falling in the area on
December 25, as well as 5.5 inches of rain on
December 14, and 3.5 inches of rain on December
15, coupled with generally below freezing temper-
atures. (Pl.'s 56.1 ¶ 10.) Therefore, Rhone contends
that Franquelli failed to observe the obvious icy
conditions and was negligently operating his
vehicle given the conditions. (Pl.'s 56.1 ¶¶ 7, 14.)

 Rhone states that following the accident, fire
personnel had to cut the doors off of his vehicle in
order to remove him. (Pl.'s 56.1 ¶ 17.) Rhone sub-
sequently was removed by stretcher, a collar was
applied to his neck, and he was taken by ambulance
to St. John's Hospital in Yonkers, New York. (Pl.'s
56.1 ¶ 18.) At the emergency room, Rhone com-
plained of neck and back pain. (Pl.'s 56.1 ¶ 19;
Def.'s 56.1 ¶ 10.) He was given medication, includ-
ing a painkiller injection and an anti-inflammatory
prescription. (Pl.'s 56.1 ¶ 19; Def.'s 56.1 ¶ 10.)
Rhone was released the same day and told to fol-
low-up with his private doctor. (PL's 56.1 St 19;
Def.'s 56.1 ¶ 11.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

*2 Three days after the accident, Rhone sought treatment from Dr. Gregori Pasqua, a chiropractor. (Pl.'s 56.1 ¶ 20; Def.'s 56.1 ¶ 12.) Rhone visited Dr. Pasqua for chiropractic treatments two or three times a week. (Pl.'s 56.1 ¶ 21; Def.'s 56.1 ¶ 13.) He states that Dr. Pasqua directed him not to return to work for seven months. (Pl.'s 56.1 ¶¶ 23-24.)

Dr. Pasqua referred Rhone to an orthopedic surgeon, Dr. Michael Palmeri. (Pl.'s 56.1 ¶ 25; Def.'s 56.1 ¶ 14.) Dr. Palmeri evaluated Rhone for the first time on January 15, 2004. (Def.'s 56.1 ¶ 15.) He recommended that Rhone obtain radiological examinations ("MRIs") and electro-diagnostic testing ("EMG"). (Pl.'s 56.1 ¶ 26; Def.'s 56.1 ¶ 15.) Subsequently, Dr. Palmeri advised Rhone that the MRIs showed partial tears in his shoulders and that arthroscopic surgery was indicated. (Pl.'s 56.1 ¶ 27.) The Government states that Dr. Palmeri also discussed alternatives to surgery, including physical therapy and medication. (Def.'s 56.1 ¶ 22.) Dr. Palmeri performed arthroscopic surgery on Rhone's left shoulder on March 1, 2004, and on Rhone's right shoulder on June 7, 2004, at the Sound Shore Medical Center in New Rochelle, New York. (Pl.'s 56.1 ¶ 29; Def.'s 56.1 ¶¶ 20-21.) Following each surgery, Rhone attended physical therapy. (Def.'s 56.1 ¶ 23.) In addition to the partial tears in his shoulders, Rhone was informed that the neck and cervical MRIs revealed disc herniation and disc bulges. (Pl.'s 56.1 ¶ 28.)

The Government notes that several other doctors have evaluated Rhone's medical condition. Dr. Andrew N. Bazos performed an orthopedic surgical peer review to determine the medical necessity of Rhone's left shoulder surgery. (Def.'s 56.1 ¶ 29.) Dr. Kenneth Falvo performed an independent medical examination of Rhone at the request of his insurer, GEICO. (Def.'s 56.1 ¶ 31.) In addition, the Government's experts, Dr. Samuel Rapoport, a neurologist, and Dr. Harry Goldmark, an orthopedic surgeon, performed medical examinations of Rhone in February 2005 and March 2005, respectively. (Def.'s 56.1 ¶¶ 46, 50.)

Prior to the December 2003 accident, Rhone worked as a telephone dispatcher for a staffing company, owned by his son, named Comfort Care. (Pl.'s 56.1 ¶ 22; Def.'s 56.1 ¶ 40.) Rhone states that following the December 2003 accident he did not work again until July 22, 2004. (Pl.'s 5 6.1 ¶ 23; Def.'s 56.1 ¶ 41.) During that time, Rhone worked from home once a week, which involved talking on the telephone. (Def.'s 56.1 ¶ 42.) Rhone continued to attend graduate school classes twice a week from January through May 2004, except for two weeks following his left shoulder surgery. (Def .'s 56.1 ¶ 45.) Additionally, he attended classes once a week from September through December 2004. (Def.'s 56.1 ¶ 45.) In July 2004, Rhone returned to work at a different staffing company, C & H Staffing, doing work similar to that which he did at Comfort Care. (Def.'s 56.1 ¶ 43.)

*3 Rhone states that the function and motion of his right shoulder is permanently restricted. (Pl.'s 56.1 ¶ 35.) Further, Rhone notes that he considers himself to have permanently diminished work capacity and that his physical activities are limited in that he can no longer lift weights and do the types of exercises that he did prior to the December 2003 accident. (Pl.'s 56.1 ¶¶ 32, 34.) Rhone states that he continues to have pain every day in his shoulders, neck, and back. (Pl.'s 56.1 ¶¶ 31, 33.)

The Government notes, and Rhone does not contest, that Rhone was involved in a prior car accident on March 14, 2001 (the "prior accident" or "March 2001 accident"). (Def.'s 56.1 ¶ 1.) The day after that accident, Rhone was treated at Lawrence Hospital in Bronxville, New York, where he complained of dizziness and neck and shoulder pain. (Def.'s 56.1 ¶ 2.) Rhone was diagnosed with a neck sprain. (Def.'s 56.1 ¶ 2.) Additionally, x-rays taken of Rhone's spine following that accident showed "degenerative changes with space narrowing at the C5-6 and 6/7" and "degenerative changes of the cervical spine."(Def.'s 56.1 ¶ 3.)

As a result of the December 2003 accident, on June 25, 2004, Rhone and his son, Andre Rhone

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

("Andre"), filed this action asserting two claims. First, Rhone sought damages for basic economic loss and non-economic loss. Second, Andre, who owned the vehicle that Rhone was driving at the time of the accident, sought $10,000 for property damage and loss of use of his vehicle. On November 9, 2004, the Court signed a Stipulation and Order agreed to by the parties, which stated that Rhone was the only proper plaintiff in this action and Andre dismissed his claims against the Government without prejudice. Following discovery, on October 17, 2005, the Government filed its motion for summary judgment. Rhone opposed the motion on December 15, 2005. On January 20, 2006, the Government replied.

## DISCUSSION

### I. *Legal Standards*

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure allows for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the "heavy burden" of demonstrating that no genuine issue as to any material fact exists and that it is therefore entitled to judgment as a matter of law. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir.1999); *accord Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 433 (2d Cir.2005) (" 'The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment ....' ") (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.,* 391 F.3d 77, 83 (2d Cir.2004)); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (Kearse, J.) (same).

