**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**(HARTFORD)**

| | | |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : : : | CIV. ACTION NO.: 3:02CV02234 (AWT) |
| | : | |
| Plaintiffs, | : : | |
| | : | |
| v. | : : | |
| | : | |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, | : : : : : : : : | |
| Defendants. | : : | MAY 5, 2008 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION TO PRECLUDE EXPERT WITNESS TESTIMONY**

The plaintiffs, Robert Payne and Payne Investments LLC (collectively, "Plaintiffs"), hereby submit this memorandum of law in support of their objection to Defendants' Motion to Preclude Expert Witness Testimony.

## A. **PROCEDURAL BACKGROUND**

1.      This Court entered Judgment in the present action against the Plaintiffs on May 2, 2006 (Docket No. 56).

2.      Thereafter, the Plaintiffs filed a Motion to Reopen Case on July 31, 2006 (Docket No. 57).

3.      On October 23, 2006, following extensive and protracted litigation between the parties, the Court granted the Plaintiffs' Motion to Reopen Case (Docket No. 69).

4.      The undersigned Plaintiffs' counsel filed his initial Appearance in the present action on or about April 24, 2007.  Prior to that time, the Plaintiffs were represented, since 2002, by members of the law firm of Gilbride, Tusa, Last & Spellane, 420 Lexington Avenue, New York, New York  10170.

5.      At the time that undersigned Plaintiffs' counsel filed his Appearance in the present action, the Plaintiffs had disclosed Mr. David Epstein as their expert witness and had provided a copy of Mr. Epstein's expert report to the Defendants.  Exhibit E attached to the Affidavit of Attorney James P. Donohue, Jr., Esq., in support of Plaintiff's Motion to Reopen Case, filed on July 31, 2006 (Docket No. 57).

6.      In fact, Defendants' counsel, Douglas J. Varga, Esq., admits to having received Mr. Epstein's expert report as Exhibit E, attached to Attorney Donohue's Affidavit in Support

2

of Plaintiffs' Motion to Reopen Case. <u>See</u> Defendants' Motion to Preclude Expert Witness testimony, dated March 10, 2008, at ¶ 6.

7.      It bears noting that Defendants' counsel caused the delay of the disclosure of Plaintiffs' expert witness and the delivery of the expert's report beyond the date set forth in the revised Scheduling Order (June 21, 2005), by failing to timely produce certain documents that were requested by the Plaintiffs[1]. <u>See</u> Letter from Attorney Donohue to Attorney Varga, dated August 17, 2005, attached to Reply Affidavit in Support of Motion to Reopen (James P. Donohue, Jr., Esq.), as Exhibit A thereto (Docket No. 60) (a copy is attached hereto as **Exhibit B**). The documents, which were originally requested pursuant to a document request in April, 2005, were still not produced by the Defendants as of November, 2006. <u>See</u> Letter from Attorney Donohue to Attorney Varga, dated November 3, 2006, attached to Affidavit in Response to Request for Fees (James P. Donohue, Jr., Esq.), as Exhibit B thereto (Docket No. 78) (a copy is attached hereto as **Exhibit C**).

8.      On or about September 7, 2005, Plaintiffs' counsel, Attorney Donohue, informed Defendants' counsel that Plaintiffs' original expert was conflicted out of the case and a search would have to be conducted to find another expert witness. In his letter, Attorney Donohue reiterates the request for the documents referred to in his previous letter of

**BERMAN AND SABLE LLC**
ONE FINANCIAL PLAZA, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

August 17, 2005, above. <u>See</u> Letter from Attorney Donohue to Attorney Varga, dated

September 7, 2005, attached to Reply Affidavit in Support of Motion to Reopen (James P.

Donohue, Jr., Esq.) as Exhibit B thereto (Docket No. 60) (a copy is attached hereto as **Exhibit**

**D**).

      9.     As part of the Order reopening this case on October 23, 2006, the Court stated

that, "[t]he parties shall file an updated scheduling order." In addition to granting Plaintiffs'

Motion to Reopen Case, the Court ordered Plaintiffs' counsel to pay the attorneys' fees and

costs expended by Defendants' counsel in opposing the motion (Docket No. 69).

