UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT PAYNE and PAYNE INVESTMENTS LLC, | : : : | Civil Action |
| Plaintiffs, | : : | No. 3:02 CV 2234 (AWT) |
| v. | : : | |
| TAYLOR VISION RESOURCES, TAYLOR STRATEGIC ACQUISITIONS, TAYLOR STRATEGIC DIVESTITURES, and TAYLOR FINANCIAL SERVICES LLC, all defendants collectively operating under the name TAYLOR COMPANIES, | : : : : : : : : | |
| Defendants. | : : | June 9, 2008 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
<u>MOTION TO PRECLUDE EXPERT WITNESS TESTIMONY</u>**

Defendants Taylor Vision Resources, Taylor Strategic Acquisitions, Taylor Strategic Divestitures, and Taylor Financial Services LLC (collectively, "Taylor Companies"), pursuant to L.Civ.R. 7(d), submit this memorandum in reply to Plaintiffs' Objection to defendants' Motion to Preclude Expert Witness Testimony dated May 5, 2008.

**I.  <u>INTRODUCTION</u>**

Taylor Companies has moved to preclude the trial testimony of plaintiffs' purported expert witness (David Epstein) because he was not disclosed in a timely fashion, and because his testimony would be improper and inadmissible even if plaintiffs had complied with their disclosure obligations. In response, plaintiffs claim that because the *defendants* failed to press them to disclose their own expert witness in a timely way, the defendants cannot now claim prejudice would result from the plaintiffs'

presentation of the late-disclosed expert testimony. Plaintiffs' Memo. at 9-12.[1] In making this argument, plaintiffs rely, remarkably, on some of the very facts already litigated and resolved in the defendants' favor in the parties' dispute over the plaintiffs' July 31, 2006 Motion to Reopen this case following the Court's dismissal of the matter more than four months earlier. Plaintiffs' Memo at 3-5. The Plaintiffs also claim, with little supporting argument, that the issues to be addressed by the proposed expert witness – including "the various roles within [the] intricate business environment" of "the investment banking industry", and "the 'ordinary practices' and customs of Managing Directors in the investment banking industry and how that role differs from the roles of others within the framework of a company's senior management" -- constitute relevant factual disputes on which Mr. Epstein properly may testify. Plaintiffs' Memo at 16, 18-19.[2]

Their arguments notwithstanding, plaintiffs fail to demonstrate any conduct or omission by defendants that could possibly justify their presentation of an expert witness disclosed not only after the passage of the deadline for disclosure of expert witnesses, but also after the deadline for completion of all discovery *and* after the dismissal of the case for failure to prosecute. They further fail to articulate any other basis for permitting the testimony by their late-disclosed purported expert witness. Finally, plaintiffs fail to demonstrate that any of the topics on which Mr. Epstein is

---

[1]  References to Plaintiffs' Memorandum of Law in Support of Objection to Defendants' Motion to Preclude Expert Witness Testimony (dated May 5, 2008) are designated "Plaintiffs' Memo. at __."

[2]  Plaintiffs appear to have abandoned their attempt to present Mr. Epstein's opinions as to the ultimate issues in this case, including conclusions that Taylor Companies breached contractual obligations to the plaintiffs, and that it owes plaintiffs specific amounts in damages. In light of plaintiffs' concession on this point, Taylor Companies submits no further argument.

2

prepared to testify will help the jury reach its decisions on the factual issues in this case, rather than confusing the issues by providing information about how *other* institutions in the investment banking industry operate.  For these reasons, defendants respectfully request that the Court grant their motion to preclude the proffered testimony by Mr. Epstein.

