UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - -x
                                  :
ROBERT PAYNE                      :  No. 3:02CV2234(AWT)
PAYNE INVESTMENTS LLC             :
                                  :
           Plaintiffs             :
                                  :
      vs.                         :
                                  :
TAYLOR VISION RESOURCES           :
TAYLOR STRATEGIC ACQUISITIONS     :
TAYLOR STRATEGIC DIVESTITURES     :
TAYLOR FINANCIAL SERVICE LLC      :
  Collectively Operating Under    :
  Name Taylor Companies           :
                                  :  HARTFORD, CONNECTICUT
           Defendants             :  MARCH 22, 2007
                                  :
- - - - - - - - - - - - - - - - -x
```

TELEPHONIC STATUS CONFERENCE

BEFORE:

HON. ALVIN W. THOMPSON U.S.D.J.

Diana Huntington, RDR, CRR
Official Court Reporter

```
 1  APPEARANCES:

 2
        FOR THE PLAINTIFFS:
 3
            CRYSTAL & DONOHUE
 4              708 Third Avenue
                26th Floor
 5              New York, New York 10017
        BY:  JAMES P. DONOHUE, JR., ESQ.
 6
        FOR THE DEFENDANTS:
 7
            ZELDES, NEEDLE & COOPER
 8              1000 Lafayette Boulevard
                P.O. Box 1740
 9              Bridgeport, Connecticut 06601-1740
        BY:  DOUGLAS JOHN VARGA, ESQ.
10