*4 "[I]t is a fundamental maxim that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried."*American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967). In so determining, a district court "must resolve all ambiguities and draw all inferences in favor of the non-moving party," such that "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."*Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002); *accord Brown v. Cara,* 420 F.3d 148, 152 (2d Cir.2005) ("We will affirm the District Court's grant of summary judgment to defendants only if, based on facts not in genuine dispute and drawing all inferences in favor of plaintiffs, defendants are entitled to judgment on the merits as a matter of law .").

Of course, " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " *Lang v. Ret. Living Publ'g Co.,* 949 F.2d 576, 580 (2d Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). "A dispute as to a material fact is 'genuine,' and hence summary judgment is not appropriate, under this standard, only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson,* 477 U.S. at 248);*accord N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel LLC,* 293 F .3d 550, 554 (2d Cir.2002) (same). "[T]he law provides no magical talisman or compass that will serve as an unerring guide to determine when a material issue of fact is presented. As is so often true in the law, this is a matter of informed and properly reasoned judgment." *American Mfrs. Mut. Ins. Co.,* 388 F.2d at 279.

### B. New York's No-Fault Law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 4
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Pursuant to 28 U.S.C. § 1346(b), the laws of New York, which is where the accident occurred, govern this case.[FN1]Rhone seeks recovery of damages for both economic and non-economic losses under New York's Comprehensive Motor Vehicle Insurance Reparations Act (the "No-Fault Law").SeeN.Y. Ins. Law § 5102 (McKinney 2000). Rhone asserts a claim for negligence causing "serious injury" pursuant to the No-Fault Law. See id. § 5102(d). To prove a negligence claim under New York law, plaintiff must show that "(1) defendant owed plaintiff a duty of care; (2) defendant breached that duty; and (3) the breach proximately caused plaintiff's injuries."Kane v. United States, 189 F.Supp.2d 40, 51 (S.D.N.Y.2002).

> FN1.Section 1346(b) provides that FTCA actions are to be decided "in accordance with the law of the place where the act or omission occurred."28 U.S.C. § 1346(b).

The No-Fault Law precludes recovery for non-economic losses [FN2] arising out of negligence in the use or operation of an automobile except where the claimant has suffered a "serious injury." [FN3]SeeN.Y. Ins. Law § 5102(a)."New York courts have strictly construed the serious injury requirement, noting the legislature's determination to 'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.' " Cruz v. Pritt, No. 99 Civ. 3029, 2000 WL 224106, at *2 (S.D.N.Y. Feb. 28, 2000) (quoting Licari v. Elliot, 57 N.Y.2d 230, 236, 441 N.E.2d 1088, 1091, 455 N.Y.S.2d 570, 573 (N.Y.1982)). Toward that end, plaintiff bears the burden of making a prima facie showing that he has suffered a serious injury. See Khouzam v. Zalesky, No. 93 Civ. 6360, 1996 WL 79882, at *4 (S.D.N.Y. Feb. 26, 1996); Gaddy v. Eyler, 79 N.Y.2d 955, 957, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991 (N.Y.1992). Further, the sufficiency of the showing is a threshold question of law appropriate for the Court to decide on summary judgment.[FN4]See Jackson v. Greyhound Lines, Inc., No. 96 Civ. 7431, 1998 WL 355423, at

*2 (S.D.N.Y. July 2, 1998); Rosas v. Hertz Corp., No. 96 Civ. 7165, 1997 WL 736723, at *2 (S.D.N.Y. Nov. 24, 1997); Khouzam, 1996 WL 79882, at *4. In order to defeat summary judgment, plaintiff must rely on more than "subjective complaints of pain" and must substantiate his claim with "objective medical evidence." Cruz, 2000 WL 224106, at *3;Eldred v. Stoddard, 217 A.D.2d 952, 630 N.Y.S.2d 171, 172 (4th Dep't 1995).

> FN2. The statute defines "non-economic loss" as "pain and suffering and similar non-monetary detriment."N.Y. Ins. Law § 5102(c).

> FN3. "Serious injury" is defined as:
> A personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.
> N.Y. Ins. Law § 5102(d).

> FN4."The moving party bears the initial burden of 'informing the district court of the basis for its motion' and identifying the matter that 'it believes demonstrate[s] the absence of a genuine issue of material fact.' " Jackson v. Greyhound Lines, Inc., No. 96 Civ. 7431, 1998 WL 355423, at *1 (S.D.N.Y. July 2, 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant meets its burden, then the burden shifts to the nonmoving party to provide "specific facts showing that there is a genuine issue for trial." Id. (citing Fed.R.Civ.P. 56(e)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

*5 Additionally, the No-Fault Law guarantees compensation for economic losses up to $50,000. Therefore, plaintiffs may only recover in tort for "basic economic loss" that exceeds $50,000. *See* N.Y. Ins. Law §§ 5102(a), 5104. "Basic economic loss" includes medical expenses, lost wages, and other reasonable and necessary expenses. *Id.* § 5102(a).

In support of its motion, the Government asserts three grounds for summary judgment. First, the Government claims that it was not negligent. Second, the Government contends that Rhone has not suffered a serious injury, as required to recover non-economic damages under the No-Fault Law. Third, the Government states that Rhone has not suffered sufficient economic damages in order to recover under the No-Fault Law. For the reasons set forth below, the Government's motion is GRANTED.

II. *Negligence*

The Government asserts that Rhone cannot prove his negligence claim. Specifically, the Government contends that there is no evidence that it breached its duty of care, and, even if it did, there is no evidence that the December 2003 accident was the proximate cause of Rhone's injuries. (Gov't Mot. at 9-13.)

A. **Emergency Doctrine**

The Government relies on the "emergency doctrine" for its assertion that it was not negligent. Rhone responds that the emergency doctrine should not apply in this case. Under New York law, "[t]he emergency doctrine applies when a party is confronted with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation, or consideration."*Cheung v. Dominican Convent of Our Lady of the Rosary,* 22 A.D.3d 450, 451, 802 N.Y.S.2d 208, 209 (2d Dep't 2005); *see also Marsch v. Catanzaro,* 40 A.D.3d 941, 942, 837 N.Y.S.2d 195, 195 (2d Dep't 2007). If confronted

with an emergency, a party is required to react as a reasonable person when faced with similar circumstances. *See Pettica v. Williams,* 223 A.D.2d 987, 988, 636 N.Y.S.2d 502, 503 (3d Dep't 1996)." '[T]he existence of an emergency and the reasonableness of a party's response to it will ordinarily present questions of fact.' " *Marc v. Kohl,* 13 Misc.3d 1206(A), No. 40092/03, 2006 WL 2589924, at *2 (N.Y.Sup.Ct.2006) (quoting *Bello v. Transit Auth. of New York City,* 12 A.D.3d 58, 60, 783 N .Y.S.2d 648, 650 (2d Dep't 2004)).