      10.    It is apparent from a review of the docket filings in this case that, following the

Court's order of October 23, 2006, the parties did not present a proposed revised scheduling

order to the Court.

      11.    The chief explanation for the parties' failure to present a revised scheduling

order to the Court appears to be the refusal of Defendants' counsel to discuss a scheduling

order unless and until Defendants' motion for attorneys' fees was resolved. <u>See</u> Affidavit in

Response to Request for Fees (James P. Donohue, Jr., Esq.), dated March 7, 2007, at ¶¶ 4 &

6-8 (Docket No. 78) (a copy is attached hereto as **Exhibit E**). <u>See</u> <u>also</u> Letter from Attorney

---

[1]    See the deposition transcript of Robert Payne, dated May 13, 2005, at pages 103-107, in which the documents requested by Plaintiffs' counsel are discussed on the record. A copy of those deposition pages are attached hereto as **Exhibit A**.

4

Donohue to Attorney Varga, dated November 3, 2006, attached to Donohue Affidavit, supra, as Exhibit B thereto (**Exhibit C**); letter from Attorney Donohue to Attorney Varga, dated January 22, 2007, attached to Donohue Affidavit, supra, as Exhibit D thereto (a copy is attached hereto as **Exhibit F**); letter from Attorney Donohue to Attorney Varga, dated December 22, 2006, attached to Donohue Affidavit, supra, as Exhibit E thereto (a copy is attached hereto as **Exhibit G**); and, letter from Attorney Donohue to Attorney Varga, dated February 21, 2007, attached to Donohue Affidavit, supra, as Exhibit F thereto (a copy is attached hereto as **Exhibit H**).

12.     It is significant to note that Defendant's counsel's refusal to discuss a proposed scheduling order, as required by the Court in its Order of October 23, 2006, pre-dates the filing of Defendants' counsel's Motion for Attorney Fees, which was not filed until March 2, 2007 (Docket No. 72).

13.     Following the Court's Order granting the Defendants' Motion for Attorneys' Fees, on March 24, 2007 (Docket No. 83), the Court entered an Order on March 28, 2007, setting a deadline of May 5, 2007 for the filing of a Status Report by the parties (Docket No. 84).

5

14.    Shortly thereafter, Attorney Donohue stepped down as counsel for the

Plaintiffs and Michael P. Berman, Esq. filed his Appearance on behalf of the Plaintiffs, on or

about April 24, 2007 (Docket No. 85).

15.    On May 21, 2007, the Plaintiffs, following telephone conferences with

Defendants' counsel on May 16 and May 21, 2007, filed a Status Report, which included a

jointly agreed upon revised Case Management Plan (Docket No. 89). The Status Report

reflects an understanding between counsel that discovery in the case was completed.

16.    At the time of the creation of the Status Report, undersigned counsel for the

Plaintiffs was aware of the fact that the Defendants' had previously received David Epstein's

expert report. However, during the above-referenced "meet and confer" telephone

conferences, Defendants' counsel never once discussed the fact that the Court had previously

ordered the parties to formulate a revised scheduling order and did not engage Plaintiffs'

counsel in any discussion regarding his objection to the expert witness.

17.    Defendants' counsel, by his own admission, was in possession of Mr. Epstein's

expert report for approximately one (1) year and seven (7) months before deciding to file any

objection to his disclosure, or objection to his participation in the present case. In light of the

determined and vocal manner in which Defendants' counsel challenged the disclosure of Mr.

Epstein during the proceedings surrounding Plaintiffs' Motion to Reopen in 2006, it is well

6

within reason for Plaintiffs' counsel to have expected, at a minimum, that Defendants' counsel would have mentioned any objection to Mr. Epstein during the telephone conferences leading up to the Status Report.

18.    Since Plaintiffs' counsel knew that Mr. Epstein had been disclosed as an expert to the Defendants at some point earlier in the case, there would not have been any reason for Plaintiffs' counsel to disclose Mr. Epstein again.