## II. ARGUMENT

### A.    Defendants Bear No Responsibility for Plaintiffs' Late Disclosure of Their Own Expert Witness

There is no dispute between the parties that (a) the deadline for plaintiffs' disclosure of expert witnesses was June 21, 2005; (b) the deadline for completion of all expert discovery was August 5, 2005; and (c) Mr. Epstein was not disclosed as an expert until defendants were served with plaintiffs' July 31, 2006 Motion to Reopen.  In support of their attempt to blame defendants for "caus[ing] the delay of the disclosure of Plaintiffs' expert witness and the delivery of the expert's report beyond the date set forth in the revised scheduling order (June 21, 2005)," Plaintiffs' Memo at 3, plaintiffs assert that they made a "document request" in April 2005 to which defendants failed to respond.  Id.  In fact, plaintiffs' "document request" was no more than a letter which, though purporting to identify 16 categories of documents, did not comply with Federal Rule of Civil Procedure 34 and, accordingly, established no time limit, or even requirement, for a response by the defendants.  *See* Affidavit of Douglas J. Varga dated September 11, 2006 ("Varga Aff.") at ¶¶ 4, 5 (Docket No. 68, Ex. 1).  Defendants nevertheless began to work on assembling the voluminous documents responsive to plaintiffs' letter.  Id. at ¶ 5.  When plaintiffs' counsel ceased to request the documents in

3

the summer of 2005, and indeed ceased to communicate in any manner for almost one year following their counsel's September 7, 2005 phone call to Attorney Varga, it became unclear whether plaintiffs intended to pursue the informal document request (let alone the entire case), and defendants thus did not complete the process of assembling these documents.  Id. at ¶¶ 5, 12.  Plaintiffs' failure to pursue informal document disclosure alone created any "delay" of which they now complain. [3]

Plaintiffs next claim that they "reiterate[d] the request for the documents", and "informed Defendants' counsel that Plaintiffs' original expert was conflicted out of the case and a search would have to be conducted to find another expert witness." Plaintiffs' Memo at 3.  In support, plaintiffs rely on two letters from plaintiffs' former counsel (James P. Donohue, Jr.) to defendants' counsel:  a letter dated September 7, 2005, and a letter dated August 17, 2005.  These letters might provide some comfort for plaintiffs' position, but for one crucial fact:  defendants' counsel never received these letters.[4]  The Court previously credited defendants' assertions with respect to these purported "communications," as reflected clearly in the Court's oral Order on October 23, 2006, as well as in the Court's comments during the status conference held in this case on March 22, 2007.  See Transcript of Proceedings of telephonic status conference dated March 22, 2007 (attached hereto at Exhibit 1).  Given the procedural history of this case, plaintiffs' renewed attempt to rely on communications that never

---

[3]  The Court also should note that the purported expert, Mr. Epstein, somehow was capable of crafting an expert report without the documents plaintiffs now cite as the cause of delay.

[4]  As defendants made very clear in their opposition to Plaintiffs' Motion to Reopen, defendants' counsel did not receive a number of letters plaintiffs' counsel claimed to have sent, including letters dated September 7 and August 17, 2005.  See Varga Aff. at ¶¶ 3, 6-12.  Plaintiffs nevertheless continue to use these letters as evidence.  See Plaintiffs' Memo at 3 and Ex. D.

4

occurred is nothing short of brazen.

Plaintiffs further assert that, had it not been for "the refusal of Defendants' counsel to discuss a scheduling order unless and until Defendants' motion for attorneys' fees was resolved," their proposed expert testimony would not now be in dispute. Plaintiffs' Memo at 4, 9-10.  Here again, plaintiffs misrepresent the Court's Order of October 23, 2006, which reopened the case *on the condition that* plaintiffs paid the defendants' attorneys fees incurred in opposing the Motion to Reopen.  While plaintiffs blame defendants' counsel for not having participated in the preparation of a new scheduling order prior to plaintiffs' payment of those attorney fees, the October 23, 2006 Order in fact *required* the payment of fees *before* a new scheduling order was to be proposed.  As the Court elucidated on March 22, 2007:

> I granted the motion to reopen the case subject to the payment of sanctions by the plaintiffs' counsel … But I think if I'd had more time to think about it, . . . I would have left the judgment in place and said it could be vacated upon the filing of a notice that the sanctions had been paid and that new counsel were filing an appearance for the plaintiffs.  And to be honest, that's really what I think ought to happen here.
>
> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> … I expected that the motion for sanctions and the conditions for reopening the case would be complied with, and then people would file the scheduling order.