11      ALSO PRESENT:  ROBERT PAYNE

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    10:33 A.M.
 2          THE COURT:  Good morning.
 3          Could I have people identify themselves for the
 4 record, please.
 5          MR. VARGA:  Douglas Varga from Zeldes, Needle &
 6 Cooper for the defendants, Taylor Companies.
 7          MR. DONAHUE:  James Donohue with David Crystal
 8 from the firm of Crystal & Donohue, we represent the
 9 Plaintiffs.
10          MR. PAYNE:  Robert Payne, Payne Investments.
11          THE COURT:  When I got the memorandum in
12 response to the application for fees, and maybe even
13 before then, I decided I wanted to just sort of handle
14 this as efficiently as possible.  And that's why I
15 scheduled this call.
16          Let me set the context on which I'm looking at
17 this.
18          We had oral argument on the motion to vacate on
19 October 23rd.  After hearing what counsel had to say, I
20 made a couple of observations.
21          First of all, I noted that I thought counsel for
22 the defendants had an obligation to raise certain issues
23 with the Court.  And then I said to counsel for the
24 plaintiffs, "And I have to say, Mr. Donohue, it looks very
25 bad from where I sit just looking at this objectively.  It
```

1 looks very bad.  It does look like your firm has not been
2 candid with the Court.  But based on what you've said
3 today, I'm going to impose an alternate sanction.  I'm
4 going to require you to pay all the attorneys' fees and
5 costs the defendants incurred in connection with this
6 motion which I think they had a duty to work on."
7          So I granted the motion to reopen the case
8 subject to the payment of sanctions by the plaintiffs'
9 counsel.
10         When I read the plaintiffs' papers in connection
11 with the application for attorneys' fees, there were just
12 a few things that sort of caused me to want to go back and
13 read the transcript from the motion hearing on
14 October 23rd, and that's why I did.
15         I think it was a questionable call.  When I read
16 that the defense counsel had discussed with their clients
17 whether they should appeal, I said that's very reasonable
18 for them to think that.  I think if I had taken a little
19 more time to think about crafting the sanction, the most I
20 would have -- and let me explain one thing, because I
21 didn't.  And sometimes I prefer to be diplomatic in saying
22 things, but sometimes it doesn't serve the process as well
23 as being more straightforward would.
24         When I said "based on what you've said today I'm
25 going to impose an alternate sanction," that came right

1  after I said "it does not look like your firm has been
2  candid with the Court." So I wasn't saying I credited
3  what you said other than the statement that I should look
4  at the client as opposed to the lawyers and not punish the
5  client for my views of how plaintiffs' counsel had
6  proceeded. And that's what I did. I said, well, I will
7  make it so that the plaintiff can proceed with their case
8  and we will basically, in my mind, hold harmless the
9  defendants and defense counsel for the consequences of the
10 way that plaintiffs' counsel proceeded. That's what I
11 intended to do in crafting that remedy.
12         But I think if I'd had more time to think about
13 it, I would have added one other step. And that would
14 have been that I would have left the judgment in place and
15 said it could be vacated upon the filing of a notice that
16 the sanctions had been paid and that new counsel were
17 filing an appearance for the plaintiffs. And to be
18 honest, that's really what I think ought to happen here.
19         I am very uncomfortable with plaintiffs' counsel
20 in this case. I think that's what I should have done back
21 in October. And I thought people should know that and I'm
22 still considering doing that. I will take -- I'll take a
23 few days to think about that.
24         Now, as to the application for attorneys' fees
25 and costs, because there seem to be a lot of issues, I

1 went back and I read some cases on lodestar method and the
2 factors that you can consider or should consider once
3 you've taken the first step.
4          And just so the record is clear, I think they
5 are summarized in a case that one of my colleagues
6 published, Gervais, 297 F.Supp.2d 435.  Footnote 2
7 describes I think quite accurately how the lodestar test
8 works, beginning with multiplying the number of hours
9 reasonably expended on litigation by a reasonable hourly
10 rate and then considering whether adjustments should be
11 made.  And there are twelve factors pointed out.
12          I think when I look through the entries that are
13 in the submission for attorneys' fees, I don't have any
14 trouble figuring out what was done or figuring out whether
15 it was a reasonable expenditure of time.  I read all the
16 arguments about block billing.  Block billing is not
17 prohibited, but block billing is something -- and there
18 are a couple of cases in our circuit that make that clear,
19 Ursa Minor Ltd., which is reported in Westlaw,
20 2001wl1842042, and then a case which defendants' counsel
21 are no doubt familiar with, one of Judge Goettel's cases,
22 the Tsombanidis case.
23          MR. VARGA:  Tsombanidis.
24          THE COURT:  Thank you, v. City of West Haven.
25          The question is whether if we had block billing

1  it creates a difficulty for the judge in looking at
2  whether the time spent on the task was reasonable.
3           I have an advantage here where this is not where
4  I'm sitting down and looking at a whole case from start to
5  finish, but I'm looking at some very focused activity that
6  relates to two efforts by the plaintiffs to vacate the
7  judgment.  And I first denied the motion.  And then -- but
8  I indicated that the plaintiffs could come back with other
9  reasons or a better explanation.  I'm sitting here with
10 stacks of papers that were filed, and it seems to me that
11 the time that was put in was quite reasonable.  And when I
12 look at the entries, I really don't have any trouble
13 figuring out what was done or why.
14          I also intended to make the defendants whole for
15 having to go through this disruption which I lay entirely
16 at the feet of plaintiffs' counsel, so I did intend that
17 they would get the post-hearing time.  And frankly, I
18 thought a couple of the arguments that were in the
19 defendants' papers were -- well, they caused me concern
20 about candor again.
21          So I'm granting the application for fees.  I
22 expect the fees to be paid within 30 days.  And I will
23 think about whether I'm going to modify the conditions
24 under which I have vacated the judgment, because when I
25 went back and read through things, I really don't know

1 that it's appropriate for a judge who wants to not make a
2 client pay by having their case dismissed leave in the
3 case a firm where the judge has come to the firm
4 conclusion that the firm has not been candid with the
5 Court.
6           So I've gone on and said everything I had to
7 say.  I'll let counsel say anything they'd like to say.
8           Counsel for the plaintiff?
9           MR. DONAHUE:  Judge, James Donohue for the
10 plaintiffs, Your Honor.
11          When you say grant the application, is that in
12 the exact amount applied for?
13          THE COURT:  I believe so.
14          MR. DONAHUE:  I just want to make sure I know
15 what number I'm writing.
16          The second question is:  With respect to the
17 scheduling order, do we have to wait the 30 days to work
18 on the scheduling order?
19          THE COURT:  Yes.  I expected that the motion for
20 sanctions and the conditions for reopening the case would
21 be complied with, and then people would file the
22 scheduling order.  I'm going by what I said at the
23 hearing, not what the courtroom deputy put in the minute
24 entry.
25          MR. DONAHUE:  Got you.

1          THE COURT:  Mr. Varga, do you have any thoughts?

2          MR. VARGA:  I really don't, Your Honor.

3          THE COURT:  Okay.  Well, I'm going to take a few
4 days to think about this.  Anything you want me to
5 consider, you can just file a no-more-than-two-page memo.
6 I won't decide before Monday.  Okay?

7          MR. DONAHUE:  Your Honor, that's the issue of
8 whether counsel is dismissed?

9          THE COURT:  Yes.

10         MR. DONAHUE:  Okay.

11         THE COURT:  Thank you very much.

12         MR. VARGA:  Thank you, Your Honor.

13         THE COURT:  Bye.

14              (Proceedings adjourned at 10:45 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1
2
3            C E R T I F I C A T E
4
5
6
7        I, Diana Huntington, RDR, CRR, Official Court
8  Reporter for the United States District Court for the
9  District of Connecticut, do hereby certify that the
10 foregoing pages are a true and accurate transcription of
11 my shorthand notes taken in the aforementioned matter to
12 the best of my skill and ability.
13
14
15
16
               /s/ Diana Huntington_____
17
               DIANA HUNTINGTON, RDR, CRR
18                Official Court Reporter
                 450 Main Street, Room #225
19               Hartford, Connecticut 06103
                       (860) 547-0580
20
21
22
23
24
25