The Government asserts that the "emergency doctrine" should apply here because the icy conditions on the road were unexpected. Specifically, the Government alleges that the ice on the road was caused by water seeping onto the road and freezing, resulting in "invisible or 'black' ice." (Gov't Mot. at 10.) Further, the Government contends that it had not snowed the day before the accident, but rather, "the weather was dry and clear."(Gov't Mot. at 10.) Additionally, the Government contests Rhone's assertions that the weather was below freezing in the two weeks leading up to the accident, and further alleges that any ice pellets on December 25 melted immediately. (Gov't Reply at 2.) Thus, the Government argues that "[t]he icy condition of the road was therefore not foreseeable."(Gov't Mot. at 10.) As a result, the Government contends that when the car in front of Franquelli was sliding, Franquelli reacted to the situation as a reasonable person would under the given "emergency" circumstances. (Gov't Mot. at 11.)

*6 Rhone argues that the "emergency doctrine" is not applicable because defendant should have known that the road conditions were icy. (Rhone Opp. at 3.) In support of his assertion, Rhone contests the Government's claims that water seeped onto the road and froze at the time and place of the accident. (Pl.'s 56.1 ¶¶ 11-13.) Rather, Rhone states that the icy road conditions were due to ice pellets falling in the area on December 25, as well as 5.5 inches of rain on December 14, and 3.5 inches of rain on December 15, coupled with generally below

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 6
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

freezing temperatures. (Pl.'s 56.1 ¶ 10; Rhone Opp. at 2-3.) Rhone contends that Franquelli's failure to observe the obvious wet and icy conditions makes the Government negligent. (Rhone Opp. at 4.)

The Government has not demonstrated prima facie entitlement to judgment as a matter of law with respect to whether the Government breached a duty. In opposition, Rhone has presented sufficient evidence to raise a triable issue of fact as to whether the Government breached its duty of care. In support of his claims, Rhone has provided more than "speculative and conclusory assertions," *Pettica,* 223 A.D.2d at 988, 636 N.Y.S.2d at 503, including supporting weather and police reports. (Pl.'s 56.1 Exhs.) Therefore, genuine issues of fact remain regarding the road conditions at the time of the December 2003 accident, whether the icy conditions were obvious, and the reasonableness of defendant's actions. In light of the forgoing, issues of fact exist concerning whether the driver was "confronted with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation, or consideration," *Cheung,* 22 A.D.3d at 451, 802 N.Y.S.2d at 209, and whether the Government's response to the emergency, assuming it existed, was reasonable.

**B. Proximate Cause**

The Government also claims that even if it did breach its duty of care to Rhone, Rhone's injuries were not caused by the December 2003 accident. One essential element of a negligence claim is that "the breach proximately caused plaintiff's injuries."*Kane,* 189 F.Supp.2d at 51;*see also Carter v. Full Service, Inc.,* 29 A.D.3d 342, 344, 815 N.Y.S.2d 41, 43 (1st Dep't 2006) ("In order to recover damages for non-economic loss related to a personal injury allegedly sustained in a motor vehicle accident, a plaintiff is required to present competent, non-conclusory expert evidence sufficient to support a finding, not only that the alleged injury is 'serious' within the meaning of Insurance Law § 5102(d), but also that the injury was proxim-

ately caused by the accident at issue.")."[E]ven where there is objective medical proof [of a serious injury], when additional contributory factors interrupt the chain of causation between the accident and claimed injury-such as a gap in treatment, an intervening medical problem or a preexisting condition-summary dismissal of the complaint may be appropriate."*Pommells v. Perez,* 4 N.Y.3d 566, 572, 797 N.Y.S.2d 380, 383 (N.Y.2005); *see also Arenes v. Mercedes Benz Credit Corp.,* No. 03 Civ. 5810, 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006). Therefore, "[w]hen a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled to summary dismissal of the complaint."*Arenes,* 2006 WL 1517756, at *8;*see also Pommells,* 4 N.Y.3d at 580, 797 N.Y.S.2d at 389. The Government asserts that it has put forth persuasive evidence that Rhone's injuries are related to a pre-existing condition. Further, the Government claims that it is entitled to summary judgment because Rhone has not met his burden to put forth evidence that addresses the Government's contentions.

*1. The Government's Evidence*

*7 In this case, the Government has submitted persuasive evidence that Rhone's injuries are related to a pre-existing condition. The Government asserts that, even if the Court assumes that Rhone can meet the serious injury threshold required under the No-Fault Law, Rhone cannot show that his injuries were caused by the December 2003 accident, rather than a prior accident or pre-existing conditions. (Gov't Mot. at 11.) In support of its contention, the Government cites the evaluations of three doctors who found no causal connection between Rhone's injuries and the December 2003 accident. (Gov't Mot. at 12; Gov't Reply at 3-4.) Rather, the doctors state that the injuries were the result of degenerative changes. (Gov't Mot. at 12-13.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        Page 7
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Specifically, Dr. Samuel Rapoport, the Government's expert neurologist, after obtaining Rhone's medical history and examining him and his medical records, states that any injuries are caused by degenerative disease and are unrelated to the December 2003 accident. (Rapoport Decl. ¶ 5.) In support of his findings, Dr. Rapoport discusses, in detail, Rhone's medical records, including x-rays, MRIs, and an EMG. For example, Dr. Rapoport notes that degenerative changes "were already evident" in a March 2001 x-ray of Rhone's spine, and "it is clear that Mr. Rhone has a chronic, degenerative disease of his cervical spine...." [FN5] (Rapoport Report at 6-7.) Dr. Rapoport further states that "[i]t is important to note that Mr. Rhone was involved in an automobile accident on 3/15/01. As a result of that accident he complained of neck and bilateral shoulder symptoms that were very similar to those that he attributes to his 12/27/03 accident." (Rapoport Report at 7.)

> FN5. In addition to stating that degenerative changes were evident in x-rays taken after the 2001 car accident, the Government also notes that Rhone suffered from neck and shoulder pain following the 2001 car accident. (Def.'s 56.1 ¶ 2; Rapoport Report at 6-7.) Further, Dr. Rapoport states that Rhone "has been suffering from pain attributable to his lumbar spine since at least 6/28/95."(Rapoport Report at 7.) Cf. *Ashquabe v. McConnell*, 14 Misc.3d 211, 829 N.Y.S.2d 427 (N.Y.Sup.Ct.2006) (holding that a medical expert's opinion was not sufficient to shift the burden to plaintiff because plaintiff's injury was asymptomatic prior to the accident at issue and there was no objective evidence of a degenerative condition prior to the accident).

The Government also relies upon the Declaration and Report from Dr. Harry Goldmark, the Government's expert orthopedic surgeon. After examining Rhone and his medical records, Dr. Goldmark concluded that although Rhone "sustained bilateral shoulder strains as a result of the December 27, 2003 accident, which would be expected to resolve in six to eight weeks with appropriate treatment," he "did not sustain any permanent injury to either of his shoulders as a result of the December 27, 2003 accident."(Goldmark Decl. ¶¶ 5-6.) Further, MRIs revealed "long-standing degenerative type changes," but showed "no evidence of any acute injury that occurred at the time of the accident."(Goldmark Report at 5.) Dr. Goldmark also noted that "[t]he fact that findings in both shoulders were essentially the same is not what would be expected if the accident of December 27, 2003 were the cause of Mr. Rhone's alleged injuries."(Goldmark Report at 5.)