19.    It is evident from the facts and sequence of events, as set forth above, that Defendants' counsel was purposely silent on the issue of Plaintiffs' expert witness and intentionally withheld his objection of Mr. Epstein until the time that the Plaintiffs' named Mr. Epstein as their expert witness in the Joint Trial Memorandum.

20.    The sequence of events and conduct of the parties clearly support the fact that there exists "substantial justification" to allow the disclosure of David Epstein as Plaintiffs' expert witness under Fed. R. Civ. P. 26(a) in the manner in which he was previously disclosed to Defendants' counsel.  Moreover, in light of the fact that there is no trial date set in this case, any deemed failure on the part of the previous Plaintiffs' counsel to disclose pursuant to Fed. R. Civ. P. 26(a) is "harmless" and without prejudice to the Defendants.

21.    The Plaintiffs' expert, David Epstein, possesses over 30 years of experience in the financial services industry, during which time he has personally been involved in the area

7

of corporate finance, with a primary focus on mergers and acquisitions, private placement of debt and equity securities, as well as providing various other financial advisory services. Mr. Epstein is currently a Managing Director, of Bentley Securities Corp., an investment banking firm, which he co-founded. (Mr. Epstein's *curriculum vitae* is contained in his expert report, a copy of which is attached hereto as **Exhibit I**).

22.     Mr. Epstein's testimony will assist the jury in understanding the position of Managing Director, as it has evolved over many years within the financial services industry; particularly, the duties and obligations of a Managing Director in working on mergers and acquisitions and divestiture projects. More important, Mr. Epstein will help the jury to comprehend how the position of Managing Director generally functions within the framework of senior management. He will assist the jury to recognize, how the Managing Director's job duties and responsibilities on a project are uniquely and specifically directed toward the everyday tasks associated with the technical aspects of contract closure on a project, while the duties and responsibilities of other members of a company's senior management team are aimed in a general and more wide-ranging fashion in the areas of marketing and client development.

## B. ARGUMENT

Defendants' argument in support of precluding the testimony of Plaintiffs' expert,

8

David Epstein, in this case is disingenuous. Defendants' counsel states that the Plaintiffs' have failed to comply with the "Court's unequivocal deadline for disclosure", and that pursuant to Federal Rule of Civil Procedure 26(a)(2)(C) they should be sanctioned according to Federal Rule of Civil Procedure 37(c)(1). However, Defendants' counsel clearly chooses to ignore the fact that he precipitated the delay in Plaintiffs' disclosure by virtue of failing to timely provide documents which were requested of him (**Exhibits A, C, D, F, G** and **H**) Furthermore, it is clear that Defendants' counsel was made aware of the fact that the Plaintiffs possessed valid reasons for their delay in producing the expert's report and had acquiesced to the disclosure of the expert and production of the report beyond the date set forth in the revised scheduling order. In fact, the correspondence from Plaintiffs' counsel clearly reflects that, despite numerous requests by Plaintiffs' counsel to do so, Defendants' counsel refused to comply with the Court's Order of October 23, 2006, directing the parties to produce a revised scheduling order. Because of the refusal of Defendants' counsel to even discuss a revised scheduling order with Plaintiffs' counsel, such scheduling order was never created or presented to the Court. This failure was extremely critical to the procedural posture of the case, since discussions between counsel in furtherance of a revised scheduling order would necessarily have had to include any outstanding issues concerning the Plaintiffs' expert.

9

On or about, April 24, 2007, undersigned counsel filed his Appearance on behalf of the Plaintiffs and Plaintiffs' original counsel (Attorney James P. Donohue, Jr.) and Attorney Donohue and members of his firm stepped down. Thereafter, the Court issued an order that the parties jointly agree upon and file a Status Report. Defendants' counsel never again discussed a revised scheduling order with present Plaintiffs' counsel.

The purpose of Rule 26(a) is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence. Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir.1992); see also Virgin Enter, Ltd. v. American Longevity, 2001 WL 34314729 (S.D.N.Y. Mar. 1, 2001). Preclusion is "appropriate unless there is 'substantial justification' for the failure [,] ... the failure to make disclosure is harmless" or the prejudice may be remedied by the party. Giladi v. Strauch, et al., 2001 WL 388052 (S.D.N.Y. April 16, 2001). The penalties contained in Rule 37(c)(1) "should not apply if the offending party's failure to disclose was 'substantially justified.' " Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y.1995).