Ex. 1 at 4, 5, 8.

Finally, plaintiffs claim that, because they "in no way exhibited 'bad faith' or 'willfulness' in the way in which they disclosed Mr. Epstein, they "were substantially justified in disclosing Mr. Epstein to the Defendants when they did."  Plaintiffs' Memo at 11-12.  On the subject of the bad faith of plaintiffs' counsel, defendants respectfully submit that the facts set forth above, and all of the facts presented in the course of the

litigation concerning plaintiffs' Motion to Reopen, speak for themselves. Even if plaintiffs had in fact exhibited no bad faith in their delayed disclosure, this fact does not "justify" the months-long delay. The Federal Rules of Civil Procedure establish deadlines applicable to all litigants; they are not punitive restrictions to be applied only to those who conduct litigation in bad faith. Moreover, the timing issue is not academic: this case is set for jury selection on September 11, 2008. Plaintiffs' late disclosure, and subsequent attempt to recast blame for that disclosure on defendants, does not warrant another bite at the apple. This is particularly true given the prejudice the defendants will suffer if the expert is allowed to testify.

**B.    Plaintiffs Have Failed to Demonstrate That Mr. Epstein's Proposed Expert Testimony is Relevant and Admissible**

Plaintiffs correctly point out that, under Fed.R.Evid. 702, an expert witness may "assist the trier of fact to understand the evidence or to determine a fact in issue. . ." There are discrete limits to the "help" that an expert can provide, however. For example, expert testimony should be excluded where it would "discourage the fact finder from using [its] own judgment on an issue for which a fact finder is amply suited" to make such a judgment. World Boxing Council v. Cosell, 715 F.Supp. 1259, 1264 (S.D.N.Y. 1989). Similarly, legal conclusions about a particular case are inadmissible because they "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991), *cert. denied*, 502 U.S. 813 (1991); Rieger v. Orlor, Inc., 427 F.Supp.2d 99, 104 (D.Conn. 2006). The trial court

6

must play the role of a gatekeeper, obligated to ensure that expert testimony is both relevant and reliable.  Kumho Tire v. Carmichael, 526 U.S. 137, 147-48 (1999).

In apparent acknowledgment of the force of this case law, plaintiffs now have decided that Mr. Epstein, should he be permitted to testify, "will be providing the jury with critical information regarding the standards of usage and custom in the industry, as well as information concerning implied terms within the employment agreement." Plaintiffs' Memo at 19.  Plaintiffs now claim that "Mr. Epstein will not be opining upon any ultimate issue of law. . ." Id.  This statement flies in the face of the following examples drawn from Mr. Epstein's report:

- "… Payne should be entitled to the entire 5% additional commission on the Borden transaction."

- ". . . Taylor abrogated the Agreement and denied Payne compensation owed, . . ."

- " … Payne should be entitled to his contractual compensation for the Dow/Sentrachem transaction."

- "Based upon the foregoing, Payne is entitled to his contractual compensation for the three transactions involved in this Litigation …"

- "As per the Agreement between Payne and Taylor, Payne should be compensated the full commission . . . for each of the three transactions noted above plus a full additional commission . . . for the Borden transaction."

Plaintiffs' Memo., Ex. I at 10-12.

Plaintiffs have described defendants' arguments concerning the irrelevance of Mr. Epstein's proposed testimony as "misleading" and "deceptive."  Plaintiffs' Memo at 13-14.  Plaintiffs, however, conveniently ignore Mr. Payne's own testimony, which plainly reflects that the role of managing director at Taylor Companies *is not capable of being defined by way of reference to a "managing director" role at another firm.*  See Plaintiffs' Memo. at 15 and Ex. J at 10 (Payne deposition testimony:  "Jake, I don't understand the question because the firms are so dissimilar.  It's impossible to characterize roles as being equivalent or not.").