In addition to the evidence proffered by the Government's experts, the Government also notes that Dr. Andrew N. Bazos, who conducted an orthopedic surgical peer review, stated that "[t]he only significant MRI findings were degenerative changes at the acromioclavicular joint, which build up over many years and would not be related to a motor vehicle accident that took place only a few weeks before the MRI was obtained."(Gov't Mot. at 6; Hallums Decl., Exh. M.) Further, Dr. Bazos stated that he "found no evidence of any mechanical abnormalities in the shoulder that were acute and that would have been related to the motor vehicle accident on December 27, 2003."(Gov't Reply at 3; Hallums Decl., Exh. M.)

*8 The reports of Drs. Rapoport, Goldmark, and Bazos are sufficient to establish a prima facie case that Rhone's injuries resulted from a pre-existing, degenerative condition. The doctors provide persuasive evidence that a degenerative condition was evident and symptomatic both before and after the December 2003 accident. Because the Government has met its burden, Rhone has the burden of providing evidence that addresses the Government's claimed lack of causation. *See Arenes*, 2006 WL 1517756, at *8.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*2. Rhone's Evidence*

Before considering whether Rhone has met his burden, the Court first addresses the Government's contention that three of the affirmations submitted in support of Rhone's opposition to the summary judgment motion are inadmissible. Specifically, the Government asserts that affirmations from Drs. John Rigney, Allen Rothpearl, and John S. Vlattas are inadmissible because they were not previously disclosed during discovery as treating physicians or experts. *See*Fed.R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

Under Rule 37(c)(1), a failure to disclose may be excused if there is a "substantial justification" for the failure or if the failure is harmless.[FN6]*See*Fed.R.Civ.P. 37(c)(1). In offering the affirmations, Rhone provides no "substantial justification" for failure to disclose the doctors.[FN7] Notably, these three doctors each performed their examinations well before the close of discovery.[FN8] Nonetheless, the Court will consider the contested affirmations because, although Rhone does not offer a "substantial justification" for failure to disclose,[FN8] the failure is harmless in this case.

> FN6. Courts recognize that preclusion under Rule 37(c)(1)"is a drastic remedy and should be exercised with discretion and caution."*Ebewo v. Martinez,* 309 F.Supp.2d 600, 607 (S.D.N.Y.2004) (Koeltl, J.) ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."); *see also Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000) (recognizing that preclusion is a drastic remedy); *Johnson Elec. N. Am. v. Mabuchi*

*Motor Am. Corp.,* 77 F.Supp.2d 446, 458 (S.D.N.Y.1999) (same). Some district courts in the Second Circuit have required that "the party's conduct represent [ ] flagrant bad faith and callous disregard of the federal rules," in order to warrant preclusion of expert testimony. *Ebewo,* 309 F.Supp.2d at 607 n. 2 (citing cases requiring bad faith, but noting that it remains an open question). The Second Circuit previously had "express[ed] no opinion as to whether a showing of bad faith is required before evidence may be excluded under Rule 37(c)(1)."*Hein v. Cuprum, S.A., De C.V.,* 53 Fed. Appx. 134, 137 (2d Cir.2002). In *Design Strategy, Inc. v. Davis,* however, the Second Circuit expressly held that "[s]ince Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."*Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296 (2d Cir.2006). Thus, the Court need not consider whether Rhone's conduct represents bad faith.

> FN7. In the recent Southern District of New York case of *Farook v. Bailey,* the Court allowed plaintiff's medical evidence submitted in opposition to defendants' summary judgment motion even though the expert was not previously disclosed in accordance with Rule 26(a) (2) of the Federal Rules of Civil Procedure. The Court allowed the evidence because the materials responded to specific issues raised in defendants' motion practice, the materials did not exist prior to the general deadline for disclosure, and defendants were not harmed by the timing of disclosure. *See Farook v. Bailey,* No. 05 Civ. 3785, 2007 WL 2076764, at *2 (S.D.N.Y. July 16, 2007). In this case, however, Rhone's medical evidence does not respond to specific issues raised by defendant's motion prac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 9
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

tice and the materials existed well before the deadline for disclosure. The issue of harm is discussed further below.

FN8. In an endorsed letter on March 28, 2005, the parties were ordered to conclude all discovery by May 2, 2005. The doctors' affirmations make clear that their examinations of Rhone's injuries occurred between January and March 2004. Specifically, Dr. Rigney states that he reviewed Rhone's MRI films on January 21 and 27, 2004; Dr. Rothpearl states that he interpreted MRI films on February 10, 2004; and Dr. Vlattas states that he performed and reviewed electro-diagnostic studies on March 12, 2004. Thus, the doctors each performed their examinations well before the close of discovery.

FN9. Rhone cannot circumvent the disclosure requirement by referring to these doctors as treating physicians. Although treating physicians are not required to make disclosures under Rule 26(a) (2), these three doctors cannot be considered treating physicians. The affirmations make clear that the doctors "did not have an ongoing relationship with plaintiff as a treating physician."*Ebewo*, 309 F.Supp.2d at 606. Rather, the affirmations of Drs. Rigney and Rothpearl state that they only reviewed MRI films and make no reference to ever actually seeing Rhone, let alone treating him. Similarly, Dr. Vlattas states that he performed electro-diagnostic studies on Rhone on one occasion, but does not mention any additional contact or treatment. Because they plainly were not treating physicians, Drs. Rigney, Rothpearl, and Vlattas should have been disclosed as expert witnesses if Rhone planned to use affirmations from them in support of his opposition to defendant's summary judgment motion.

The Government is not harmed by Rhone's timing because the affirmations do not change the result here. *See Farook v. Bailey*, No. 05 Civ. 3785, 2007 WL 2076764, at *2 (S.D.N.Y. July 16, 2007) (holding that "the Court finds that Defendants have not been harmed by the timing of their disclosure. Hence, the harsh remedy of preclusion is unwarranted ...."). As discussed above, the Government met its burden to put forth persuasive evidence that Rhone's injury was caused by a pre-existing condition, therefore, Rhone has the burden of providing evidence that addresses the Government's claimed lack of causation. Specifically, Rhone must "refute defendant's evidence of a preexisting degenerative condition."*Pommells*, 4 N.Y.3d at 580, 797 N.Y.S.2d at 389. The affirmations from Drs. Rigney, Rothpearl, and Vlattas are harmless because they fail to refute the Government's evidence.