The Southern District of New York has created a "test" to determine whether or not to exclude untimely expert testimony under Fed. R. Civ. P. 37(c)(1). The test includes the following criteria: Surprise or prejudice suffered by the moving party; the ability of that party to cure the prejudice; and whether there was bad faith or willfulness in failing to comply with the court order. Equant Integrations Services, Inc. v. United Rentals, 217 F.R.D. 113 (D.

10

Conn. 2003). In the present case, the Plaintiffs' disclosure of their expert can easily pass this test. First, the Defendants cannot claim "surprise". As outlined in the Section A of this memorandum (Procedural Background), Defendants' counsel has had a copy of the Mr. Epstein's report since at least early August, 2006. Furthermore, counsel specifically discussed how he had received the expert's report in Defendants' Opposition to Plaintiffs' Motion to Reopen Case (Docket No. 58). In fact, the behavior exemplified by Defendants' counsel has been more along the lines of trying to ignore the issue in hopes that it would disappear. Secondly, the Defendants cannot claim that they will suffer any "prejudice" or harm in allowing the disclosure of Plaintiffs' expert because they have more than enough time to depose Mr. Epstein before the trial[2]. There is not yet a date set for trial in this case. "Any prejudice caused by untimely disclosure was remedied by the availability of those months during which plaintiff could depose the expert." Strougo v. BEA Assoc., 188 F.Supp.2d 373, 380 (S.D.N.Y.2002).

Finally, the Plaintiffs in no way exhibited "bad faith" or "willfulness" in the manner in which their expert was disclosed to the Defendants and, in fact, pursuant to the sequence of events in this action, as outlined in the procedural background section of this memorandum, supra, were substantially justified in disclosing Mr. Epstein to the Defendants when they did.

---

[2] The Plaintiffs will make Mr. Epstein available for deposition at the offices of Defendants' counsel in

11

"[P]reclusion is a drastic remedy" and it is "generally ordered only where the court finds that

the party's failure to comply with the requirements was both unjustified and prejudicial."

Virgin, supra (citations and internal quotations omitted).  In the present action, the Plaintiffs

were substantially justified in disclosing Mr. Epstein at the time and in the manner in which

they did.  Furthermore there is no harm or prejudice suffered by the Defendants in allowing

Mr. Epstein to testify in this case.  Defendants' counsel has been in possession of the expert

report for approximately nineteen (19) months during which time they never filed an

objection, nor sought to depose him.  In light of the fact that there is no trial date yet set in this

case and the Plaintiffs will make Mr. Epstein available to the Defendants at their office in

Bridgeport, Connecticut, any claim of harm or prejudice is non-existent.

    The Defendants' argument against the relevance of Mr. Epstein's expert testimony,

must also fail, in that the issues presented in this case are those which expressly invoke the

tenets of Federal Rule of Evidence 702 ("Rule 702").  Rule 702 governs the admissibility of

expert witness testimony, and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

Bridgeport, Connecticut

12

For the Defendants to characterize this action as a "simple breach of contract case" is misleading and deceptive. In fact, this case concerns a contract which is based in the world of investment banking and finance. It involves, among other things, the intricacies of "divestitures" and "mergers & acquisitions". More specifically, this case is about the differences in the duties and responsibilities of upper level senior management within an investment banking company and the point in time when, according to custom and usage in the trade, the managing director's fee is earned (absent a specific term in the employment agreement). Mr. Epstein will assist the jury in understanding generally the duties and responsibilities of a Managing Director when working on a "divestiture" project and how that differs from the work he might be required to perform on a "merger & acquisition". He will also assist the jury in their understanding the focus of other senior management personnel within a company and how their job duties are more directed toward marketing and business development, as well as leading the company in other ways. Mr. Epstein will assist the jury by making the lines between duties and responsibilities of these senior managers a little brighter, so that their performance can be more readily distinguished. Since this is a case which is based upon the performance of the Plaintiffs and various individuals within the Defendants' senior management structure, Mr. Epstein's testimony as absolutely essential to assisting the jury to understand the evidence that will be presented in the trail.