Plaintiffs, furthermore, have failed to provide any factual support whatsoever for their contention that testimony about the "managing director" role in the investment banking industry at large – which defendants do not contest that Mr. Epstein is capable of providing -- will have any relevance to the dispute between these parties about Mr. Payne's performance of the managing director role at Taylor Companies.

Finally, plaintiffs contend that Mr. Epstein's testimony will be relevant and admissible to fill in missing terms in the parties' agreement.  Plaintiffs' Memo at 18-19.  They cite the hornbook rules that parol evidence is admissible to explain a contract term, to prove a collateral oral agreement which does not vary the terms of the writing, or to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement.  Plaintiffs' Memo at 18 (*citing* Alstom Power, Inc. v. Balcke-Durr, Inc., 269 Conn. 599, 609 (2004); Viera v. Cohen, 283 Conn. 412 (2007)).  Plaintiffs cite cases in which an expert witness has been allowed to explain the meaning of contract phrases.  Plaintiffs' Memo at 19.  However, neither Mr. Epstein's report nor Plaintiffs' Memorandum identify any facts demonstrating that Mr. Epstein's

8

understanding of the term "managing director" in general will be at all helpful to the jury. The evidence on this point, to the contrary, comes from Mr. Payne himself and demonstrates that an understanding of the role of managing director elsewhere in the industry will not assist the jury in deciding whether plaintiffs fulfilled their specific obligations of managing director at Taylor Companies, in connection with the three specific deals at issue in this case.

### III. CONCLUSION

Taylor Companies respectfully submits that Payne's attempt to introduce undisclosed expert testimony should not succeed. Payne's disregard for this Court's scheduling order, including his delay of more than one year in disclosing his expert, and his presentation of the report only *after* judgment had been entered against him and in favor of the defendants, provide ample basis to preclude the testimony. In addition to these delays, however, the opinions Payne seeks to introduce are not relevant to the issues in disputed in this case, and they purport to instruct the jury as to how to apply the law to the facts. For all of these reasons, defendants respectfully request that this Court enter an Order pursuant to Fed.R.Civ.P. 37(c)(1) precluding the trial testimony of David B. Epstein.

DEFENDANTS

TAYLOR VISION RESOURCES,
TAYLOR STRATEGIC ACQUISITIONS,
TAYLOR STRATEGIC DIVESTITURES,
and TAYLOR FINANCIAL SERVICES LLC


By: /s/ Douglas J. Varga_____
    Douglas J. Varga (ct 18885)
    Sarah W. Poston (ct 19702)

    Zeldes, Needle & Cooper, P.C.
    1000 Lafayette Boulevard
    P. O. Box 1740
    Bridgeport, CT  06601-1740
    Telephone:  203-333-9441
    Facsimile:  203-333-1489
    E-mail: dvarga@znclaw.com
    E-mail: sposton@znclaw.com

Their Attorneys

10

**CERTIFICATION**

This is to certify that a copy of the foregoing has been sent via United States Mail, postage prepaid, on this date, to:

> Michael P. Berman, Esq.
> Kevin W. Gillen, Esq.
> Berman and Sable LLC
> One Financial Plaza
> Hartford, CT 06103
>
> Jacob A. Stein, Esq.
> Stein, Mitchell & Mezines
> 1100 Connecticut Avenue, N.W. 11th Floor
> Washington, DC 20036

I hereby certify that on June 9, 2008, a copy of the foregoing Reply Memorandum in Further Support of Motion to Preclude Expert Witness Testimony was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Dated at Bridgeport, Connecticut this 9th day of June, 2008.

> /s/ Douglas J. Varga_____
> Douglas J. Varga