The affirmations put forth by Rhone do not rebut the assessments from the Government experts that Rhone's injuries were caused by a degenerative condition and were evident prior to the December 2003 accident. First, Dr. Rigney submitted brief conclusory findings that do not consider causation. He makes no mention of Rhone's medical history or March 2001 accident. Second, Dr. Rothpearl also submitted brief conclusory findings that merely state that Rhone's MRIs revealed partial tears in the tendons in his shoulders. Dr. Rothpearl does not mention what might have caused the tears, nor does he mention any of Rhone's medical history. Third, in his brief findings, Dr. Vlattas does not mention whether he obtained Rhone's medical history. In spite of that, Dr. Vlattas states that "[t]he absence of any pre-existing condition make[s] clear that these injuries were as a result of the trauma sustained in the accident of December 27, 2003."(Vlattas Aff. at 1.) In addition, Dr. Vlattas states that he felt a muscle spasm upon examination and that his finding "is consistent and compatible with [his] diagnosis of spinal nerve injury related to and caused by accident of December 27, 2003."(Vlattas Aff. at 2.) However, without consideration of Rhone's medical history and the persuas-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 10

ive evidence of a degenerative condition put forth by the Government, Dr. Vlattas's conclusion is mere speculation. *See Farook,* 2007 WL 2076764, at *2 ("Doctors' conclusions of causation are speculative if they are merely conclusory and do not address causation."). Thus, these affirmations do not assist Rhone in meeting his burden to come forward with evidence addressing the Government's claimed lack of causation.

*9 Further, Rhone fails to provide any other evidence that refutes the Government's evidence regarding causation. Notably, the report from Dr. Pasqua, Rhone's treating chiropractor, is silent on the possibility of a degenerative condition and Rhone's previous accident. Although Dr. Pasqua states that Rhone's injuries are causally related to the December 2003 accident, he does not explain what leads him to that finding and fails to consider the evidence of degeneration put forth by the Government experts.[FN10](Pasqua Aff. at 4.) Indeed, Dr. Pasqua's report does not address the Government's evidence that the injuries were degenerative in nature and does not mention Rhone's prior accident. In addition, Dr. Pasqua fails to consider Rhone's medical history prior to the December 2003 accident. Courts have repeatedly held that such conclusory statements are merely speculative and are insufficient to meet plaintiff's burden. *See, e.g., Arenes,* 2006 WL 1517756, at *8-9;*see also Montgomery v. Pena,* 19 A.D.3d 288, 290, 798 N.Y.S .2d 17, 17 (1st Dep't 2005) (granting summary judgment to defendants where plaintiff's expert failed to give an objective basis for the conclusion that plaintiff's injuries resulted from the accident sued upon rather than from a prior accident or pre-existing degenerative conditions); *cf. Farook,* 2007 WL 2076764, at *3 (noting that medical opinion "as to causation specifically discusses the pre-accident evidence" presented by adversary). Dr. Pasqua's conclusory statements are not sufficient to demonstrate a triable issue of fact.

FN10. Dr. Pasqua states that "[t]he findings of disc herniation and bulging as con-

firmed by me clinically is consistent and compatible with my diagnosis of permanent and significant injury related to and caused by the accident of December 27, 2003," and that it can "be stated with a reasonable degree of medical certainty that the accident of December 27, 2003 was the competent producing factor of the present injuries .... " (Pasqua Aff. at 4-6.)

Rhone also submitted his own affidavit in opposition to the instant motion. Rhone states that "[a]s a result of the impact [from the December 2003 accident] I sustained injuries to both my shoulders, neck and back ...." (Rhone Aff. at 1.) He further explains the injuries that he suffered, the pain that continues to plague him, and the resulting limitations to his activities. (Rhone Aff. at 1-2.) Courts have made clear, however, that a plaintiff's own self-serving statements are insufficient to raise a triable issue of fact. *See Carter,* 29 A.D.3d at 344-45, 815 N.Y.S.2d at 43 (stating that plaintiff's own self-serving testimony is, in the absence of corroborating objective medical evidence, insufficient to raise a triable issue for submission to the jury); *see also Arenes,* 2006 WL 1517756, at *7. As discussed above, the medical evidence submitted by Rhone fails to address the Government's persuasive evidence that the December 2003 accident was not the proximate cause of Rhone's injuries. Rhone's own statements cannot serve as a substitute for objective medical evidence. Without objective medical evidence to corroborate Rhone's self-serving statements, his own affidavit cannot overcome defendant's evidence regarding causation.

In this case, with persuasive evidence from the Government that Rhone's injuries were related to a pre-existing condition, the burden shifted to Rhone to put forth evidence addressing the Government's evidence regarding causation. *See Arenes,* 2006 WL 1517756, at *8-9 (holding that plaintiffs' failure to address defendant's persuasive evidence that injuries are related to a pre-existing condition warrants summary dismissal of complaint). Considering all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 11
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

of the evidence put forth by Rhone, including the contested affirmations from Drs. Rigney, Roth-pearl, and Vlattas, as well as the evidence from Dr. Pasqua, Rhone "failed to rebut [defendant's] evidence sufficiently to raise an issue of fact."*Pommells,* 4 N.Y.3d at 579, 797 N.Y.S.2d at 389;*see also Arenes,* 2006 WL 1517756, at *9. Rhone failed to present the objective proof required to create a triable issue as to whether his injuries-even if the Court assumes that Rhone can meet the serious injury threshold-were caused by the December 2003 accident.

*10 The Court recognizes that summary judgment is an extraordinary remedy and to that end, "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."*Westinghouse Credit Corp.,* 278 F.3d at 145. In this case, however, in the face of the Government's persuasive evidence from three medical experts, Rhone has failed to put forth any objective medical evidence to rebut the Government experts' conclusions. In the absence of any such evidence, the Court concludes that the Government is entitled to summary judgment on Rhone's claim for non-economic damages. Given the Court's holding that there is no triable issue of fact as to whether the Government proximately caused plaintiff's injuries, the Court need not consider the Government's claim regarding whether Rhone can meet the serious injury threshold.FN11

> FN11. Consideration of whether Rhone meets the serious injury threshold is rendered moot by the Court's decision on causation. Rhone's failure to put forth any objective medical evidence demonstrating a causal link between the December 2003 accident and his alleged injuries makes any consideration of the seriousness of those injuries irrelevant. *See Pommells,* 4 N.Y.3d at 579-80, 797 N.Y.S.2d at 388-89;*see also Carter,* 29 A.D.3d at 345, 815 N .Y.S.2d at

44 (holding that "plaintiff failed to sustain his burden of proving a serious injury *causally related* to the accident") (internal quotations omitted); *Montgomery,* 19 A.D.3d at 290, 798 N.Y.S.2d at 17 (stating that even if it is assumed that plaintiff met the serious injury threshold, doctor's speculative conclusions are insufficient to defeat defendant's motion for summary judgment).