13

Mr. Epstein is very well qualified to perform as an expert in this case. He has over thirty (30) years of experience in the financial services industry, during which time he has personally been involved in the area of corporate finance, with a primary focus on mergers and acquisitions, private placement of debt and equity securities, as well as providing various other financial advisory services. Mr. Epstein is, himself, currently serving as a Managing Director, of Bentley Securities Corp., an investment banking firm, which he co-founded. **(Exhibit I)**

It is somewhat misleading of the Defendants to claim that the Plaintiff, Robert Payne, "has admitted that Taylor Companies is not like other investment banks, and that the role of managing director there would not be the same as the role of managing director at another investment bank in the industry". In actuality, Robert Payne did _not_ admit that his role as Managing Director at Taylor Companies was unlike the position of managing director at "other investment banks". In his deposition of June 23, 2004, Robert Payne responded to Defendants' inquiry on this issue as follows:

> Q:    When you decided to go to Taylor, were you going there to be a
>
>        managing director and an equivalent role as you had at WP?

14

A:  **Jake, I don't understand the question because the firms are so dissimilar. It's impossible to characterize roles as being equivalent or not.**

Q:  The letter of engagement that you have with Taylor Companies had the word managing director in it?

A:  **Yes.**

Q:  How would you define it for purposes of working with Taylor?

A:  **It is very clear. My, the conditions, of my hiring was that I was going to be -- I was replacing somebody as a managing director, that I was going to be the sole managing director within Taylor responsible for divestitures because they had none others at that point. If my syntax is correct. My role was to identify divestiture opportunities and manage transactions.** (Deposition of Robert Payne (June 23, 2004) at p.10, 16-25 & p.11, 1-10) (a copy is attached hereto as **Exhibit J**).

It is clear from his actual testimony that Robert Payne accepted the position with the Defendants as their "sole managing director", which, in itself made the position dissimilar from his former employment. He did not state that his job as Managing Director

15

for the Defendants was so far beyond the general definition of "Managing Director" in the

investment banking industry that it was rendered incapable of being defined. He was going to

be the "sole managing director" for the Defendants and this is simply what made his role a bit

different.

In light of this, Mr. Epstein's testimony will, pursuant to Rule 702, assist the

jury to understand the evidence presented at trial. Certainly, if the Defendants can so easily

attempt to skew the definition of Managing Director as it pertains to the investment banking

industry, the jury will require Mr. Epstein's assistance to gain a better understanding of the

various roles within that intricate business environment, in order to properly evaluate the

evidence.

The defendants cite case law in support of their position which does not really

buttress the stance that they are assuming on this issue. In the case of Rieger v. Orlor, Inc.,

427 F.Supp.2d 99 (D.Conn. 2006), the court found that the proposed expert, a purported

human resources expert, utilized no special methodology in reaching his conclusion and, in

fact, offered blanket legal conclusions which could not assist the jury in reviewing the

evidence. Moreover, in the other case cited by the Defendants, Marx & Co., Inc. v. Diners'

Club, Inc., 550 F.2d 505 (2d Cir. 1977), the court stated that the proposed expert, an expert in

securities regulation, was qualified and competent to explain to the jury the "ordinary

16

practices" of lawyers and corporations in processing a registration statement through the SEC.

However, the court held that the expert went too far in offering legal opinions on the meaning

of contract terms. According to the court, the expert had interpreted contract principles for

the jury, which was a job for the court. The Court stated:

> Testimony concerning the ordinary practices of those engaged in the securities
> business is admissible under the same theory as testimony concerning the ordinary
> practices of physicians or concerning other trade customs: to enable the jury to
> evaluate the conduct of the parties against the standards of ordinary practice in the
> industry. See VII Wigmore on Evidence s 1949, at 66 (3d ed. 1940). Id. at 509.