### III. *Economic Losses*

The Government also argues that Rhone cannot establish that he has incurred more than $50,000 in economic loss, as is required to recover basic economic loss under the No-Fault Law. *See*N.Y. Ins. Law §§ 5102(a), 5104; *see also Rambarrat v. United States,* No. 04 Civ. 6115, 2006 WL 648217, at *9 n. 3 (S.D.N.Y. Mar. 14, 2006); *Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000). In support of its position, the Government states that Rhone "has not incurred any medical costs, except for out-of-pocket expenses of approximately $150 for medication."(Gov't Mot. at 25.) Further, the Government states that Rhone's 2002 salary was $20,000 to $25,000 per year. (Gov't Mot. at 25.) Rhone's 2003 salary at Comfort Care was $500 per week with bonuses totaling less than $1,000. (Gov't Mot. at 25.) As an employee of C & H Staffing from July 2004 to November 2004, the Government states that Rhone earned $700 per week. (Gov't Mot. at 25.) Rhone's salary at the time that the instant motion was filed was $700 per week. (Gov't Mot. at 25.)

In his Memorandum of Law in Opposition to the Government's Motion for Summary Judgment, Rhone fails to address the Government's economic loss argument. Rhone does not offer any evidence that his economic loss was in excess of $50,000 and he does not oppose the Government's motion on this ground. In his affidavit, Rhone states that his vehicle sustained damage in excess of $11,000. (Rhone Aff. at 1.) In its Reply, the Government states that although Rhone asserts in his affidavit

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 12

that he owned the vehicle he was driving at the time
of the accident, Rhone previously testified that his
son Andre owned the vehicle. (Gov't Reply at 11.)
Considering the evidence before the Court in the
light most favorable to Rhone, accounting for the
property damage, medical costs, and lost wages,
Rhone's basic economic loss does not come close to
the $50,000 threshold requirement. Therefore, the
Government is entitled to summary judgment on
the claim for damages for basic economic loss.

### CONCLUSION

*11 For the reasons set forth above, defendant's
request for summary judgment is hereby GRAN-
TED and plaintiff's claims against the United States
are DISMISSED.

**SO ORDERED.**

S.D.N.Y.,2007.
Rhone v. U.S.
Slip Copy, 2007 WL 3340836 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2982757 (E.D.N.Y.)
(Cite as: Slip Copy)

H
Alfano v. National Geographic Channel
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Robert ALFANO, Plaintiff,
v.
NATIONAL GEOGRAPHIC CHANNEL, et al.,
Defendants.
No. CV 06-3511(NG)(JO).

Oct. 5, 2007.

Carol E. Owens, Harris Beach, PLLC, H. Todd Bullard, Harris Beach LLP, Pittsford, NY, Louis Grandelli, Louis Grandelli, PC, New York, NY, for Plaintiff.
Christopher Healy, John Hooper, Edwards Angell Palmer & Dodge LLP, New York, NY, Stephen M. Prignano, Edwards Angell Palmer & Dodge LLP, Providence, RI, for National Geographic Channel, National Geographic Holdings, Inc.
Jeffrey Len Loop, Zachary W. Carter, Dorsey & Whitey LLP, New York, NY, for Corbis Corporation.

ORDER

JAMES ORENSTEIN, Magistrate Judge.

*1 Following the close of discovery and the submission of a proposed Joint Pretrial Order (the "JPTO"), plaintiff Robert Alfano ("Alfano") seeks to amend the JPTO by listing Gary Galli ("Galli") as a potential trial witness. DE 70 ("Alfano Letter"). Defendants NGHT, Inc., NGC Network U.S., LLC (collectively "NG"), and Corbis Corporation oppose the amendment on the ground that Alfano has failed to satisfy his disclosure obligations with respect to Galli. DE 72 ("NG Letter"); DE 71 ("Corbis Letter"). For the reasons set forth below, I deny Alfano's request.[FN1]

> FN1. Alfano also named Greg Auteri ("Auteri") as a second potential witness

whose name he would like to add to the JPTO. Auteri, however, "is unable to participate in the matter."Alfano Letter at 2. I therefore assume that the dispute about Auteri is moot, and that the proposed addition of Galli's name is the only live issue. Nevertheless, to avoid any misunderstanding, I note that I would reach the same result with respect to Auteri as I do with respect to Galli, for the same reasons discussed below. I also note that in a letter reply to the defendants' opposition, Alfano mentioned still another new potential witness named Paul Mazzilli ("Mazzilli"). DE 74. Because Alfano had not yet discussed with his adversaries his desire to add Mazzilli's name to the JPTO, I denied Alfano's application for such relief without prejudice to renewal after conferring with the defendants in an attempt to secure consent. Electronic Order dated September 25, 2007.

A party to a federal civil lawsuit must at the outset of the litigation disclose to its opponent the name of and contact information for "each individual likely to have discoverable information that the disclosing party may use to support its claims ...." Fed.R.Civ.P. 26(a)(1)(A). Such initial disclosures must be made based on "information then reasonably available" to the disclosing party, regardless of whether that party has yet to complete its investigation of the case. Fed.R.Civ.P. 26(a)(1) (E). A party is also under an affirmative duty to supplement incomplete or incorrect disclosures with later-acquired information that has not otherwise been made known to its opponent during discovery. Fed.R.Civ.P. 26(e)(1). Failure to satisfy these obligations precludes a party from using the withheld information as evidence at trial. Fed.R.Civ.P. 37(c)(1); Stover v. Northland Group, Inc., 2007 WL 1969724, at *2-*3 (W.D.N.Y. July 6, 2007) (precluding testimony of witness where party failed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2007 WL 2982757 (E.D.N.Y.)
(Cite as: Slip Copy)

to include witness in Rule 26(a) disclosures or to identify witness in response to opponent's interrogatories); *Design Strategies, Inc. v. Davis,* 367 F.Supp.2d 630, 634 (S.D.N.Y.2005) (the sanction of preclusion under Rule 37(c)(1) "is automatic absent a determination of substantial justification or harmlessness") (quoting *American Stock Exchange, LLC. v. Mopex, Inc.,* 215 F.R.D. 87, 93 (S.D.N.Y.2002) (internal citations omitted)).

Alfano does not dispute the fact that he omitted Galli from his Rule 26 disclosures, nor does Alfano argue that he provided any supplemental disclosure to the defendants of Galli's status as a person upon whom Alfano might call to support his claims. *See* Alfano Letter at 2; NG Letter Ex. A. Rather, Alfano argues that he satisfied his disclosure obligations by identifying Galli as a potential investor in a real estate project (the "86th Street Project") during his deposition on June 4, 2007. Transcript of Deposition of Robert Alfano 146 (reprinted in Alfano Letter Ex. B). Alternatively, Alfano suggests that his failure to disclose Galli should be excused due to the difficulty Alfano encountered in securing Galli's commitment to testify. *Id.* at 2. Neither argument is persuasive.

As to the first point, Alfano's mere mention of Galli during his deposition was patently insufficient to alert the defendants to the salient point: that Alfano might call Galli to testify in support of Alfano's claims. It is the latter information that is conveyed by the disclosures required under Rule 26(a)(1)-not merely that a person is a potential source of information, but that the party may call upon him to provide it-and that fairly alerts any adverse party of the potential need to take discovery of the person so named.