Clearly, Mr. Epstein is qualified and competent to testify in the present case to

assist the jury in understanding the "ordinary practices" and customs of Managing Directors

in the investment banking industry and how that role differs from the roles of others within

the framework of a company's senior management. Given the intricacies involved in such a

unique and complex corporate environment, there can exist no "common understanding" of

such by a jury.

Finally, Mr. Epstein's testimony will be solely directed toward assisting the jury in a

clearer understanding of the ordinary customs and practices of Managing Directors in the

banking industry and how that role is distinguished from the duties and obligations of other

senior management personnel within a company. It bears emphasis that the "so-called'

contract of employment, which was drafted by the Defendants, was by it's very structure and

17

content, never intended to be a complete repository of the terms of the Payne's employment. In fact, it was missing several critical items (i.e., when his fee would be earned, what his duties as Managing Director would be, etc.). These missing items, terms and definitions should be allowed to be included through testimony, some of which can best be provided to the jury by Mr. Epstein (a copy of the employment agreement is attached hereto as **Exhibit K**). In the case of <u>Alstom Power, Inc. v. Balcke-Durr, Inc.</u>, 269 Conn. 599, 609 (2004) the Court held that such extrinsic evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud.... These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Internal quotation marks omitted.) Id., at 609-10, 849 A.2d 804. <u>See</u> <u>also</u>, <u>Viera v. Cohen</u>, 283 Conn. 412 (2007) (parol evidence rule does not forbid the presentation of evidence outside the four corners of the contract concerning matters governed by an integrated contract).

18

Moreover, our courts have held that an expert's testimony is admissible in order to show what was meant by a phrase in a contract and to show how such phrase was employed in a contract, as against contention that such evidence would violate the parol evidence rule. See, John Arborio, Inc., v. Scapin, 121 Conn. 492 (1936). In fact, our courts have held that where words used in a contract have a technical meaning, parol evidence by an expert in such matters is admissible to show what that meaning is. See, Soper v. Tyler, 77 Conn. 104, 106, 58 A. 699: Hatch v. Douglas, 48 Conn. 116, 1280 Am.Rep. 154; Harlow v. Parsons Lumber & Hardware Co., 81 Conn. 572, 575, 71 A. 734. It was properly considered by the trial court, "not for the purpose of ascertaining any unexpressed intent, but in order to determine the intent they meant to express by the phrase they used." Malt-by, Inc., v. Associated Realty Co., 114 Conn. 283, 289, 158 A. 548, 550; Gray v. Greenblatt, 113 Conn. 535, 539, 155 A. 707.

Mr. Epstein's testimony will include an explanation of standards of usage and custom within the investment banking industry, for which purpose extrinsic evidence is allowed through his expert testimony. It bears emphasis that, contrary to what Defendants' counsel has represented in their Motion in Limine, Mr. Epstein will not be opining upon any ultimate issue of law, but rather, he will be providing the jury with critical information regarding the standards of usage and custom in the industry, as well as information concerning implied terms within the employment agreement.

19

## C. CONCLUSION

The Plaintiffs respectfully submit that, pursuant to the foregoing, the Defendants'

Motion to Preclude Expert Witness Testimony be denied and that Plaintiffs' expert, David B.

Epstein, be permitted to testify in this case in order to assist the jury in understanding the

evidence and determining facts in issue.


THE PLAINTIFFS,
ROBERT PAYNE and
PAYNE INVESTMENTS LLC


By:_____ /s/ _____
          MICHAEL P. BERMAN
          Federal Bar No.:  ct05624
          KEVIN W. GILLEN
          Federal Bar No.:  ct01502
          Berman and Sable LLC
          One Financial Plaza, 20th Floor
          Hartford, CT 06103
          Tel:    (860) 527-9699
          Fax:    (860) 527-9077
          Their Attorneys

20

## CERTIFICATION OF SERVICE

This is to certify that on this 5th day of May, 2008, a copy of the foregoing pleading was sent by electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

_____/s/_____
Kevin W. Gillen

BERMAN AND SABLE LLC
ONE FINANCIAL PLAZA, HARTFORD, CONNECTICUT 06103
(860) 527-9699   •   JURIS NO. 03840