*2 Alfano's second argument, that he deferred providing notice of Galli's potential testimony until he had overcome Galli's unwillingness to appear, is flatly inconsistent with the rules of discovery. Those rules require the disclosure of any witness a party *may* call at trial, Fed.R.Civ.P. 26(a)(1)(A), not simply those that the party has finally determined, to some undefined degree of certainty, that he *will* call to the stand. Any other reading of the rule would promote undue delay and gamesmanship in the discovery process, and is therefore prohibited pursuant to the very first rule of civil procedure: "These rules .... shall be construed and administered to secure the just, speed, and inexpensive determination of every action."Fed.R.Civ.P. 1. If Alfano had only recently learned that Galli had discoverable information, my analysis-and the result-would be quite different. But the excerpts of deposition testimony that Alfano has attached to his motion make clear that he has been aware of Galli's status as a potential witness from the outset. *See* Alfano Letter Ex. B.

Galli's initial reluctance to participate in this litigation does not substantially justify Alfano's failure to disclose his name under Rule 26. Moreover, even if I were inclined to overlook the Rule 26 violation, I would not overlook Alfano's further abuse of the discovery process in responding to the defendants' specific requests. On April 6, 2007, Corbis asked Alfano to provide, in addition to other information, the answers to the following interrogatories:

11. Please identify and describe any and all attempts by Plaintiff, his agents or his representatives to securing funding, investment or other financial participation, whether monetary or in-kind, and whether successful or not, in connection with the 86th Street Property, including but not limited to, the source(s) of the funding sought, including, but not limited to, the identity of each and every entity from which such funding, investment or financial participation was sought.

12. Please identify and describe any and all sources of funding, investment or other financial participation, whether monetary or in-kind, Plaintiff has or had arranged for or secured in connection with the 86th Street Property.

Corbis Letter at 2 n. 2. There is no dispute that Galli's name was responsive to both of those interrogatories. Even if Alfano had not yet decided to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2982757 (E.D.N.Y.)
**(Cite as: Slip Copy)**

call Galli as a witness, he had no unilateral right to deprive the defendants of their opportunity to assess the utility of Galli's information by withholding his name. *See*Fed.R.Civ.P. 33 ("Each interrogatory shall be answered separately and *fully* in writing under oath....") (emphasis added).

Discovery has closed. Allowing Alfano to add Galli's name to the JPTO would therefore result in one of two forms of unfairness: it would either allow him to present Galli's testimony without the level of pretrial disclosure that would put the defendants in a position fairly to meet it, or it would require me to re-open discovery for extensive and costly proceedings to explore not only Galli's testimony, but other information, including the testimony of several other witnesses, pertinent to the subject matter of that testimony. In short, Alfano's abuse of the discovery process has created a situation in which one side or the other must bear a burden that timely disclosure would have avoided: either Alfano must do without testimony he deems relevant and useful, or the defendants must choose between added litigation costs and lack of preparation for trial. Since I must decide which party should bear the burden of Alfano's improper discovery tactics, I conclude it is only fair that Alfano himself should do so.

*3 For the reasons set forth above, I deny plaintiff Robert Alfano's request to amend the Joint Pretrial Order by adding the name of Gary Galli as a potential trial witness.

**SO ORDERED.**

E.D.N.Y.,2007.
Alfano v. National Geographic Channel
Slip Copy, 2007 WL 2982757 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT PAYNE and PAYNE  :  Civil Action
INVESTMENTS LLC,      :
             :
    Plaintiffs,   :  No. 3:02 CV 2234 (AWT)
             :
  v.         :
             :
TAYLOR VISION RESOURCES,  :
TAYLOR STRATEGIC ACQUISITIONS, :
TAYLOR STRATEGIC DIVESTITURES, :
and TAYLOR FINANCIAL SERVICES :
LLC, all defendants collectively  :
operating under the name   :
TAYLOR COMPANIES,   :
             :
    Defendants.  :

## AFFIDAVIT OF DOUGLAS J. VARGA

STATE OF CONNECTICUT  )
           )  ss: Bridgeport, March 10, 2008
COUNTY OF FAIRFIELD   )

   I, Douglas J. Varga, being duly sworn, depose and state as follows:

   1.  I am over the age of 18 years and understand the obligations of an oath.

   2.  I am one of the attorneys for the defendants Taylor Vision Resources,

Taylor Strategic Acquisitions, Taylor Strategic Divestitures, and Taylor Financial

Services LLC (collectively "Taylor Companies") in the above-entitled action. I have

personal knowledge of the facts set forth in this Affidavit, which I submit pursuant to

Fed.R.Civ.P. 37(c)(1) and Local Civil Rule 37(a) and in support of Taylor's Motions to

Preclude Expert Witness Testimony and Motion to preclude Fact Witness Testimony,

each filed on March 10, 2008.

3.      On or about March 30, 2004, plaintiffs Robert Payne and Payne Investments LLC (collectively, "Payne") served initial disclosures pursuant o Fed.R.Civ.P. 26(a)(1), a true and correct copy of which is attached to this Affidavit at Exhibit A.

4.      In his initial disclosures, Payne did not identify either Eugene Toombs or Thomas Bohle as individuals likely to possess discoverable information concerning Payne's claims and defenses in this case, or the subjects of any such discoverable information. Payne also at no time supplemented his initial disclosures pursuant to Fed.R.Civ.P. 26(e) to identify either Mr. Toombs or Mr. Bohle.

5.      In reliance on Payne's initial disclosures, Taylor Companies did not conduct any pretrial discovery concerning any knowledge or information possessed by Messrs. Toombs and Bohle concerning the claims and defenses at issue in this case. Had plaintiffs identified those individuals in their initial disclosures, Taylor Companies would have conducted such pretrial discovery.

6.      In his portion of the parties' Joint Trial Memorandum, Payne has disclosed Messrs. Toombs and Bohle as expected trial witnesses.

7.      Taylor Companies first became aware of Payne's position that Messrs. Toombs and Bohle likely possess discoverable information concerning Payne's claims and defenses in this case upon Payne's submission (on February 20, 2008) of the initial draft of his position of the parties' Joint Trial Memorandum, in which Payne disclosed both individuals as expected trial witnesses.

2

8.    In his portion of the parties' Joint Trial Memorandum, Payne also states his intention to call Mr. David Epstein as an expert witness, and to introduce a purported "report" prepared by Mr. Epstein.

9.    Pursuant to the parties' agreed scheduling order dated May 16, 2005 (Docket No. 52) and entered by the Court on May 25, 2005 (Docket No. 53), Payne was required to disclose any trial experts on or before June 21, 2005.

10.    Payne did not disclose the existence of any expert witnesses or serve any expert reports in accordance with Fed.R.Civ.P. 26(a)(2) on or before June 21, 2005.

11.    Neither I nor any other attorney in my office knew of Mr. Epstein's existence; knew of his alleged retention as Paynes' expert witness; or received a copy of the purported "expert report" until service of Payne's Motion to Reopen dated July 31, 2006 (Docket No. 57).  In fact, I had no communications with Payne's prior counsel (James Donohue) regarding any aspect of this case at any time between September 7, 2005 and August 2, 2006.

12.    On March 7, 2008, I conferred with Kevin W. Gillen, one of the attorneys representing Payne in this matter, regarding Taylor Companies' position that Messrs. Epstein, Toombs, and Bohle were not properly disclosed and should not be permitted to testify at trial.  Mr. Gillen confirmed that Payne did not agree with Taylor Companies' position and would not agree to withdraw Messrs. Epstein, Toombs, and Bohle from Payne's list of anticipated witnesses at trial.

13.    Although I have on conferred with opposing counsel in a good faith effort to eliminate or reduce the area of controversy concerning the proposed trial testimony of these three witnesses, the parties have been unable to arrive at a mutually satisfactory resolution without intervention by the Court.

Douglas J. Varga

Subscribed and sworn to before me this 10th day of March, 2008.

_____
Commissioner of the Superior Court

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT PAYNE and PAYNE                    :
INVESTMENTS LLC,
                                          :     No. 202CV2234(AWT)
              Plaintiffs,
                                          :

         -v-                              :

TAYLOR VISION RESOURCES,                  :
TAYLOR STRATEGIC ACQUISITIONS,            :
TAYLOR STRATEGIC DIVESTITURES,
and TAYLOR FINANCIAL SERVICES,            :
LLC, all defendants collectively
operating Under the Name                  :
TAYLOR COMPANIES,
                                          :
              Defendants.                 :


    Plaintiffs, Robert Payne and Payne Investments LLC, by

their attorneys Gilbride, Tusa, Last & Spellane LLC,

pursuant to F.R.C.P.26(a)(1) hereby provide the following:


    Disclosures pursuant to F.R.C.P.26(a)(1)(A).- Robert

Payne and Payne Investments LLC.  This individual and

entity may only be contacted through the attorneys for the

Plaintiffs.  In addition, the following individuals:


              Ralph Taylor
              1215 Nineteenth St.,NW
              Washington, D.C. 20036
              202-955-1330

              Warren Bellis
              1215 Nineteenth St.,NW
              Washington, D.C. 20036
              202-955-1330

Mark Borrelli
c/o McNeill Stokes
1040 Peachtree Battle Avenue
Atlanta, GA 30327
404-352-2144

Mark Schneider
411 Thamer Lane
Houston, TX 77024
281-543-4174

Chris Tallet
109 Danbury Road, Suite 813
Ridgefield, CT 06877
203-431-1601

Ken Griffin
1215 Nineteenth St.,NW
Washington, D.C. 20036
202-955-1330

Ron Flack
1215 Nineteenth St.,NW
Washington, D.C. 20036
202-955-1330

Steve Fraser
1215 Nineteenth St.,NW
Washington, D.C. 20036
202-955-1330

Trey Taylor
1215 Nineteenth St.,NW
Washington, D.C. 20036
202-955-1330

Kathy Stoltz
1215 Nineteenth St.,NW
Washington, D.C. 20036
202-955-1330

Jacob A. Stein
Stein Mitchell & Mezines
1100 Connecticut Avenue NW
Washington, DC 20036

2

Disclosures pursuant to F.R.C.P. 26(a)(1)(B)   All of the
following electronic media and documents are or can be
located at The Taylor Companies, 1215 Nineteenth St., N.W.
Washington, D.C. 20036 or warehouses under the control of
The Taylor Companies whose location is known to individuals
employed by and under the control of the defendants.

Electronic Media

    1.  All emails between (either from or to) Robert
Payne and any of the foregoing personnel at the Taylor
Companies November 1999 through August 2002.

    2.  Internal communications sent or received on
"Taydesk" or related programs, used to track progress
on transactions and keep a record of client and
advisor communications and follow-up.  These
communications will have been originated or copied
to any or all of the personnel listed above.

    3.  All electronic files relating to the Mitek, Borden
Chemicals and Plastics ("Borden"), or Dow Sentrachem
("Dow") transactions.  These files will typically be
in the form of Microsoft Power Point, Word, or Excel
files.

    4.  All records and notes of meetings between Ralph
Taylor and Mitek (or its parent company Rexam plc),

3

Kohlberg Kravis Roberts (KKR), Dow, and Borden.


Documents

    1.   Copies of all client presentations for Mitek,
Borden, or Dow.

    2.   Travel records and calendars for Ralph Taylor and
any other agent, employee, officer and/or director of
Defendants that involve any of the foregoing companies and
the transactions relating thereto.

    3.   Income statements for any of the Taylor Companies
showing receipt of revenue, timing and magnitude, for any
of the foregoing companies.

    4.   Copies of all distributions to Robert Payne from
any of the Taylor Companies between December 1999 and
August 2002.

    5.   Original copy of the offer of employment latter
sent to Robert Payne dated November 20, 1999.

    6.   Copies of all offering memoranda produced by
Taylor Companies for the Mitek, Borden, or Dow, Kohlberg
Kravis & Roberts ("KKR") transactions.

    Disclosure pursuant to F.R.C.P. 26(a)(1)(c) a
computation of any category of damages claimed by the
Plaintiff is set forth in detail in the Complaint filed in
this action.

Disclosures pursuant to F.R.C.P. 26(a)(1)(D) - None at

this time.

Dated: March 30, 2004.


            Yours, etc.

            GILBRIDE, TUSA, LAST & SPELLANE LLC


        By _____
            David Crystal II, Esq./Fed Bar #CT24276
            Attorneys for Plaintiffs
            31 Brookside Drive/P.O. Box 658
            Greenwich, Connecticut 06836
            (203) 622-9360
                    and
            Gilbride, Tusa, Last & Spellane LLC
            420 Lexington Avenue
            New York, New York 10170
            (212) 692-9666


To:  Jacob D. Zeldes, Esq.
     Zeldes, Needle & Cooper
     Attorneys for Defendants
     1000 Lafayette Blvd.
     Bridgeport, Connecticut 06604


                        5

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing has been sent via regular

mail, postage prepaid, to the following counsel of record:

> Jacob D. Zeldes, Esq.
> Zeldes, Needle & Cooper
> 1000 Lafayette Blvd.
> Bridgeport, CT 06601
> (203) 333-9441

Dated at New York, New York this 30th day of March, 2004.

David Crystal II (CT24276)

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via United States

Mail, postage prepaid, on this date, to:

Michael P. Berman, Esq.
Kevin W. Gillen, Esq.
Berman and Sable LLC
One Financial Plaza
Hartford, CT 06103

Jacob A. Stein, Esq.
Stein, Mitchell & Mezines
1100 Connecticut Avenue, N.W. 11th Floor
Washington, DC 20036

Dated at Bridgeport, Connecticut this 10th day of March, 2008

Douglas J. Varga